Mark G. Hanchet, Esq.
James Ancone, Esq.
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Counsel for Plaintiff Bank Leumi USA*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BANK LEUMI USA,<br><br>                         Plaintiff,<br><br>            – against –<br><br>DAVID EHRLICH, ANGELA TYKOCKI,<br>ENRIQUE EHRLICH, and<br>SARA GOLDSTEIN,<br><br>                         Defendants. | Case No. 12-CV-4423 (AJN)<br><br>**ORAL ARGUMENT<br>REQUESTED** |

**BANK LEUMI USA'S MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

UNDISPUTED FACTS ....................................................................................... 2

      A.    Defendants Opened Non-Discretionary Brokerage Accounts With
            BLUSA. ................................................................................................. 2

      B.    Defendants Purchased The Bonds For Their BLUSA Accounts. .......................... 3

      C.    BLUSA Seeks A Declaration Of Non-Liability After Defendants
            Threatened to File a Lawsuit................................................................... 4

SUMMARY JUDGMENT STANDARD ................................................................... 5

ARGUMENT .................................................................................................... 5

I.     BLUSA IS ENTITLED TO A FINAL JUDGMENT DECLARING THAT IT
       HAS NO LIABILITY IN TORT OR CONTRACT IN CONNECTION WITH
       DEFENDANTS' INVESTMENT IN THE BONDS ........................................... 5

      A.    BLUSA Did Not Owe A Duty To Advise Defendants About The Bonds
            And, Therefore, Cannot Be Held Liable In Tort For Defendants'
            Investment Losses In The Bonds. ........................................................... 7

      B.    BLUSA Did Not Owe A Contractual Duty To Advise Defendants About
            The Bonds And, Therefore, Cannot Be Held Liable In Contract For
            Defendants' Investment Losses In The Bonds................................................ 11

II.    BLUSA IS ENTITLED TO SUMMARY JUDGMENT ON THE BREACH OF
       FIDUCIARY DUTY COUNTERCLAIM .................................................... 13

      A.    The Breach Of Fiduciary Duty Counterclaim Is Time-Barred. ......................... 13

      B.    BLUSA Owed No Duty To Defendants To Advise Them In Connection
            With Defendants' Investment In The Bonds. ........................................... 14

III.   BLUSA IS ENTITLED TO SUMMARY JUDGMENT ON THE INVESTMENT
       ADVISERS ACT COUNTERCLAIM ........................................................ 14

IV.   BLUSA IS ENTITLED TO SUMMARY JUDGMENT ON THE BREACH OF
       CONTRACT COUNTERCLAIM ............................................................. 16

      A.    The Breach of Contract Counterclaim Should Be Dismissed For Lack of
            Subject Matter Jurisdiction. ................................................................. 16

      B.    The Breach of Contract Counterclaim Should Be Dismissed On The
            Merits. ............................................................................................ 18

V.    BLUSA IS ENTITLED TO SUMMARY JUDGMENT ON THE NEGLIGENCE
       COUNTERCLAIM ............................................................................... 19

      A.    The Negligence Counterclaim Should Be Dismissed For Lack of Subject
            Matter Jurisdiction. ............................................................................ 19

i

## TABLE OF CONTENTS
(continued)

**Page**

B.      The Negligence Counterclaim Should Be Dismissed On The Merits. ................ 20

CONCLUSION...................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akins v. Glens Falls City Sch. Dist.*,
    53 N.Y.2d 325 (1981) ....................................................................................................8

*Alfaro v. Wal-Mart Stores, Inc.*,
    210 F.3d 111 (2d Cir. 2000)........................................................................................20

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................................5

*Bissell v. Merrill Lynch & Co.*,
    937 F. Supp. 237 (S.D.N.Y. Aug. 8, 1996)................................................................10

*Burgess v. Omar*,
    345 F. Supp. 2d 369 (S.D.N.Y. 2004)...................................................................17, 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................5, 8, 16

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009).......................................................................19

*Chevron Corp. v. Salazar*,
    Nos. 11 Civ. 3718 (LAK), 11 Civ. 0691 (LAK), 2011 WL 3628843 (S.D.N.Y. Aug.
    17, 2011) ......................................................................................................................8

*City of Chicago v. Int'l Coll. of Surgeons*,
    522 US 156 (1997)......................................................................................................17

*Clarendon Nat'l Ins. Co. v. Health Plan Adm'rs.*,
    No. 08 Civ 6279 (GBD), 2009 WL 3053736 (S.D.N.Y. Sept. 24, 2009)................20

*DeBlasio v. Merrill Lynch*,
    No. 07 Civ. 318 (RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ..................8, 15

*Duane Reade, Inc. v. St. Paul Fire and Marine Ins.*,
    411 F.3d 384 (2d Cir. 2005)........................................................................................6

*Fesseha v TD Waterhouse Inv. Servs., Inc.*,
    305 A.D.2d 268 (1st Dep't 2003) ..............................................................................10

*First Investors Corp. v. Liberty Mut. Ins. Co.*,
    152 F.3d 162 (2d Cir. 1998)........................................................................................19

iii

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Forbes v. Wells Fargo Bank, N.A.*,
   420 F. Supp. 2d 1018 (D. Minn. 2006)....................................................................19

*GMAC v. Clifton-Fine Cent. Sch. Dist.*,
   85 N.Y.2d 232 (1995) ..............................................................................................19

*Hudson River Club v. Consol. Edison Co. of N.Y., Inc.*,
   275 A.D.2d 218 (1st Dep't 2000) ..............................................................................8

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) .......................................................................................13, 14

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
   157 F.3d 933 (2d Cir. 1998)..............................................................................10, 13

*Jordan v. UBS AG*,
   11 A.D.3d 283 (1st Dep't 2004) ..........................................................................9, 10

*Jordan v. UBS AG*,
   No. 600816/02, 2003 WL 25668674 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 16, 2003), (1st
   Dep't 2004) ............................................................................................... *passim*

*Kalisch-Jarcho v. City of N.Y.*,
   58 N.Y.2d 377 (1983) ..............................................................................................12

*Kerzer v. Kingly Mfg.*,
   156 F.3d 396 (2d Cir. 1998).......................................................................................5

*Kirschner v. Klemons*,
   225 F.3d 227 (2d Cir. 2000).....................................................................................17

*Kronos, Inc. v. AVX Corp.*,
   81 N.Y.2d 90 (1993) ................................................................................................14

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
   312 U.S. 270 (1941).................................................................................................6

*Neely v. Bar Harbor Bankshares*,
   270 F. Supp. 2d 44 (D. Me. 2003) ...........................................................................15

*Perl v. Smith Barney Inc.*,
   230 A.D.2d 664 (1st Dep't 1996) .............................................................................11

*Phoenix Four, Inc. v. Strategic Res. Corp.*,
   No. 05 Civ. 4837 (HB), 2006 WL 399396 (S.D.N.Y. Feb. 21, 2006)......................18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Preferred Acc. Ins. Co. of N.Y. v. Grasso*,
    186 F.2d 987 (2d Cir. 1951)...........................................................................8

*Rosario v. Int'l Auto Mall & Leasing Ctr., Inc.*,
    No. 12 Civ. 4059 (ALC), 2013 WL 1144893 (S.D.N.Y. Mar. 19, 2013).........................17, 18

*Salomon Brothers, Inc. v. Carey*,
    556 F. Supp. 499 (S.D.N.Y. 1983) ...........................................................6

*SNS Bank v. Citibank, N.A.*,
    7 A.D.3d 352 (1st Dep't 2004) ...............................................................12

*Wells Fargo Bank, N.A. v. Sharma*,
    642 F. Supp. 2d 242 (S.D.N.Y. 2009).........................................................6

**STATUTES**

28 U.S.C. § 1367(a) ..........................................................................................17

28 U.S.C. § 1367(c)(3)......................................................................................17

28 U.S.C. § 1367(c)(4)......................................................................................18

28 U.S.C. § 2201(a) ..........................................................................................6

C.P.L.R. § 202 ..................................................................................................14

C.P.L.R. § 214(4)..............................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 .............................................................................................17

Fed. R. Civ. P. 12(b)(1).....................................................................................1

Fed. R. Civ. P. 56(a) .........................................................................................1, 5

S.D.N.Y. Local Civ. R. 56.1 .............................................................................2

Plaintiff Bank Leumi USA ("BLUSA") hereby submits its memorandum of law in support of its motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This is a classic case of buyer's remorse.  In February 2008, Enrique Ehrlich and David Ehrlich, both sophisticated investors and businessmen, purchased $750,000 face value of Kaupthing Bank bonds (the "Bonds").  BLUSA purchased the Bonds in accordance with their instructions and the agreements that govern the accounts opened by defendants David Ehrlich, Angela Tykocki, Enrique Ehrlich, and Sara Goldstein (collectively, "Defendants").  Later that year, Kaupthing Bank defaulted on its debt and Defendants' investments in the Bonds were rendered virtually worthless.  Now, years later, Defendants purport to blame BLUSA for their losses.

Defendants allege that BLUSA acted as their "investment adviser" and failed to disclose certain risks related to investing in the Bonds.  That theory is flatly contradicted by the terms of the agreements that govern their BLUSA accounts and by the order forms that Defendants signed on the day they purchased the Bonds.  In each, Defendants expressly acknowledged that BLUSA would not provide investment advice in connection with Defendants' purchase and sale of investments for their accounts.  Beyond that, the agreements and order forms specifically stated that Defendants' decision to invest in the Bonds would be at their sole risk with BLUSA taking no responsibility for any investment losses.  On virtually identical facts, courts applying governing New York law have held that brokers do not owe a duty to provide investment advice to customers in connection with their purchase of debt securities through non-discretionary accounts.  *Jordan v. UBS AG*, No. 600816/02, 2003 WL 25668674 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 16, 2003), *aff'd*, 11 A.D.3d 283 (1st Dep't 2004).

There is no dispute regarding the materials facts.  Therefore, BLUSA is entitled to:  (i) a judgment on Count I of its Complaint declaring that it has no tort or contract liability in connection with Defendants' investment in the Bond; and (ii) dismissal with prejudice of Defendants' four counterclaims.

## UNDISPUTED FACTS[1]

### A.    Defendants Opened Non-Discretionary Brokerage Accounts With BLUSA.

Defendants opened three non-discretionary brokerage accounts with BLUSA.  (SofF ¶¶ 1-11.)  Under the governing agreement ("Agreement"),[2] Defendants represented that they were sophisticated investors and that they would evaluate the risks of each investment they made for their BLUSA accounts:

> f.  You agree to the following:
>
> (1)  The Bank will be acting solely as your agent, and the Assets will be acquired, held, and disposed of at your sole risk….
>
> (3)  The decision to acquire, hold, and dispose of the Assets will be made by you following your consideration of the risks involved including (without limitation) the risks referred to in paragraph 23(f)(4), and you acknowledge that the Bank has made no representations or warranties to you related to any such risks.  You further acknowledge that you are a sophisticated investor able to evaluate the merits and risks of all investments in the Assets and are able to bear the economic risk of these kinds of investments.

(SofF ¶ 22.)  The Defendants also acknowledged under the Agreement that the securities they purchased were "**SUBJECT TO INVESTMENT RISKS, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL AMOUNT INVESTED**."  (SofF ¶ 23 (caps and emphasis in original).)

---

[1]    The undisputed material facts entitling BLUSA to summary judgment are set forth in BLUSA's Statement of Undisputed Facts Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York ("SofF").  Those facts are summarized here.

[2]    The Agreement consists of the international account applications that each Defendant signed and a separate document called the International Account Terms.  (SofF ¶¶ 12-16, 24.)

The Agreement also stated that BLUSA would "not be responsible for any depreciation . . . or loss in value of the Assets, except for that actual damages caused solely by the Bank's fraudulent act or willful misconduct."  (SofF ¶ 22.)

Of particular relevance to this case, Defendants further agreed that BLUSA would not provide any investment advice in connection with Defendants' purchases and sales of securities:

> Investment Advice; Bank's Liability; Fees.
>
> a.   Neither the Bank nor its officers or employees provide investment advice relating to the purchase or sale, pursuant to this Agreement, of foreign currencies or financial assets.  Investment advice is available from the Bank only if you enter into an Investment Management Agreement with the Bank and then only in the circumstances provided for in that Investment Management Agreement.

(SofF ¶ 17.)  Instead, BLUSA was obligated to follow Defendants' instructions and to purchase the securities selected by Defendants for their BLUSA accounts.  (SofF ¶ 20.)  BLUSA did not have discretion to purchase or sell securities for Defendants.  (SofF ¶ 21.)

**B.    Defendants Purchased The Bonds For Their BLUSA Accounts.**

On or about February 21, 2008, Enrique Ehrlich signed an order form instructing BLUSA to purchase a total of $515,000.00 face value of bonds issued by Kaupthing Bank for his account. (SofF ¶ 25.)  David Ehrlich also signed an order form instructing BLUSA to purchase a total of $235,000.00 face value of bonds issued by Kaupthing Bank for his account.  (SofF ¶ 26.)

The order forms that Enrique Ehrlich and David Ehrlich signed state the following:

> I CONFIRM REQUESTING THE BANK TO EXECUTE ON MY BEHALF AT MY SOLE RISK WITHOUT ANY RESPONSIBILITY ON THE BANK'S PART, THE FOLLOWING TRANSACTION FOR THE FINANCIAL ASSETS SELECTED BY ME AND WITHOUT THE BANK ADVISING ME IN THIS MATTER.  THE FINANCIAL ASSETS ARE (1) NOT A DEPOSIT OR OTHER OBLIGATION OF OR GUARANTEED BY THE BANK AND (2) SUBJECT TO

3

> INVESTMENT RISKS, INCLUDING POSSIBLE LOSS OF THE
> PRINCIPAL AMOUNT INVESTED.

(SofF ¶ 27.)  That same day, BLUSA executed those instructions and purchased the Bonds with a total face value of $750,000.  (SofF ¶¶ 29-30.)

### C.    BLUSA Seeks A Declaration Of Non-Liability After Defendants Threatened to File a Lawsuit.

On October 9, 2008, Kaupthing Bank defaulted on its debt, rendering the Bonds purchased by Defendants virtually worthless.  (SofF ¶¶ 31-33.)  Years later, on March 30, 2012, Defendants' Uruguayan counsel sent BLUSA a letter, demanding that BLUSA reimburse the total price of their investment in the Bonds plus interest or face legal action.  (SofF ¶ 34.)

Thereafter, BLUSA filed this action seeking a declaratory judgment that it has no liability in contract or tort in connection with Defendants' investment in the Bonds.  (SofF ¶ 35.) Defendants filed a motion to dismiss the complaint, arguing that this Court lacked personal jurisdiction over them and that New York was an inconvenient forum.  (SofF ¶ 36.)  This Court denied Defendants' motion in its entirety.  (SofF ¶ 38.)  Having lost their motion, Defendants informed the Court that they would "no longer be able to appear in these proceedings" through counsel or *pro se*.  (SofF ¶ 39.)  BLUSA moved for a default judgment, but, after receiving notice of that motion, Defendants reappeared in this action through new counsel.  (SofF ¶¶ 40-41.)

Defendants ultimately filed an answer with four counterclaims against BLUSA:  a claim under Section 215 of the Investment Advisers Act ("Advisers Act"); a claim for breach of fiduciary duty; a claim for negligence; and a claim for breach of contract.  (CC ¶¶ 195-219.)[3]

---

[3]    Certain excerpts of Defendants' Amended Answer and Counterclaims, dated Apr. 18, 2014 ("CC"), are attached as Exhibit C to the Declaration of James Ancone In Support of BLUSA's Motion for Summary Judgment, executed Aug. 14, 2014 ("Ancone Decl.").

The undisputed record demonstrates that each of these claims is without merit, and that this Court should grant summary judgment in BLUSA's favor on each of them.

**SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted where the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  When the burden of proof at trial would fall on the non-moving party, the moving party may meet its summary judgment burden by pointing to a lack of evidence on an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986).  When the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must then present specific evidence demonstrating a genuine dispute for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

**ARGUMENT**

**I.  BLUSA IS ENTITLED TO A FINAL JUDGMENT DECLARING THAT IT HAS NO LIABILITY IN TORT OR CONTRACT IN CONNECTION WITH DEFENDANTS' INVESTMENT IN THE BONDS**

There is no genuine dispute regarding the following key material facts that underlie BLUSA's summary judgment application:  the Agreement governing Defendants' BLUSA accounts provides that BLUSA would not provide investment advice to Defendants and would not be liable for any investment losses (SofF ¶¶ 17-19, 22); that Defendants' BLUSA accounts were non-discretionary brokerage accounts (SofF ¶ 21); that Enrique Ehrlich and David Ehrlich signed order forms for the Bonds expressly acknowledging that BLUSA did not provide any investment advice with respect to the Bonds (SofF ¶¶ 25-27); and that BLUSA executed

5

Defendants' orders to purchase $750,000 face value worth of the Bonds for their BLUSA accounts (SofF ¶¶ 29-30).

The law, as applied to these undisputed facts, fully supports BLUSA's motion.  A declaratory judgment is appropriate when there is a "substantial controversy, between parties having adverse legal interests[.]"  *Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941); *see* 28 U.S.C. § 2201(a).  "It is immaterial that frequently, in [a] declaratory judgment suit," *id.*, like this case, "the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case."  *Id*.  In determining whether to grant declaratory relief, courts in this Circuit are guided by two factors:  "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Duane Reade, Inc. v. St. Paul Fire and Marine Ins.*, 411 F.3d 384, 389 (2d Cir. 2005).

Applying this standard, the court in *Salomon Brothers, Inc. v. Carey* held that declaratory relief would be appropriate in the context of a dispute between a broker and its customer.  556 F. Supp. 499 (S.D.N.Y. 1983).  There, the defendant, a customer of Salomon Brothers, sent a letter to the plaintiff threatening suit based on Salomon Brothers' alleged breach of fiduciary duties in its handling of the customer's account and its alleged breach of a customer agreement.  *Id.* at 500.  In response, Salomon Brothers commenced a declaratory judgment action seeking a declaration that it was not liable to the customer in tort or contract.  *Id.*  Based on these facts, the court concluded that a declaratory judgment would clarify and settle the issues of contract and tort liability between the parties and would finalize the controversy, especially if the customer decided to assert counterclaims against the broker.  *Id*. at 502; *see also Wells Fargo Bank, N.A. v.*

*Sharma*, 642 F. Supp. 2d 242, 246 (S.D.N.Y. 2009) (declaratory judgment of non-liability relating to alleged tort and contract liability appropriate).

For similar reasons, declaratory relief is appropriate here. First, a declaration from this Court will settle not only BLUSA's claim, but also the legal issues that the Defendants have put into dispute. In their Counterclaims, Defendants allege that BLUSA acted as Defendants' investment adviser and is liable to them under various theories for the purchase price of the Bonds, plus interest. (CC ¶¶ 195-209; SofF ¶¶ 34, 42.) As explained below, through discovery, BLUSA has demonstrated that it did not act as Defendants' investment adviser, that it properly executed Defendants' instructions to purchase the Bonds in accordance with the Agreement, and that it in no way is liable in tort or contract for Defendants' alleged losses. Second, declaratory relief will finalize the controversy between the parties, especially because Defendants have now had the benefit of full discovery and have asserted counterclaims against BLUSA.

### A. BLUSA Did Not Owe A Duty To Advise Defendants About The Bonds And, Therefore, Cannot Be Held Liable In Tort For Defendants' Investment Losses In The Bonds.

BLUSA is entitled to a declaration that: (i) BLUSA is not liable in tort in connection with Defendants' investment in the Bonds; and (ii) BLUSA has no obligation to refund the amounts paid by Defendants to purchase the Bonds. (Compl. ¶ 64.)[4]

Defendants argue that BLUSA is liable in tort because BLUSA failed to "inform Defendants of the risk involved in purchasing Kaupthing [B]onds at the time of their purchase or of Kaupthing [B]ank's rapid deterioration after the bond purchase[.]" (CC ¶ 119.) But Defendants' tort theory fails because BLUSA, as a matter of law, did not owe Defendants a duty to advise them about the risks associated with investing in the Bonds. The Agreement, the order

---

[4]     BLUSA's Complaint for Declaratory Relief, dated June 5, 2012 ("Compl."), is attached as Exhibit A to the Ancone Declaration.

forms, and well-settled case law are dispositive.  For a party to be liable in tort, it must owe a

legal duty to the party allegedly damaged.[5]  Defendants fail to raise a genuine issue of material

fact on this essential element.[6]

   *Jordan v. UBS AG*, No. 600816/02, 2003 WL 25668674 (N.Y. Sup. Ct., N.Y. Cnty. Apr.

16, 2003), *aff'd*, 11 A.D.3d 283 (1st Dep't 2004), a case with remarkably similar facts to this

case, compels summary judgment in BLUSA's favor.  In *Jordan*, the plaintiffs alleged that the

defendant's manager advised them to purchase about $3.3 million of bonds issued by a foreign

company for plaintiffs' brokerage account.  *Id.* at 1.  The plaintiffs alleged that they relied on the

manager's representation that the issuer was a "safe investment."  *Id.*  However, within two years

of the purchase, the issuer filed for reorganization, *id.*, and the plaintiffs brought a breach of

fiduciary duty claim against the defendant broker based upon its "failure to, *inter alia*,

adequately apprise them of the risks associated with their investment[.]"  *Id.* at 3.  Like

Defendants here, the plaintiffs also claimed that their broker had a duty to "inform [plaintiffs] of

all known risks concerning the security recommended."  *Id.*

   The court rejected this argument for two reasons.  First, the agreement that governed the

account at issue demonstrated that the defendant broker was not entrusted with the duties

---

[5]     *See, e.g.*, *DeBlasio v. Merrill Lynch*, No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *28
(S.D.N.Y. July 27, 2009) (breach of fiduciary duty claim under New York law requires "the
existence of a fiduciary duty"); *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)
(negligence claim under New York law necessitates "the existence of a duty"); *Hudson River
Club v. Consol. Edison Co. of N.Y., Inc.*, 275 A.D.2d 218, 220 (1st Dep't 2000) (negligent
misrepresentation claim under New York law requires "a special relationship of trust or
confidence, which creates a duty").

[6]     Defendants carry the burden of proof to show that BLUSA owed them a duty, despite this
being a declaratory judgment action.  *Preferred Acc. Ins. Co. of N.Y. v. Grasso*, 186 F.2d 987,
990-91 (2d Cir. 1951) (burden of proof in declaratory judgment action borne by party asserting
the affirmative of the issue); *Chevron Corp. v. Salazar*, Nos. 11 Civ. 3718 (LAK), 11 Civ. 0691
(LAK), 2011 WL 3628843, at *7 (S.D.N.Y. Aug. 17, 2011) (same).  Therefore, to prevail on its
claim for a judgment of non-liability, BLUSA need only point to the absence of evidence on an
essential element of Defendants' claims.  *Celotex*, 477 U.S. at 322-324.

claimed by the plaintiffs.  *Id*.  Under the agreement, the plaintiffs represented that they would be

"solely responsible for making [their] own independent appraisal of, and investigation into the

financial condition and creditworthiness of any issuer" and that they would not rely on the broker

for advice.  *Id*.  Second, the parties' relationship was an ordinary broker-customer relationship in

which the broker did not have discretion over which securities to buy or sell for the customer's

account.  *Id*.  The First Department agreed that no fiduciary duty existed and affirmed.  *Jordan v.*

*UBS AG*, 11 A.D.3d 283, 284 (1st Dep't 2004).

  The underlying facts here are virtually identical  As in *Jordan*, BLUSA was not entrusted

with a duty to advise Defendants about the risks associated with investing in the Bonds; in fact,

the Agreement states just the opposite:

> a. Neither the Bank nor its officers or employees provide
> investment advice relating to the purchase or sale, pursuant to this
> Agreement, of foreign currencies or financial assets.  Investment
> advice is available from the Bank only if you enter into an
> Investment Management Agreement with the Bank and then only
> in the circumstances provided for in that Investment Management
> Agreement.

(SofF ¶ 17.)  Defendants also agreed that "[t]he decision to acquire, hold, and dispose of the

Assets [would] be made by [Defendants] following [their] consideration of the risk involved[.]"

(SofF ¶ 22.)  Defendants further represented that they were "sophisticated investor[s] able to

evaluate the merits and risks of all investments in the Assets[.]"  (SofF ¶ 22.)  What is more,

Defendants again acknowledged that BLUSA did not provide them with any investment advice

on the very order forms they signed for the Bonds:

> I CONFIRM REQUESTING THE BANK TO EXECUTE ON MY
> BEHALF AT MY SOLE RISK WITHOUT ANY
> RESPONSIBILITY ON THE BANK'S PART, THE
> FOLLOWING TRANSACTION FOR THE FINANCIAL
> ASSETS SELECTED BY ME AND WITHOUT THE BANK
> ADVISING ME IN THIS MATTER.  THE FINANCIAL ASSETS

ARE (1) NOT A DEPOSIT OR OTHER OBLIGATION OF OR GUARANTEED BY THE BANK AND (2) SUBJECT TO INVESTMENT RISKS, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL AMOUNT INVESTED

(SofF ¶ 27 (caps in original).)

The undisputed documentary record demonstrates that BLUSA did not have any discretion to purchase or sell securities for Defendants' accounts.  (SofF ¶ 21.)  Such an arrangement means that there can be no fiduciary duty as a matter of law.  "Under New York law, as generally, there is no general fiduciary duty inherent in an ordinary broker/customer relationship.  Such a duty can arise only where the customer has delegated discretionary trading authority to the broker."  *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) (citations omitted).[7]  Instead, as set forth in the Agreement, BLUSA's obligation was limited to executing Defendants' instructions to purchase or sell securities for their accounts in accordance with the Agreement.  (SofF ¶ 20); *see also Jordan*, 11 A.D.3d at 284 ("Absent agreement to the contrary, not present here, a broker does not owe fiduciary duties to a purchaser of securities, excepting executing trades in accordance with the customer's instructions.") (citations omitted).  This is precisely what BLUSA did when, on February 21, 2008, it executed Enrique Ehrlich's and David Ehrlich's instructions to purchase a total of $750,000 face value of the Bonds for their respective accounts.  (SofF ¶¶ 29-30.)  Defendants do not (and cannot) complain about BLUSA's execution of those instructions.

---

[7]     *See also Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237, 246 (S.D.N.Y. Aug. 8, 1996) ("In the absence of discretionary trading authority delegated by the customer to the broker . . . a broker does not owe a general fiduciary duty to his client."), *aff'd*, 157 F.3d 138 (2d Cir. 1998); *Fesseha v TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 268-269 (1st Dep't 2003) ("The claim for breach of fiduciary duty was properly dismissed since plaintiff opened a nondiscretionary trading account, and the relationship between plaintiff and defendant was merely that of broker and customer.").

The unambiguous language of the Agreement and order forms and the undisputed fact that BLUSA did not have any discretion over Defendants' accounts conclusively demonstrate that BLUSA owed no duty (fiduciary or otherwise) to advise Defendants in connection with their investment in the Bonds.  Therefore, BLUSA is entitled to a judgment declaring that it has no tort liability in connection with Defendants' investment in the Bonds.

**B.      BLUSA Did Not Owe A Contractual Duty To Advise Defendants About The Bonds And, Therefore, Cannot Be Held Liable In Contract For Defendants' Investment Losses In The Bonds.**

BLUSA is also entitled to a declaration that:  (i) the Agreement, including the express limitation on BLUSA's liability, is valid and enforceable against Defendants; (ii) BLUSA is not liable under the Agreement in connection with Defendants' investment in the Bonds; and (iii) BLUSA has no obligation to refund the amounts paid by Defendants to purchase the Bonds. (Compl. ¶ 64.)

"A contract can be comprised of separate writings or documents if the writings make it clear that they are to be read in conjunction with other writings to determine the intent of the parties."  *Perl v. Smith Barney Inc.*, 230 A.D.2d 664, 665 (1st Dep't 1996) (citations omitted). The undisputed record demonstrates that Defendants completed and signed international account applications (each an "Account Application") to open their BLUSA accounts (SofF ¶¶ 1-11); that the Account Applications specifically reference and incorporate a separate set of provisions entitled the International Account Terms (SofF ¶¶ 12-13); and that the Agreement governing their BLUSA accounts constitute the Account Application and the International Account Terms together.  (SofF ¶¶ 14-16, 24.)  Among the provisions included in the Agreement is a provision limiting BLUSA's liability:

f.  You agree to the following:

\*        \*        \*

(4)    The Bank will not be responsible for any depreciation,
currency exchange losses, or loss in value of the Assets, except for
that actual damages caused solely by the Bank's fraudulent act or
willful misconduct.    The Bank will not be responsible for any
action that it takes according to your instructions or for any action
taken by it under the authority given to it under paragraphs 23(a)-
(b)

(SofF ¶ 22.)  Limitation-of-liability clauses such as this are regularly enforced by courts applying

New York law.  *Kalisch-Jarcho v. City of N.Y.*, 58 N.Y.2d 377, 384 (1983); *see also SNS Bank v.

Citibank, N.A.*, 7 A.D.3d 352, 355 (1st Dep't 2004) ("[P]laintiff's claim that Citibank breached

the financial management agreement by making improper, imprudent, and unsuitable

investments would be barred by that contract's exculpatory clause.").[8]  The Agreement also

included Defendants' acknowledgement that they would make all investment decisions and that

BLUSA would execute those orders on behalf of Defendants.  (SofF ¶¶ 20, 22.)

The undisputed facts also show that BLUSA complied with the Agreement in connection

with Defendants' investment in the Bonds.  Again, *Jordan v. UBS AG*, 2003 WL 25668674, is

instructive.  There, the court held that the broker did not violate its customer agreement in

purchasing certain bonds on the customers' behalf, despite the customers' allegation that the

broker was under a duty to advise them about the risks associated with the bonds.  2003 WL

25668674, at 1, 4.  The agreement expressly disclaimed that the broker would provide any such

advice.  *Id.* at 3.  In dismissing the breach of contract claim, the court explained that the plaintiffs

did "not set forth any provisions in the [a]greement, which impose[d] a duty on [the broker] to

advise them of any risks inherent in the Eurobonds investment, and upon which liability can be

---

[8]      Limitation-of-liability clauses are not enforceable where the party seeking its benefit
acted willfully or in a grossly negligent manner.  *Kalisch-Jarcho*, 58 N.Y.2d at 384-385.
Defendants do not allege BLUSA acted willfully or in a grossly negligent manner.

predicated[.]" *Id.* at 4.  Similarly, here, the Agreement (and order forms) disclaimed BLUSA's provision of investment advice, (SofF ¶¶ 17, 27), and thus there is no provision in the parties' contract on which contract liability could be premised.  Moreover, as explained above, BLUSA discharged its duty to execute Defendants' instructions to purchase the Bonds.  (SofF ¶¶ 29-30.) Accordingly, no genuine issue of material fact exists regarding the enforceability of the Agreement and BLUSA's compliance with it.

## II.      BLUSA IS ENTITLED TO SUMMARY JUDGMENT ON THE BREACH OF FIDUCIARY DUTY COUNTERCLAIM

Defendants allege that BLUSA is liable to them for their investment losses in the Bonds by failing to provide Defendants publicly-available information concerning Kaupthing Bank's creditworthiness.  (CC ¶¶ 118-119, 208.)  Defendants' argument is based on the false premise that BLUSA owed Defendants a fiduciary duty.  BLUSA is entitled to summary judgment on this counterclaim for two, independent reasons.

### A.      The Breach Of Fiduciary Duty Counterclaim Is Time-Barred.

First, the breach of fiduciary duty counterclaim must be dismissed because it is time-barred under New York's three-year statute of limitations.  *See* N.Y. C.P.L.R. § 214(4).  The three-year statute of limitations applies to Defendants' breach of fiduciary duty counterclaim because Defendants seek only monetary damages from BLUSA for the alleged loss in the value of the Bonds, plus interest.  (SofF ¶ 42); *see IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) ("Where the remedy sought is purely monetary in nature, courts construe the suit as alleging 'injury to property' within the meaning of CPLR 214 (4), which has a three-year limitations period."); *see also Indep. Order of Foresters*, 157 F.3d at 942 ("[A] breach of fiduciary duty claim seeking money damages to compensate for the decline in the value of investments has been held subject to this three-year statute.").

13

A breach of fiduciary duty claim accrues when "damages are sustained." *Morgan Stanley*, 12 N.Y.3d at 140 (internal quotation marks omitted); *see also Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993) ("[A] tort cause of action cannot accrue until an injury is sustained.") (construing N.Y. C.P.L.R. § 214(4)).  Here, Defendants' counterclaim accrued no later than October 9, 2008, the date Kaupthing Bank defaulted on its debt, which allegedly resulted in Defendants' injury.  (SofF ¶¶ 31, 42.)  Therefore, the three-year statute of limitations expired no later than October 9, 2011, years before Defendants asserted this counterclaim against BLUSA on March 4, 2014.  (SofF ¶ 43.)  BLUSA is entitled to summary judgment on the breach of fiduciary duty counterclaim because Defendants simply waited too long to bring it.[9]

**B.      BLUSA Owed No Duty To Defendants To Advise Them In Connection With Defendants' Investment In The Bonds.**

Second, the breach of fiduciary duty counterclaim must be dismissed because BLUSA did not owe Defendants a duty (fiduciary or otherwise) to advise them in connection with their investment in the Bonds, as explained in Part I.A. above.

**III.    BLUSA IS ENTITLED TO SUMMARY JUDGMENT ON THE INVESTMENT ADVISERS ACT COUNTERCLAIM**

Defendants purport to assert a counterclaim under the Advisers Act against BLUSA.  (CC ¶¶ 195-203.)  BLUSA is entitled to summary judgment on this counterclaim because the undisputed record demonstrates that BLUSA and Defendants did not enter into an investment advisory agreement, an essential element of that counterclaim.

"In order to maintain a private action under Section 215 of the IAA, a plaintiff must allege that he or she entered into a contract for investment advisory services with an investment

---

[9]      Even if New York's borrowing statute resulted in the application of a statute of limitations from a different jurisdiction, *see* N.Y. C.P.L.R. § 202, the breach of fiduciary duty counterclaim would still be time-barred because the Court would apply the shorter statute of limitations under the borrowing statute.

adviser." *DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *16

(S.D.N.Y. July 27, 2009).  In *DeBlasio v. Merrill Lynch*, the court dismissed an Advisers Act

claim as a matter of law because the account agreement with the plaintiff provided, among other

things, that the account was "a brokerage account and not an advisory account" and that, "[i]f

you decide to open an investment advisory account, we will provide you with more information

regarding these services."  2009 WL 2242605, at *17; *see also Neely v. Bar Harbor Bankshares*,

270 F. Supp. 2d 44, 49 (D. Me. 2003) (granting summary judgment and dismissing Advisers Act

claim because plaintiff failed to prove existence of an investment advisory agreement with

defendant).

Here, the Agreement between BLUSA and Defendants is not an investment advisory

agreement.  (SofF ¶¶ 17-19.)  Indeed, like the agreement in *DeBlasio v. Merrill Lynch*, the

Agreement expressly disclaims that BLUSA would provide any investment advice to

Defendants:

> Neither [BLUSA] nor its officers or employees provide investment advice relating to the purchase or sale, pursuant to this Agreement, of foreign currencies or financial assets.  Investment advice is available from [BLUSA] only if you enter into an Investment Management Agreement with [BLUSA] and then only in the circumstances provided for in that Investment Management Agreement.

(SoF ¶ 17.)  Moreover, Mr. Donald L. Bittker, BLUSA's deputy in-house counsel, testified at his

deposition that BLUSA did not offer investment advisory services, except in one narrow

circumstance not applicable here.  (SoF ¶¶ 18-19.)  The Agreement conclusively demonstrates

that BLUSA and Defendants entered into a broker-customer relationship, not an investment

adviser-client relationship.  Therefore, there is no genuine issue of material fact on an essential

element of Defendants' counterclaim, and BLUSA is entitled to summary judgment.  *Celotex*, 477 U.S. at 322-324.

## IV.    BLUSA IS ENTITLED TO SUMMARY JUDGMENT ON THE BREACH OF CONTRACT COUNTERCLAIM

In their amended pleading, Defendants conjured up two additional counterclaims—for breach of contract and for negligence—that have nothing to do with the real dispute between the parties.  Defendants allege that BLUSA purportedly disclosed Defendants' Uruguayan identification numbers and certain information regarding their BLUSA accounts in an August 2012 filing with the Court, (CC ¶ 143), even though ***Defendants*** placed this ***exact*** information in the public record ***a month before*** in July 2012 when they filed their Account Applications as part of their unsuccessful motion to dismiss.  (SofF ¶ 37.)  As explained below in Part IV.B., the new breach of contract counterclaim fails as a matter of law for a host of reasons.  But the Court need not reach those bases for dismissal.  This counterclaim should be dismissed, as an initial matter, for lack of subject matter jurisdiction.

### A.    The Breach of Contract Counterclaim Should Be Dismissed For Lack of Subject Matter Jurisdiction.

In their haste to cobble together this meritless counterclaim, Defendants failed to allege an independent basis for subject matter jurisdiction for this claim.  Defendants merely allege that the Court has subject matter jurisdiction over all four of their counterclaims pursuant to the Advisers Act and the "common law."  (CC ¶¶ 72-73.)  But, of course, the breach of contract counterclaim (a common law counterclaim) does not arise under any federal law.  And there is no allegation regarding the amount in controversy on this new counterclaim, let alone that the

16

amount exceeds $75,000.[10]  Because there is no federal question or diversity jurisdiction, the only basis for this Court to exercise subject matter jurisdiction would be under the supplemental jurisdiction statute.  28 U.S.C. § 1367(a); *see Rosario v. Int'l Auto Mall & Leasing Ctr., Inc.*, No. 12 Civ. 4059 (ALC), 2013 WL 1144893, at *2 (S.D.N.Y. Mar. 19, 2013).

Yet supplemental jurisdiction does not exist here.  Under 28 U.S.C. § 1367(a), a district court "has the power to exercise supplemental jurisdiction over state claims *if* they derive from a . . . nucleus of operative fact common to the jurisdiction conferring claim . . . ."  *Burgess v. Omar*, 345 F. Supp. 2d 369, 371 (S.D.N.Y. 2004) (emphasis added; internal quotation marks omitted); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).  Here, the breach of contract counterclaim, which arises from BLUSA's purported disclosure of Defendants' information on August 15, 2012, does not derive from a nucleus of operative fact common to the Advisers Act and breach of fiduciary duty counterclaims, which are based on Defendants' decision to invest in the Bonds in 2008.  *Kirschner v. Klemons*, 225 F. 3d 227, 239 (2d Cir. 2000) (no common nucleus of operative fact where claims against one defendant arose from alleged dissemination of confidential information and claims against another defendant did not); *see also Burgess*, 345 F. Supp. 2d at 371-72.

Even if the breach of contract counterclaim were within the Court's supplemental jurisdiction, the Court would be obliged to decline to exercise jurisdiction under 28 U.S.C. § 1367(c).  Because the Advisers Act and breach of fiduciary duty counterclaims should be dismissed, so too should the Court dismiss this new counterclaim.  28 U.S.C. § 1367(c)(3) (a

---

[10]     BLUSA suspects that defense counsel could not allege that the amount in controversy exceeds $75,000 on either of the two new counterclaims without violating his obligations under Rule 11 of the Federal Rules of Civil Procedure.

court may decline supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction").

Apart from that, the Court should decline to hear the breach of contract counterclaim because it is merely an afterthought, asserted nearly two years into this litigation and only after Defendants recognized that their principal counterclaims—which are based on entirely different facts—are legally deficient.  28 U.S.C. § 1367(c)(4); *see also Rosario*, 2013 WL 1144893, at *3 (declining supplemental jurisdiction because counterclaim "garnered so little attention from its moving party").

Therefore, this Court should dismiss the breach of contract counterclaim for lack of subject matter jurisdiction.  *See Rosario*, 2013 WL 1144893, at *4 ("Because [defendant's] is a permissive counterclaim, has no independent basis for federal jurisdiction and this Court declines to exercise supplemental jurisdiction, there is no subject matter jurisdiction and it is barred from being litigated in federal court."); *Burgess*, 345 F. Supp. 2d at 371-72.[11]

**B.**     **The Breach of Contract Counterclaim
          Should Be Dismissed On The Merits.**

Even if the Court had subject matter jurisdiction over the breach of contract counterclaim, it would still be legally deficient and subject to dismissal for numerous reasons.  First, Defendants do not specify which provision of the Agreement has allegedly been breached.  This alone requires dismissal.  *See Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837 (HB), 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006) ("In a breach of contract claim, a plaintiff must plead the provisions of the contract upon which the claim is based.") (internal quotation marks omitted).

---

[11]     Both of Defendants' new counterclaims are permissive, not compulsory, counterclaims.

Second, Defendants knowingly waived any contractual right to non-disclosure of this information when they intentionally placed it into the public record as part of their initial motion to dismiss. (SofF ¶ 37); *see also GMAC v. Clifton-Fine Cent. Sch. Dist.*, 85 N.Y.2d 232, 236 (1995) ("Waiver requires the voluntary and intentional abandonment of a known right . . . .").

Moreover, the record is devoid of any evidence of how Defendants have been damaged. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (damages is an essential element of a breach of contract claim). "Courts have held . . . that the release of potentially sensitive information alone, without evidence of misuse, is insufficient to cause damage to a plaintiff." *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608 (S.D.N.Y. 2009) (dismissing breach of contract claim for failure to allege cognizable damages); *see also Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006) (bank customers whose personal information was stolen from a company that had been retained by the bank did not suffer any injury). What is more, Defendants could not have suffered any harm from BLUSA's conduct because Defendants themselves placed this information into the public domain first.

## V.   BLUSA IS ENTITLED TO SUMMARY JUDGMENT ON THE NEGLIGENCE COUNTERCLAIM

Like the breach of contract counterclaim, summary judgment in BLUSA's favor should be granted on the negligence counterclaim for lack of subject matter jurisdiction and, in any event, on the merits.

### A.   The Negligence Counterclaim Should Be Dismissed For Lack of Subject Matter Jurisdiction.

The negligence counterclaim should be dismissed for lack of subject matter jurisdiction for the same reasons set forth in Part IV.A. above.

19

**B.    The Negligence Counterclaim
        Should Be Dismissed On The Merits.**

Even if the Court had subject matter jurisdiction over the negligence counterclaim, it would still fail because it is based on the same allegations that give rise to Defendants' meritless breach of contract counterclaim.  "If a tort claim does no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached, the tort claim cannot be sustained."  *Clarendon Nat'l Ins. Co. v. Health Plan Adm'rs.*, No. 08 Civ 6279 (GBD), 2009 WL 3053736, at *3 (S.D.N.Y. Sept. 24, 2009) (internal quotation marks omitted).  Here, Defendants allege that BLUSA breached an undefined duty to Defendants by "disclosing Defendants' confidential banking and personal information."  (CC ¶ 211.)  But this alleged duty is identical to the purported contract duty that Defendants allege that BLUSA breached.  (CC ¶ 215.)

Additionally, even if the negligence counterclaim were not duplicative, it would still fail because Defendants do not—indeed, cannot—allege (much less, prove) that BLUSA's conduct was the proximate cause of any (non-existent) injury to Defendants.[12]  To emphasize: Defendants themselves knowingly filed their Account Applications with this Court on the public docket **before** BLUSA filed those same documents.  (SofF ¶ 37.)  Thus, any alleged (non-existent) damages arising from the disclosure of the information contained in the Account Applications would have been proximately caused by Defendants' own conduct.

---

[12]    To prevail on the negligence counterclaim, Defendants must show: (1) existence of a duty owed by BLUSA to Defendants; (2) breach of that duty; and (3) that the breach was the proximate cause of Defendants' alleged injury.  *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (applying New York law).

## **CONCLUSION**

For all the foregoing reasons, this Court should enter a judgment for BLUSA, declaring that:  (i) BLUSA is not liable in tort in connection with Defendants' investment in the Bonds; (ii) the Agreement, including the express limitation on BLUSA's liability, is valid and enforceable against Defendants; (iii) BLUSA is not liable under the Agreement in connection with Defendants' investment in the Bonds; and (iv) BLUSA has no obligation to refund the amounts paid by Defendants to purchase the Bonds or any interest thereon.

Additionally, the Court should enter summary judgment for BLUSA on Defendants' four counterclaims and the counterclaims should be dismissed with prejudice.

Dated:  August 14, 2014
    New York, New York

                                MAYER BROWN LLP

                                By:    /s/ Mark G. Hanchet

                                        Mark G. Hanchet, Esq.
                                        James Ancone, Esq.
                                        1675 Broadway
                                        New York, New York  10019
                                        Tel:  (212) 506-2500
                                        Fax: (212) 262-1910

                                        *Counsel for Plaintiff Bank Leumi USA*

21

<u>**CERTIFICATE OF SERVICE**</u>

I, James Ancone, an attorney, hereby certify that, on August 14, 2014, I caused true and correct copies of the foregoing document to be sent to Defendants' counsel of record via ECF and at the following email address:

Jose Raul Alcantar Villagran, Esq. (JA2849)
ALCANTAR LAW PLLC
22 Cortlandt Street, 16th Floor
New York, New York 10007
Tel: (212) 658-0222
Fax: (646) 568-5843
raul.alcantar@alcantarlaw.com
*Attorneys for Defendants*


Dated:    August 14, 2014
          New York, NY


                                    By:    /s/ James Ancone
                                           James Ancone