Mark G. Hanchet, Esq.
James Ancone, Esq.
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Counsel for Plaintiff Bank Leumi USA*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BANK LEUMI USA,<br><br>                     Plaintiff,<br><br>          – against –<br><br>DAVID EHRLICH, ANGELA TYKOCKI,<br>ENRIQUE EHRLICH, and<br>SARA GOLDSTEIN,<br><br>                     Defendants. | Case No. 12-CV-4423 (AJN) |

## BANK LEUMI USA'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO RULE 56.1 OF THE LOCAL CIVIL RULES FOR THE SOUTHERN DISTRICT OF NEW YORK

Pursuant to Rule 56.1 of the Local Civil Rules of Southern District of New York,

Plaintiff Bank Leumi USA, submits the following statement of material facts as to which there

can be no genuine issue for trial:

## DEFENDANTS OPENED NON-DISCRETIONARY BROKERAGE ACCOUNTS WITH BLUSA

1.       On September 17, 2002, Defendants David Ehrlich, Angela Tykocki, Enrique

Ehrlich, and Sara Goldstein  (collectively, "Defendants") applied to open three non-discretionary

brokerage accounts with Plaintiff Bank Leumi USA ("BLUSA").  (Decl. of Donald L. Bittker,

executed Aug. 5, 2014 ("Bittker Decl."), Ex. A at 1, Ex. B at 1, Ex. C at 1; Decl. of James

Ancone, executed Aug. 14, 2014 ("Ancone Decl."), Ex. D at 34:21-35:2.)

      2.      BLUSA opened:  (1) Account 0810 in the name of Enrique Ehrlich and David

Ehrlich; (2) Account 0829 in the name of Enrique Ehrlich and Sara Goldstein; and (3) Account

0837 in the name of David Ehrlich and Angela Tykocki.  (Bittker Decl., Ex. A at 1, Ex. B at 1,

Ex. C at 1.)[1]

      3.      On September 17, 2002, Enrique Ehrlich completed and signed an international

account application ("Account Application") to open Account 0810.  (Bittker Decl., Ex. A at 5A;

Ancone Decl., Ex. G at No. 1.)

      4.      On September 17, 2002, David Ehrlich completed and signed an Account

Application to open Account 0810.  (Bittker Decl., Ex. A at 5A; Ancone Decl., Ex. G at No. 2.)

      5.      Enrique Ehrlich and David Ehrlich were the "account owners" of Account 0810.

(Bittker Decl., Ex. A at 2-3.)

      6.      On September 17, 2002, Enrique Ehrlich completed and signed an Account

Application to open Account 0829.  (Bittker Decl., Ex. B at 6; Ancone Decl., Ex. C at ¶ 21, G at

No. 3.)

      7.      On September 17, 2002, Sara Goldstein completed and signed an Account

Application to open Account 0829.  (Bittker Decl. Ex. B at 6; Ancone Decl., Ex. C at ¶ 21, Ex. G

at No. 4.)

      8.      Enrique Ehrlich and Sara Goldstein were the "account owners" of Account 0829.

(Bittker Decl., Ex. B at 2-3.)

---

[1]    The papers filed by BLUSA in connection with its summary judgment motion are
redacted in accordance with Rule 5.2(a) of the Federal Rules of Civil Procedure.  Only the last
four digits of account numbers are used here.

9.      On September 17, 2002, David Ehrlich completed and signed an Account

Application to open Account 0837.  (Bittker Decl., Ex. C at 5A; Ancone Decl., Ex. G at No. 5.)

10.      On September 17, 2002, Angela Tykocki completed and signed an Account

Application to open Account 0837.  (Bittker Decl., Ex. C at 5A; Ancone Decl., Ex. G at No. 6.)

11.      David Ehrlich and Angela Tykocki were the "account owners" of Account 0837.

(Bittker Decl., Ex. C at 2-3.)

12.      Each of the Account Applications signed by each of the Defendants contains the

following statement:  "The Account Owner confirms receiving a copy of, and agreeing to, the

International Account Terms."  (Bittker Decl., Ex. A at 6, Ex. B at 6, Ex. C at 6.)

13.      The International Account Terms provide that "[t]hese are the 'International

Account Terms' referred to in the International Account Application."  (Bittker Decl., Ex. D at

1.)

14.      Article V of the International Account Terms provides as follows:

> **ARTICLE V – INVESTMENT AND FOREIGN CURRENCY
> PROVISIONS**
>
> If the Bank makes certain kinds of investments and/or purchases or
> sells foreign currencies for you, by your execution of the Account
> Application you agree to the following provisions and that they are
> a part of this Agreement: ….

(Bittker Decl., Ex. D at 17 (Art. V).)

15.      The International Account Terms define "Bank" as "Bank Leumi USA and its

successors and assigns."  (Bittker Decl., Ex. D at 1.)

16.      The International Account Terms define "you" and "your" as "each and every

individual or entity signing the Account Application as a 'Customer.'"  (Bittker Decl., Ex. D at

1.)

17.     Section 25(a) of Article V of the International Account Terms states that BLUSA

does not provide investment advice with respect to securities purchased for Defendants' BLUSA

accounts:

> Investment Advice; Bank's Liability; Fees.
>
> a.      Neither the Bank nor its officers or employees provide
> investment advice relating to the purchase or sale, pursuant to this
> Agreement, of foreign currencies or financial assets.  Investment
> advice is available from the Bank only if you enter into an
> Investment Management Agreement with the Bank and then only
> in the circumstances provided for in that Investment Management
> Agreement.

(Bittker Decl., Ex. D at 20 (§ 25(a)).)

18.     In 2008, BLUSA did not offer investment advisory services to its customers,

except with respect to an entity called "The Claim Conference," which was an entity formed to

facilitate the distribution of reparation payments arising out of the Holocaust.  (Ancone Decl.,

Ex. D at 35:3-20.)

19.     To the extent BLUSA entered into an investment advisory agreement with a

customer, that agreement is not governed by the International Account Terms.  (Bittker Decl.,

Ex. D at 20 (§ 25(a)); Ancone Decl., Ex. D at 35:11-20.)

20.     Section 23 of Article V of the International Account Terms also states that

BLUSA agreed to acquire securities for Defendants' BLUSA accounts per Defendants'

instructions but at Defendants' sole risk:

Agreement for the Purchase and Sale of Financial Assets.

a. You may request that the Bank open and maintain one or more investment accounts (the 'Investment Account') for the financial assets you may select from time to time (each, individually, an 'Asset' and, collectively, the 'Assets'), and that the Bank acquire, hold, and/or dispose of any or all of the Assets pursuant to your instructions, subject to the terms of these provisions….

b. The Bank is instructed and authorized to acquire in the Bank's name, but for the benefit of your Investment Account and at your sole risk, the Assets selected by you from time to time.

(Bittker Decl., Ex. D at 17 (§ 23(a)-(b)).)

21.     The "Investment Account" referenced in the International Account Terms is a non-discretionary account.  (Bittker Decl. ¶ 7; Ancone Decl., Ex. D at 34:21-35:2 ("Second, there would be a securities account if the customer was desirous, the securities account would not be discretionary[.]  Bank Leumi USA does not offer discretionary securities accounts, we require the specific instruction of the owner of the account in order to purchase or sell a security.").)

22.     Under Section 23 of Article V of the International Account Terms, Defendants agreed that they would consider the risks of investing in assets before acquiring those assets for their BLUSA accounts; that BLUSA would not make any representations or warranties with respect to those assets; and that Defendants were sophisticated investors:

f. You agree to the following:

(1)  The Bank will be acting solely as your agent, and the Assets will be acquired, held, and disposed of at your sole risk….

(3)  The decision to acquire, hold, and dispose of the Assets will be made by you following your consideration of the risks involved including (without limitation) the risks referred to in paragraph 23(f)(4), and you acknowledge that the Bank has made no representations or warranties to you related to any such risks.  You further acknowledge that you are a sophisticated investor able to

5

evaluate the merits and risks of all investments in the Assets and are able to bear the economic risk of these kinds of investments.

(4)    The Bank will not be responsible for any depreciation, currency exchange losses, or loss in value of the Assets, except for that actual damages caused solely by the Bank's fraudulent act or willful misconduct.  The Bank will not be responsible for any action that it takes according to your instructions or for any action taken by it under the authority given to it under paragraphs 23(a)-(b).

(Bittker Decl., Ex. D at 18 (§ 23(f)(1), (3)-(4)).)

23.    Section 28 of Article V of the International Account Terms provides as follows:

**e.    THE INVESTMENT AND FOREIGN CURRENCY TRANSACTIONS COVERED BY THIS ARTICLE (i) ARE NOT INSURED BY THE FEDERAL DEPOSIT INSURANCE CORPORATION, (ii) ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, THE BANK OR ANY OTHER U.S. BANK, AND (iii) ARE SUBJECT TO INVESTMENT RISKS, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL AMOUNT INVESTED.**

(Bittker Decl., Ex. D at 22 (§ 28(e)) (caps and emphasis in original).)

24.    The International Account Terms and the other account opening documents, including the Account Applications, constitute the agreement ("Agreement") between BLUSA and Defendants with respect to each of the three BLUSA accounts opened by Defendants. (Bittker Decl., Ex. D at 1 (set forth in "Introduction" paragraph; definition of "Agreement").)

## DEFENDANTS PURCHASED THE BONDS FOR THEIR BLUSA ACCOUNTS

25.    On or about February 21, 2008, Enrique Ehrlich signed an order form instructing BLUSA to purchase a total of $515,000.00 face value of bonds issued by Kaupthing Bank, a bank organized under the laws of Iceland, for Account 0829.  (Bittker Decl., Ex. E; Ancone Ex. G at No. 7.)

26.     On or about February 21, 2008, David Ehrlich signed an order form instructing

BLUSA to purchase a total of $235,000.00 face value of Kaupthing Bank bonds for Account

0837.  (Bittker Decl., Ex. F; Ancone Decl., Ex. G at No. 8.)

27.     The order forms that Enrique Ehrlich and David Ehrlich signed provide the

following:

> I CONFIRM REQUESTING THE BANK TO EXECUTE ON MY
> BEHALF   AT   MY   SOLE   RISK   WITHOUT   ANY
> RESPONSIBILITY   ON   THE   BANK'S   PART,   THE
> FOLLOWING   TRANSACTION   FOR   THE   FINANCIAL
> ASSETS SELECTED BY ME AND WITHOUT THE BANK
> ADVISING ME IN THIS MATTER.  THE FINANCIAL ASSETS
> ARE (1) NOT A DEPOSIT OR OTHER OBLIGATION OF OR
> GUARANTEED BY THE BANK AND (2) SUBJECT TO
> INVESTMENT RISKS, INCLUDING POSSIBLE LOSS OF THE
> PRINCIPAL AMOUNT INVESTED.

(Bittker Decl., Ex. E at 1 (caps in original), Ex. F at 1 (caps in original).)

28.     Identical language is set forth in Spanish in both order forms.  (Bittker Decl., Ex.

E at 1, Ex. F at 1.)

29.     On February 21, 2008, pursuant to Enrique Ehrlich's instructions, BLUSA

purchased $515,000 face value of Kaupthing Bank bonds on behalf of Enrique Ehrlich for

Account 0829.  (Bittker Decl. ¶¶ 10-12, Ex. G at 1, Ex. H at 1.)

30.     On February 21, 2008, pursuant to David Ehrlich's instructions, BLUSA

purchased $235,000.00 face value of Kaupthing Bank bonds on behalf of David Ehrlich for

Account 0837.  (Bittker Decl. ¶¶ 13-15, Ex. I at 1, Ex. J at 1.)

## BLUSA SEEKS A DECLARATION OF NON-LIABILITY
## AFTER DEFENDANTS THREATENED TO FILE A LAWSUIT

31.     On October 9, 2008, Kaupthing Bank defaulted on its debt.  (Ancone Decl., Ex. C

at ¶ 118(l).)

32.     As of December 31, 2008, the Bonds held in Account 0829 had an estimated market value of $51.50.  (Bittker Decl. ¶ 17, Ex. K at 3.)

33.     As of December 31, 2008, the Bonds held in Account 0837 had an estimated market value of $23.50.  (Bittker Decl. ¶ 18, Ex. L at 3.)

34.     On March 30, 2012, Defendants through Uruguayan counsel sent BLUSA a letter, demanding that BLUSA reimburse the total price of their investment in the Bonds plus interest or face legal action.  (Bittker Decl. ¶ 19, Ex. M.)

35.     On June 5, 2012, BLUSA filed this action seeking a declaratory judgment that it has no liability in contract or tort to Defendants in connection with Defendants' investment in the Bonds.  (Ancone Decl., Ex. A at 1 & ¶ 64.)

36.     On July 23, 2012, Defendants filed a motion to dismiss the complaint, arguing that this Court lacked personal jurisdiction over them and that New York was an inconvenient forum.  (Ancone Decl. ¶ 4.)

37.     On July 23, 2012, Defendants filed a declaration on the docket in which they stated that they were attaching the Account Applications that they completed to open their BLUSA accounts in 2002.  (Ancone Decl. ¶ 5, Ex. B at ¶ 11 (("A copy of the forms we [*i.e.*, Defendants] filled out to open these [BLUSA] accounts in 2002 is attached hereto and made a part hereof as Exhibit A.").)  Defendants not only attached the three Account Applications to their declaration but also filed these documents on the public docket in unredacted form. (Ancone Decl. ¶ 5.)

38.     On February 19, 2013, this Court denied Defendants' motion to dismiss in its entirety.  (Ancone Decl. ¶ 6.)

39.     In a declaration filed on the docket on April 10, 2013, Defendants informed the Court that they would no longer appear in this case through counsel or *pro se*.  (Ancone Decl. ¶ 7.)

40.     On June 19, 2013, BLUSA moved for a default judgment against Defendants. (Ancone Decl. ¶ 8.)

41.     On July 22, 2013, Defendants reappeared in this action through new counsel. (Ancone Decl. ¶ 9.)

42.     Defendants seek $750,000 plus interest and fees in damages allegedly caused by the decline in value of their investment in the Bonds after Kaupthing Bank's default.  (Ancone Decl., Ex. E at 3, Ex. F at No. 3.)

43.     On March 4, 2014, Defendants filed their original Answer and Counterclaims. On April 18, 2014, Defendants filed their Amended Answer and Counterclaims.  (Ancone Decl. ¶ 10 & Ex. C.)

Dated:  August 14, 2014
          New York, NY

                                        MAYER BROWN LLP

                              By:     /s/ Mark G. Hanchet

                                        Mark G. Hanchet, Esq.
                                        James Ancone, Esq.
                                        1675 Broadway, 19th Floor
                                        New York, New York  10019
                                        Tel:  (212) 506-2500
                                        Fax: (212) 262-1910

                                        *Counsel for Plaintiff Bank Leumi USA*

## CERTIFICATE OF SERVICE

I, James Ancone, an attorney, hereby certify that, on August 14, 2014, I caused true and correct copies of the foregoing document to be sent to Defendants' counsel of record via ECF and at the following email address:

Jose Raul Alcantar Villagran, Esq. (JA2849)
ALCANTAR LAW PLLC
22 Cortlandt Street, 16th Floor
New York, New York 10007
Tel: (212) 658-0222
Fax: (646) 568-5843
raul.alcantar@alcantarlaw.com

*Attorneys for Defendants*


Dated:    August 14, 2014
          New York, NY


                                        By:      /s/ James Ancone
                                               James Ancone