Mark G. Hanchet, Esq.
James Ancone, Esq.
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Counsel for Plaintiff Bank Leumi USA*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BANK LEUMI USA,<br><br>    Plaintiff,<br><br>    – against –<br><br>DAVID EHRLICH, ANGELA TYKOCKI,<br>ENRIQUE EHRLICH, and<br>SARA GOLDSTEIN,<br><br>    Defendants. | Case No. 12-CV-4423 (AJN)<br><br>**ORAL ARGUMENT**<br>**REQUESTED** |

**BANK LEUMI USA'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ADDITIONAL UNDISPUTED FACTS ................................................................... 2

     A.    Defendants Executed Agreements With BLUSA Containing a Mandatory
New York Forum Selection Clause and Purchased and Sold Securities
Through Their New York Investment Accounts. ................................................ 2

     B.    Procedural History. ......................................................................................... 3

ARGUMENT ............................................................................................................. 6

I.     THIS COURT ALREADY REJECTED EACH OF DEFENDANTS'
ARGUMENTS AND THOSE RULINGS REMAIN LAW OF THE CASE .................. 6

     A.    The Court Already Ruled That Defendants Are Bound By The
International Account Terms' Mandatory Forum Selection Clause. ..................... 7

     B.    The Court Already Ruled that Defendants Failed to Rebut the Presumption
of Enforceability That Attaches to the Mandatory Forum Selection Clause. ...... 11

     C.    The Court Already Ruled That Analyzing Personal Jurisdiction Under
New York's C.P.L.R. Is Unnecessary. ................................................................ 12

     D.    The Court Already Ruled That Analyzing the Venue Statute Is
Unnecessary. ..................................................................................................... 14

     E.    The Court Already Ruled That BLUSA's Choice of Its Home Forum of
New York Should Not Be Disturbed Under a *Forum Non Conveniens*
Analysis .............................................................................................................. 14

CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
    585 F.3d 696 (2d Cir. 2000)............................................................................................10

*AXA Versicherung AG v. N.H. Ins. Co.*,
    391 F. App'x 25 (2d Cir. 2010) .......................................................................................9

*Bank of Crete, S.A. v. Kaskotas*,
    No. 88 Civ. 8412 , 1991 WL 280714 (S.D.N.Y. Dec. 20, 1991)...........................14

*Bluestone Capital Partners, L.P. v. MGR Funds Ltd.*,
    No. 98 Civ. 3128, 1999 WL 322658 (S.D.N.Y. May 20, 1999)............................13

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006)...............................................................................................13

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)..............................................................................................................4

*Hoffman v. Supplements Togo Mgmt., LLC*,
    18 A.3d 210..............................................................................................................................11

*Horvath v. Banco Comercial Portugues, S.A.*,
    461 F. App'x 61 (2d Cir. 2012) ..................................................................................8, 9

*In re Optimal U.S. Litig.*,
    813 F. Supp. 2d 351 (S.D.N.Y. 2011).........................................................................11

*In re Rezulin Products Liability Litig.*,
    224 F.R.D. 346 (S.D.N.Y. 2004) ...................................................................................6

*Lony v. E.I. DuPont de Nemours & Co.*,
    935 F.2d 604 (3d Cir. 1991).............................................................................................14

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003).........................................................................................6, 7

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996).............................................................................................8

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007)..........................................................................7, 8, 10, 11

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

**Page(s)**

*Picard v. Elbaum*,
    707 F. Supp 144 (S.D.N.Y. 1989) ...........................................................................13

*Pimpinello v. Swift & Co.*,
    253 N.Y. 159 (1930) ................................................................................................9

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ..............................................................................................12

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992)..................................................................................6

S<span style="font-variant: small-caps;">TATUTES</span>

28 U.S.C. § 1391 .............................................................................................................14

N.Y. C.P.L.R. § 302(a)(1).................................................................................................13

Plaintiff Bank Leumi USA ("BLUSA") hereby submits its memorandum of law in opposition to the motion for summary judgment filed by David Ehrlich, Angela Tykocki, Enrique Ehrlich, and Sara Goldstein (collectively, "Defendants").

## PRELIMINARY STATEMENT

It's deja vu all over again.  More than two years ago, Defendants moved to dismiss this case, claiming that the Court lacked personal jurisdiction over them, that venue in this District was improper, and that New York was an inconvenient forum.  The Court denied the motion.  Specifically, the Court held that Defendants had consented to personal jurisdiction and venue in this District pursuant to a mandatory forum selection clause and that New York was a convenient forum.  Defendants subsequently notified the Court that they would no longer defend this case.  Instead, Defendants filed a lawsuit against BLUSA in Uruguay in direct violation of the forum selection clause – the very clause that this Court had ruled was valid.

Back in New York, BLUSA filed a motion for default judgment.  But just before BLUSA's motion was fully submitted, Defendants re-appeared now with new counsel seeking what amounted to reargument on their motion.  After losing again, they answered, asserted counterclaims against BLUSA and participated in discovery.  Now, after six depositions and the exchange of thousands of pages of documents, Defendants move for summary judgment on precisely the same grounds (even citing the same cases) as on their unsuccessful dismissal motion.

The current "do-over" motion should be denied:  this Court's prior rulings on the exact questions raised by this motion are "law of the case."  Defendants offer no reason for the Court to depart from its earlier decision.  Indeed, Defendants do not even acknowledge the existence of that decision, let alone actually address the implications that follow from the Court's prior decision (or the controlling Second Circuit case law on which it relied).

Defendants' frivolous motion is just another attempt to further delay these proceedings, undoubtedly so that they can press their improper lawsuit against BLUSA in Uruguay, before this Court can adjudicate the dispute.  Defendants have been toying with BLUSA in this manner now for years.  The Court should deny Defendants' motion, grant BLUSA's cross-motion for summary judgment, and put an end to this matter once and for all.

## ADDITIONAL UNDISPUTED FACTS[1]

### A.  Defendants Executed Agreements With BLUSA Containing a Mandatory New York Forum Selection Clause and Purchased and Sold Securities Through Their New York Investment Accounts.

On September 17, 2002, Defendants applied to open three accounts with BLUSA. (SofAF ¶ 74.)  Each Defendant signed an international account application agreement ("Account Application") in which, among other things, each acknowledged "receiving a copy of, and agreeing to, the International Account Terms."  (SofAF ¶ 75.)  The Account Applications were sent to New York and BLUSA opened the accounts (the "Accounts").  (SofAF ¶ 76.)  The International Account Terms and the other account opening documents, including the Account Applications, constitute the agreement ("Account Agreement") between BLUSA and Defendants with respect to each of the Accounts.  (SofAF ¶ 77.)

Significantly, each Account Agreement contains the following provision:

> **Governing Law; Jurisdiction; Service of Process – THIS AGREEMENT WILL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE UNITED STATES OF AMERICA.** Any legal proceeding arising from or in any way related to this Agreement may be brought in, and you hereby consent to personal jurisdiction and venue of, any state or federal court located in New York County, New York, U.S.A.  You hereby consent to the service of process in any such action, by mailing a copy of such

---

[1]    The undisputed facts that BLUSA relies upon to oppose Defendants' motion for summary judgment are set forth in BLUSA's Response to Defendants' Rule 56.1 Statement and Additional Undisputed Material Facts ("SofAF").  Those facts are summarized here.

process to you at your last known address shown on our records.

(SofAF ¶ 78 (emphasis and caps in original).)

Also, under each Account Agreement, BLUSA was "authorized to acquire in [BLUSA's name], but for the benefit of [Defendants'] Investment Account[s] and at [Defendants'] sole risk, the Assets selected by [Defendants] from time to time." (SofAF ¶ 79.) Defendants maintained the Accounts for about nine years, until 2011. (SofAF ¶ 80.) Over three of those years, Defendants purchased and sold at least $11 million worth of securities in at least 59 transactions in these Accounts. (SofAF ¶ 81.) This case arises from one of those transactions.[2]

On or about February 21, 2008, Defendants signed order forms instructing BLUSA to purchase $750,000 worth of the Kaupthing Bank bonds ("Bonds"). (SofAF ¶ 82.) BLUSA's affiliate, Leumi (Latin America) S.A., transmitted the order forms (which are addressed "[t]o Bank Leumi USA") from Uruguay to BLUSA in New York. (SofAF ¶ 83.) That same day, Mr. William Serrano, a trader employed by BLUSA at the time, executed the trades via Bloomberg while in BLUSA's trading room located in New York. (SofAF ¶ 84.) Mr. Serrano purchased the Bonds from Credit Suisse on behalf of Defendants, and BLUSA deposited them into Defendants' Accounts in New York. (SofAF ¶ 85.) In time, Kaupthing Bank defaulted on the Bonds. (SofAF ¶ 63.)

**B.     Procedural History.**

In March 2012, Defendants' Uruguayan counsel sent BLUSA a letter and threatened suit, demanding that BLUSA reimburse the total price of their investment in the Bonds plus interest or face legal action in Uruguay. (SofAF ¶ 69.) On June 5, 2012, BLUSA filed this declaratory

---

[2]     In addition to opening BLUSA accounts in New York, on or about October 11, 2002, Defendants opened a similar investment account with Bank Hapoalim, B.M. through its New York branch. (SofAF ¶ 86.) Defendants have maintained this account for at least eleven years and have purchased and sold various securities through this account. (SofAF ¶ 87.)

judgment action in this Court pursuant to the mandatory forum selection clause in the Account

Agreements.  (SofAF ¶ 88.)

On July 23, 2012, Defendants moved to dismiss the complaint arguing that:  (i) this Court

lacks jurisdiction over Defendants under contract or pursuant to New York's long-arm statute;

(ii) venue in New York is improper; and (iii) New York is an inconvenient forum.  (SofAF ¶ 89.)

The Court denied Defendants' motion.  In a February 19, 2013 order ("Order"), the Court

concluded that the New York forum selection clause is "presumptively enforceable," and that

Defendants "failed to rebut that presumption."  (Order at 16.)  The Court held that Defendants

are "bound by the terms of the forum selection clause," specifically, that they "consented to both

personal jurisdiction and venue in the Southern District of New York."  (Order at 16.)  The Court

also rejected Defendants' argument that New York was an inconvenient forum.  (Order at 16-21)

Critically, the Court held that BLUSA's choice of forum in New York is "entitled to very strong

deference" because:

> (i) BLUSA is the plaintiff in this action and it brought suit in its
> home forum;[] (ii) Defendants are amenable to service of process in
> New York, having expressly consented to service of process in the
> forum selection clause; (iii) [BLUSA] chose this forum for
> legitimate reasons – this is BLUSA's home forum, it is the forum
> listed in the forum selection clause, it is the situs of the underlying
> transactions on BLUSA's end, and the contract is governed by the
> laws of New York; and (iv) there is nothing to suggest that this
> Court will not be able to provide adequate legal assistance in
> resolving this matter.

(Order at 18-19 (footnote omitted).)  Given this strong deference and the fact that Defendants did

not argue that any of the public interest factors militated in their favor, the Court rejected

Defendants' argument that the private interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330

U.S. 501 (1947) alone warranted dismissal.  (Order at 21.)

The motion having been denied, the Court directed the parties to confer and submit a proposed case management plan and scheduling order to govern the remainder of the case and scheduled an initial pretrial conference.  (SofAF ¶ 95.)  Defendants did not participate in a meet-and-confer and they failed to submit these items by the Court-imposed deadline.  (SofAF ¶ 96.)  Defendants were also required to answer the complaint, but they did not.  (SofAF ¶ 97.)  Instead, Defendants' counsel moved to withdraw.  (SofAF ¶ 98.)  The Court granted the motion and allowed Defendants time to find replacement counsel or inform the Court whether they intended to proceed *pro se*.  (SofAF ¶ 99.)  The Court cautioned Defendants that failure to abide by the order "could result in adverse action, including entry of default judgment against them[.]"  (SofAF ¶ 100.)  Defendants informed the Court in a declaration that they could not afford replacement counsel and had no intention to participate further in this action.  (SofAF ¶ 101.)  Defendants explained that they would, instead, continue to litigate the claims that they had filed against BLUSA in Uruguay in mid-2012.  (SofAF ¶ 102.)

On June 18, 2013, BLUSA obtained entries of default for each of the Defendants and, on June 19, 2014, moved for a default judgment against them.  (SofAF ¶ 103.)  Days before the deadline to oppose BLUSA's default judgment motion, on July 22, 2014, Defendants suddenly re-appeared in the case with new counsel and filed what amounted to an untimely motion for reconsideration of the Order in an effort to stave off entry of a default judgment.  (SofAF ¶ 104.)  Defendants argued that the International Account Terms did not govern their relationship with BLUSA because those terms were purportedly superseded by a different set of incorporated terms called the International Financial Services Arrangements ("Arrangements").  (SofAF ¶ 105.)  In light of this assertion, the Court vacated the entries of default but declined to revise its Order and directed Defendants, once again, to answer the complaint.  (SofAF ¶ 106.)  The Court

5

also noted "its concern with the course of litigation[.]" (SofAF ¶ 107.)

On March 4, 2014, now 21 months since the complaint was filed, Defendants finally filed an answer and asserted various counterclaims. (SofAF ¶ 108.) The parties then agreed to a scheduling order and engaged in discovery. (SofAF ¶ 109.) In total, the parties conducted six depositions, including the depositions of Defendants Enrique Ehrlich and David Ehrlich, and exchanged thousands of pages of documents. (SofAF ¶ 110.) Defendants now move for summary judgment based on the same arguments they previously raised and that this Court found unconvincing the first time.

## ARGUMENT

## I.   THIS COURT ALREADY REJECTED EACH OF DEFENDANTS' ARGUMENTS AND THOSE RULINGS REMAIN LAW OF THE CASE

This Court already addressed and rejected each of Defendants' arguments in the Order that denied their first dismissal motion. The Order can only be revisited "within the strictures of the law of the case doctrine." (SofAF ¶ 106 at 2 (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).) Under that doctrine, a court will "generally adhere to [its] own earlier decision on a given issue in the same litigation." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004) (internal quotation marks omitted). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

On the present motion, Defendants once again argue that the Court lacks personal jurisdiction over them, that venue in this District is improper, and that New York is an inconvenient forum. *See* Defs.' Mem. of Law, dated Aug. 14, 2012 ("Mem.") at 2-21. But the

Court squarely rejected those contentions in the Order.  With respect to personal jurisdiction and venue, the Court held that "Defendants are bound by the terms of the forum selection clause, to wit, Defendants validly consented to both personal jurisdiction and venue in the Southern District of New York."  Order at 16.  And, with respect to whether New York is a convenient forum, the Court held that BLUSA's choice of its home forum of New York should be accorded "very strong deference" and that Defendants had "not demonstrated that the action should be dismissed under the doctrine of *forum non conveniens*."  Order at 17, 18.

Those rulings remain law of the case and compel denial of Defendants' present summary judgment motion.  In this Circuit, a court's prior decisions should not be revisited "unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."  *Coopers*, 322 F.3d at 167 (internal quotation marks omitted).  Defendants point to no intervening change of controlling law or new evidence (there is none), fail to show any clear error in this Court's prior decision (there is none), or demonstrate how it would be manifestly unjust to require them to abide by the terms of a contract that they admittedly signed (it is not).  In short, Defendants fail to demonstrate any valid reason for this Court to depart from its prior rulings.

Instead, Defendants' recycle arguments that they tried on their initial dismissal motion. Below, we demonstrate that the Court has already rejected each of these contentions and that the purportedly "new" arguments and facts that Defendants raise on this motion are not new at all.

A.     **The Court Already Ruled That Defendants Are Bound By The International Account Terms' Mandatory Forum Selection Clause.**

Defendants first argue that the International Account Terms' forum selection clause is not presumptively enforceable under the governing Second Circuit test in *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007).  *See* Mem. at 3-7.  Defendants are wrong.  In fact, in denying

7

Defendants' first dismissal motion, the Court concluded that that "BLUSA . . . met its burden under *Phillips* and the forum selection clause is presumptively enforceable."  Order at 13.

Defendants claim that the BLUSA cannot satisfy the first prong of the *Phillips* test:  that the forum selection clause was reasonably communicated to them.  *See* Mem. at 3-4.  Wrong again.  As this Court already explained, Defendants admit that they signed the Account Applications, which state:  "The account owner confirms receiving a copy of, and agreeing to, the International Account Terms."  (SofAF ¶ 75.)  This text is only a few inches above where Defendants signed their names.  This Court already ruled that Defendants' signatures and this specific reference to the International Account Terms are sufficient for the International Account Terms to be incorporated by reference into Defendants' respective Account Agreements.  *See* Order at 8-9; *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) ("Under New York law, a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it.") (internal quotation marks omitted).

Defendants attempt to establish that they never received a copy of the International Account Terms until the form was filed in this case.  *See* Mem. at 3-4.  But they tried this before, and the Court already rejected this contention, explaining that "whether Defendants in fact received the Terms is immaterial – the onus here, as in *Horvath* [*v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61 (2d Cir. 2012)], was on Defendants to request a copy of the Terms prior to confirming receipt and agreement to the same."  Order at 7.

Defendants also spill a lot of ink (about two pages' worth) arguing that BLUSA has not proffered evidence establishing that Defendants received the International Account Terms when they opened their accounts in 2002.  *See* Mem. at 3-4, 6-7.  But, again, that assertion, even if

8

true, is legally irrelevant under the Second Circuit's decision in *Horvath*. And *Horvath* merely applies longstanding contract law: "If the signer could read the instrument, not to have read it was gross negligence; if he could read it, not to procure it to be read was equally negligent; in either case the writing binds him." *Horvath*, 461 F. App'x at 63 (quoting *AXA Versicherung AG v. N.H. Ins. Co.*, 391 F. App'x 25, 30 (2d Cir. 2010)) (internal quotations marks omitted); *see also Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162-63 (1930). Not surprisingly, Defendants do not discuss, let alone distinguish *Horvath*.

Defendants next argue that they were allegedly not "alerted" to the "fine print" in their Account Applications that refer to the International Account Terms. *See* Mem. at 3. They tried this one before also. Again, the Court, relying on *Horvath*, found this argument unpersuasive on Defendants' first motion: "Defendants argue that the forum selection clause was not reasonably communicated because BLUSA did not . . . alert them to the one line of 'fine print' indicated that the Terms existed. Defendants' contention is without merit." Order at 7 (citation omitted).

Defendants also complain (in a footnote) that they are not "fluent" in English. *See* Mem. at 4 n.3. This too is legally irrelevant. As this Court already noted, the Second Circuit in *Horvath* squarely rejected a similar argument as a matter of law, explaining that a forum selection clause was reasonably communicated "notwithstanding . . . the fact that the document was written in a language the plaintiff did not understand." Order at 7.[3]

Defendants further claim that BLUSA "does not know" whether the International

---

[3]     Defendants misleadingly assert that it was not BLUSA's usual practice to provide the International Account Terms to potential non-U.S. resident customers in Uruguay, relying on a mischaracterization of Mr. Uriel Ganz's testimony. *See* Mem. at 5. Mr. Ganz did not state this. Rather, he testified as follows: "I offer the client the possibility of having them [*i.e.*, the operative set of incorporated terms] and, generally speaking, the client doesn't want them." (SofAF ¶ 20.) In any event, these practices are legally irrelevant to the question of whether the forum selection clause was reasonably communicated to Defendants under controlling Second Circuit law (it was).

Account Terms or a different set of incorporated terms called the Arrangements were effective in September 2002 when Defendants signed their Account Applications.  *See* Mem. at 4, 7.  But that assertion is simply wrong.  The author of the International Account Terms and the Arrangements, Mr. Donald L. Bittker, testified at his deposition that the Arrangements would govern a BLUSA-customer relationship only if the international account application that the customer signed identified the Arrangements as the operative set of incorporated terms.  (SofAF ¶ 31.)  It is undisputed that the Account Applications that Defendants signed refer to the ***International Account Terms***, not the Arrangements.  (SofAF ¶¶ 33, 75.)  Therefore, Defendants' relationship with BLUSA is governed by the International Account Terms.  Moreover, Mr. Bittker testified that the Arrangements did not supersede the International Account Terms for all then-existing BLUSA-customer relationships but, rather, did so only if the customers specifically agreed to the Arrangements.  (SofAF ¶ 31.)  There is no evidence (nor could there be) that Defendants agreed to the Arrangements.  Mr. Bittker further explained that there are BLUSA-customer relationships (like Defendants') still governed by the International Account Terms even though the Arrangements represent the most current version of the incorporated terms.  (SofAF ¶ 31.)

Defendants next argue (again) that BLUSA cannot satisfy the second *Phillips* prong:  that the forum selection clause is mandatory not permissive.  *See* Mem. at 5-6.  The Court already ruled that the forum selection clause is mandatory under the Second Circuit's reasoning in *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2000) and its progeny: "Nevertheless, a facially permissive forum selection clause may be deemed to be mandatory where it combines permissive forum selection language with an express waiver of venue objections…. The forum clause at issue here fits within this exception." Order at 10-11 (internal

quotation marks omitted).  The Court concluded that "[f]or the purpose of the second step of the *Phillips* test, then, the facially permissive forum selection clause in the Terms has mandatory effect[.]"  Order at 11.  Defendants offer nothing on their present motion that would alter this ruling.

Finally, Defendants assert (in cursory fashion) that the claims and parties in the suit are not subject to the forum selection clause.  *See* Mem. at 6.  Defendants are wrong again.  This Court already ruled that both the claims and the parties *are* subject to the forum selection clause.  *See* Order at 12-13.  And Defendants' counterclaims likewise "aris[e] from" and directly "relate" to the Account Agreements.  *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 367 (S.D.N.Y. 2011) (finding negligence and breach of fiduciary duty claims against a bank relating to the purchase of "shares upon the recommendation and through representatives of" defendant's parent company to fall within a forum selection clause).[4]

## B.    The Court Already Ruled that Defendants Failed to Rebut the Presumption of Enforceability That Attaches to the Mandatory Forum Selection Clause.

Defendants also argue that the forum selection clause is unenforceable because it is "gravely inconvenient, unreasonable, and unfair under applicable law[.]"  Mem. at 7.  This is nothing more than a re-hash of arguments that Defendants raised on their first dismissal motion and that the Court already rejected.  *See* Order at 13-16.

Specifically, Defendants claim that the forum selection clause was a result of "fraud or

---

[4]    Curiously, Defendants cite (or, more accurately, *re*-cite) one New Jersey case—*Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210 (N.J. App. Div. 2011)—that is easily distinguishable.  *See* Mem. at 6.  There, the New Jersey Appellate Division held that an internet merchant's forum selection clause was unenforceable because it was located on a screen that was not visible to website visitors unless they scrolled down and revealed a "submerged" screen.  *Id.* at 219.  Setting aside the obvious fact that *Hoffman* applies New Jersey law, here, unlike in *Hoffman*, the existence of the International Account Terms (and the fact that Defendants were consenting to its terms) was clearly referenced only inches above where Defendants signed their names on the Account Applications.

overreaching" because they allegedly never received a copy of the International Account Terms. *See* Mem. at 7-8.  But the Court already explained in great detail why this argument lacks merit under the controlling standard set forth in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974), which Defendants do not address.  In the Order, the Court concluded that Defendants had made "no showing that BLUSA's alleged failure to provide them with the Terms was intentional or malicious."  Order at 14.  Defendants fail to make such a showing on this motion, as well.

Defendants next assert that the inconvenience and cost of litigating in New York will deprive Defendants of their "day in court."  Mem. at 8.  Yet, the Court already found this assertion to be meritless.  *See* Order at 15-16.  The Court explained that "Second Circuit case law is clear that mere difficulty and inconvenience is insufficient to establish the unreasonableness of enforcing a forum selection clause."  Order at 15 (internal quotation marks omitted).  And, the fact that Defendants have litigated, albeit sporadically, in New York for over two years (including asserting counterclaims and participating in extensive motion practice, letter writing, depositions, and document discovery) belies their conclusory assertion that enforcing the forum selection clause will deny them their "day in court."  *See* Part I.E *infra*.

### C.     <u>The Court Already Ruled That Analyzing Personal Jurisdiction Under New York's C.P.L.R. Is Unnecessary.</u>

Defendants argue that, if the forum selection clause were invalid (and it is not), the Court would not have personal jurisdiction over Defendants under New York's C.P.L.R and that exercising such jurisdiction would violate Due Process.  *See* Mem. at 9-16.  Defendants appear to have "cut and pasted" these seven pages of argument from their moving brief in support of their first (unsuccessful) dismissal motion.  The Court declined to address these arguments previously, ruling as follows:  "Because the Court finds that Defendants consented to personal jurisdiction . . . in the forum selection clause, it does not reach Plaintiff's alternative bases for the same."  Order

at 5 n.4.  That logic applies with equal force now.

But irrespective of the forum selection clause, the undisputed record demonstrates that this Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a)(1) ("Section 302(a)(1)").  A non-domiciliary is subject to jurisdiction under Section 302(a)(1) when he "maintains an ongoing investment account in New York and conducts securities transactions through such an account" and the claims arise from the account.  *Bluestone Capital Partners, L.P. v. MGR Funds Ltd.*, No. 98 Civ. 3128, 1999 WL 322658, at *3 (S.D.N.Y. May 20, 1999); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).  Here, Defendants purchased and sold over $11 million worth of securities in about three years in at least 59 transactions through their New York-based BLUSA accounts; the claims at issue arise from those New York contacts.  (SofAF ¶¶ 7, 81.)  These uncontroverted facts establish both prongs of Section 302(a)(1).

Finally, exercising jurisdiction over Defendants pursuant to Section 302(a)(1) would satisfy Due Process.  *See Picard v. Elbaum*, 707 F. Supp 144, 149 (S.D.N.Y. 1989) ("By investing with Bloom in New York over a two-year period, maintaining an investment account in New York for that same period of time, and ordering at least one sale in New York, defendants purposely and systematically sought the benefits of engaging in business in [New York]"; due process satisfied).  Here, Defendants purposely availed themselves of the benefits of New York not only by opening and maintaining their BLUSA accounts in this State, but also by opening and maintaining a similar account for at least eleven years with another bank, Bank Hapoalim, B.M., through its New York branch.  (SofAF ¶¶ 7, 86); *see Bluestone*, 1999 WL 322658, at *5 (considering "totality of the defendant's activities within" New York, including fact that customer had multiple securities accounts in New York).

**D.     The Court Already Ruled That Analyzing the Venue Statute Is Unnecessary.**

Defendants next claim, without citing any case law, that venue in New York is improper under 28 U.S.C. § 1391.  *See* Mem. at 16-17.  Again, it appears that Defendants lifted this text from their first brief.  In the Order, the Court concluded that it was unnecessary to address the venue statute because "the Court finds that Defendants consented to . . . venue in the forum selection clause[.]"  Order at 5 n.4.  That conclusion applies on this motion, as well.

**E.     The Court Already Ruled That BLUSA's Choice of Its Home Forum of New York Should Not Be Disturbed Under a *Forum Non Conveniens* Analysis.**

Finally, in full "broken record" mode, Defendants again urge dismissal because trial in New York would allegedly pose a "substantial inconvenience" to Defendants.  *See* Mem. at 17-21.  The Court already rejected this argument.  The Court concluded that, "[g]iven that BLUSA's choice of forum is accorded a high level of deference and that [Defendants] concede that the public interest factors are at best neutral, Defendants have failed to make the necessary showing to support their motion to dismiss under the doctrine of *forum non conveniens*."  Order at 21.

Nothing has changed to tip the balance in favor of dismissing this action since that ruling.  In fact, the opposite is true:  the balance of factors weighs even more heavily in favor of keeping this case in New York given the advanced stage of litigation.  "[W]henever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against dismissal on the grounds of *forum non conveniens* greatly increases."  *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 613-15 (3d Cir. 1991); *see also Bank of Crete, S.A. v. Kaskotas*, No. 88 Civ. 8412 , 1991 WL 280714, at *1 (S.D.N.Y. Dec. 20, 1991).

Here, discovery is complete and the parties are briefing summary judgment motions.  During the course of litigation, Defendants asserted counterclaims against BLUSA, filed

14

multiple motions, produced documents, deposed four witnesses, and Enrique Ehrlich and David Ehrlich testified at their own depositions.  (SofAF ¶¶ 89, 98, 104, 108, 110.)  In short, the history of this litigation and Defendants' active participation in it demonstrate that New York is a convenient forum.

<p style="text-align:center">*     *     *</p>

Defendants' summary judgment motion is barred by the law of the case doctrine.  This Court's prior Order correctly found that Defendants consented to personal jurisdiction and venue in this Court under agreements they admit to signing.  The forum selection clause should be enforced and Defendants' delay tactics put to rest for good.

## CONCLUSION

For all the foregoing reasons, Defendants' motion should be denied in full.

Dated:  September 15, 2014
         New York, New York

<div style="margin-left:3em">

MAYER BROWN LLP

By:     /s/ Mark G. Hanchet

Mark G. Hanchet, Esq.
James Ancone, Esq.
1675 Broadway
New York, New York 10019
Tel:  (212) 506-2500
Fax: (212) 262-1910

*Counsel for Plaintiff Bank Leumi USA*

</div>

## <u>CERTIFICATE OF SERVICE</u>

       I, James Ancone, an attorney, hereby certify that, on September 15, 2014, I caused true and correct copies of the foregoing document to be sent to Defendants' counsel of record via ECF and at the following email address:

Jose Raul Alcantar Villagran, Esq. (JA2849)
ALCANTAR LAW PLLC
22 Cortlandt Street, 16th Floor
New York, New York 10007
Tel: (212) 658-0222
Fax: (646) 568-5843
raul.alcantar@alcantarlaw.com
*Attorneys for Defendants*


Dated:    September 15, 2014
          New York, NY


                     By:    <u>/s/ James Ancone</u>
                              James Ancone