# EXHIBIT E

# INTERNATIONAL FINANCIAL SERVICES ARRANGEMENTS



**BANK LEUMI USA**
Member FDIC

FORM 1336 REV 6/02

1

INTERNATIONAL FINANCIAL SERVICES ARRANGEMENTS

**SECTION 1--GENERAL TERMS.**

**1.1  Introduction.**

This booklet is the International Financial Services
Arrangements (the "Arrangements") referred to in the
International Account Application (the "Application") and
sets forth terms applicable to financial services provided
through the Private Banking and International Services
Division (excluding Domestic Private Banking) of Bank Leumi
USA ("BLUSA").  (For purposes of an Application form made
available by BLUSA before July 2002, this booklet is the
International Account Terms.)  The Arrangements, the
Application, the International Fee Schedule (the "Fee
Schedule"), the Funds Availability Schedule, and all
Account opening documentation together constitute our
agreement (the "Agreement") with you governing your
Accounts.  Additional terms apply to certain financial
services.  These additional terms are set forth in Account
Terms applicable to, or Confirmations issued as to, the
financial service provided.

Among the financial services to which the Arrangements
apply are deposit accounts; the acquisition, holding, and
disposition of financial assets; credit related to a
Transaction Account; credit not related to a Transaction
Account; and foreign currency transactions.

| Investment products: |
| --- |
| ·  NOT FDIC INSURED |
| ·  NO BANK GUARANTEE |
| ·  MAY LOSE VALUE |

In signing the Application, you indicate you (i) received a
copy of, and agreed to, the Arrangements, and (ii) received
the Fee Schedule and the Funds Availability Schedule.

The Application may refer to "BLUSA."  That term means Bank
Leumi USA.

**1.2  Definitions; Method of Signing Application.**

"Account" includes all relationships between you and BLUSA
identified through a six-digit "SNAC."
"Entity" includes a corporation, partnership, limited
liability company, association, or governmental unit.

2

"Liabilities" means the indebtedness arising pursuant to the Arrangements and all other indebtedness, liabilities, and obligations of any kind of you (or any partnership or other group of which you a member) to (a) BLUSA, (b) any unit of the Leumi Group, or (c) any other person if BLUSA has a participation or other interest in such indebtedness, liabilities, or obligations, whether (i) for BLUSA's own account or as agent for others, (ii) acquired directly or indirectly by BLUSA from you or others, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or unliquidated, due or not due, contractual or tortious, now existing or hereafter arising, or (iv) incurred by you as principal, surety, endorser, guarantor or otherwise, and including without limitation all expenses, including attorneys' fees, incurred by BLUSA in connection with any such indebtedness, liabilities or obligations or any of the Property (including any sale or other disposition of the Property).

"Transaction Account" means a Checking Account or Money Market Deposit Account, it being understood that Federal Reserve Regulation D limits the number of transfers and withdrawals out of a Money Market Deposit Account.

"You," "your," and "yours" mean, jointly and severally, each and every individual or Entity signing the Application as a "Customer."

"We," "us," "our," "ours," "Bank," and "Bank's" refer to BLUSA.

Other terms are defined in other sections of the Arrangements.

Any term used in the Arrangements that is defined in the New York Uniform Commercial Code (the "UCC") and not defined in the Arrangements has the meaning provided for in the UCC.

Your signature on the Application, or on any instruction relating to your Account, made through electronic capture shall be as valid as your manuscript signature thereon.

### 1.3  Your Status.

BLUSA offers financial services through its International Division to (i) nonresident alien individuals, and (ii) Entities. Accordingly, among the certifications you make on the Application is that each owner of the Account is (i) nonresident alien individual, or (ii) an Entity.

BLUSA does not normally open an Account through its International Division for an Entity organized in the U.S.

3

unless the Entity is affiliated with an Entity organized outside the U.S.

### 1.3.1  Tax Certification for Non-Resident Aliens.

The Application includes a Substitute W-8BEN "Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding."  Do not use this form if:

1.  You are a U.S. citizen or other U.S. person.  Instead use Form W-9 "Request for Taxpayer Identification Number and Certification."

2.  If you are receiving income that is effectively connected with the conduct of a trade or business in the U.S.  Instead use Form W-8ECI "Certificate of Foreign Person's Claim for Exemption From Withholding on Income Effectively Connected With the Conduct of a Trade or Business in the U.S."

3.  You are a tax-exempt organization, foreign government, international organization, or foreign central bank of issue claiming the applicability of IRC section 501(c), 892, 895, or 1443(b).  Instead use Form W-8EXP "Certificate of Foreign Government or Other Foreign Organization for United States Tax Withholding."  (However, you should use Form W-8BEN if you are providing the form to claim exempt recipient status for backup withholding purposes.)

4.  You are a foreign partnership, other than a hybrid entity claiming treaty benefits.  Instead use Form W-8IMY "Certificate of Foreign Intermediary, Foreign Partnership, or Certain U.S. Branches for United States Tax Withholding."  (However, if you are a partner in a partnership and you are not yourself a partnership, you may be required to furnish a Form W-8BEN to the partnership.)

5.  You are a withholding foreign partnership.  A withholding foreign partnership is a foreign partnership that has entered into a withholding agreement with the IRS under which it agrees to assume primary withholding responsibility for each partner's distributive share of income subject to withholding that is paid to the partnership.  Instead use Form W-8IMY.

6.  You are acting as an intermediary (that is, acting not for your own account but for the account of others as an agent, nominee, or custodian).  This includes a foreign person acting as a trustee or executor of a U.S. or foreign trust or estate.  Instead provide Form W-8IMY.

4

### 1.3.2 Definitions Applicable to Tax Certification.

**Beneficial owner.** The beneficial owner is the person who is the owner of the income for tax purpose and who beneficially owns the income. Accordingly, a person receiving income as a nominee, custodian, or agent for another person is not the beneficial owner of the income. Generally, a person is treated as the owner of the income to the extent it is required under U.S. tax principles to include the amount paid in gross income on a tax return. A person who is the owner of income is considered the beneficial owner of that income unless that person is a conduit entity whose participation in a transaction can be disregarded. Generally, the principles id IRC section 7701(l) and Regulations section 1.881-3 apply to determine if a person is a conduit entity.

The beneficial owners of income paid to a partnership are those persons who, under U.S. tax principles, are the owners of the income for tax purposes in their separate or individual capacities and who beneficially own the income. Generally, the beneficial owners of income paid to a partnership are the partners except for a partner that is itself a partnership or a conduit. (If a partner is a partnership or conduit, the beneficial owner is the first person in the chain of ownership that is not itself a partnership or a conduit. See Form W-8IMY.)

**Foreign person.** A foreign person includes a nonresident alien individual, a foreign corporation, a foreign partnership, a foreign trust, a foreign estate, and any other person that is not a U.S. person. It also includes a foreign branch or office of a U.S. financial institution if the foreign branch is a qualified intermediary. Generally, a payment to a U.S. branch of a foreign person is a payment to a foreign person.

**Nonresident alien individual.** Any individual who is not a citizen or resident of the U.S. is a nonresident alien individual. An alien individual meeting either the "green card test" or the "substantial presence test" for the current year is a resident alien. An alien individual meeting neither test is a nonresident alien. Additionally, an alien individual who is a resident of a foreign country under the residence article of an income tax treaty, or an alien individual who is a resident of Puerto Rico or the U.S. Virgin Islands, is a nonresident alien individual. The substantial presence test requires that the alien individual be physically present in the U.S. on at least (1) 31 days during the current calendar year, and (2) 183 days during the current calendar year and the two preceding

5

calendar years (counting all days of physical presence in the current calendar year, one-third the number of days of physical presence in the first preceding year, and one-sixth the number of days of physical presence in the second preceding year). However, physical presence does not include days of temporary physical presence in the U.S. because of (1) diplomatic status, or a visa that represents full-time diplomatic or consular status, (2) full-time employment with an international organization, or (3) membership in the immediate family of an individual described in "1" or "2." Physical presence also does not include days of temporary physical presence in the U.S. as a teacher or trainee under a "J" visa (other than as a student, or as a student under an "F," "J," or "M" visa, who substantially complies with the requirements of the visa.

Even though a nonresident alien individual married to a U.S. citizen or resident alien may choose to be treated as a resident alien for certain purposes (for example, filing a joint income tax return), such individual is still treated as a resident alien for withholding tax purposes on all income except wages.

### 1.3.3 Withholding for Conduit Transactions.

BLUSA may be required to withhold if you are a foreign person and your Deposit Account secures an extension of credit granted by BLUSA.

### 1.4 Requests for Specific Accounts.

Through submitting the Application, you are requesting that BLUSA establish for you a Domestic Branch Checking Account and a Time Deposit Account. Instead of, or in addition to, the Domestic Branch Checking Account, you may request that BLUSA establish for you a Cayman Branch Checking Account. You may also request that BLUSA establish for you one or more other Deposit Accounts with our Domestic Offices, or our International Banking Facility or Cayman Branch. Upon your request, BLUSA will inform you which Deposit Accounts are available to you at those locations and the interest rates then being offered. You may also request that BLUSA establish for you an Investment Account or a Credit Account or both.

The Addendum *Terms of Specific Kinds of Deposit Accounts* sets forth terms applicable to

6

Checking Accounts generally, or at BLUSA's Domestic
Branches specifically;

Money Market Deposit Accounts;

Time Deposit Accounts generally, at BLUSA's Domestic
Branches specifically, or Fixed Rate, Foreign Currency,
Leumi "100," Prime, Rising Rate, Triple Choice, or Market
Measure Linked Time Deposit Accounts specifically.

### 1.5  Confidentiality.

Information concerning the confidentiality of Personal
Accounts is set forth in *Our Privacy Commitment to Our
Customers*.

### 1.6  Mailing of Account Information.

Unless you choose the Hold Mail Provisions, BLUSA will mail
any statements, notices, correspondence, and any other
documents related to your Accounts to your mailing address
set forth in the Application.  You agree to promptly notify
BLUSA, in writing, of any change in your address.

### 1.7  Fees, Interest on Credit Extended, and Other Amounts
Owing.

BLUSA may charge to any of your Accounts fees, interest on
credit extended, and other amounts owing to BLUSA related
to any of your Accounts, including BLUSA's fees for
complying with any restraining order or other legal
process.  BLUSA normally charges these amounts to your
Transaction Account but may charge them to any of your
Accounts.

You will pay BLUSA a processing fee for any legal process
requiring BLUSA to restrain funds in, or pay funds from,
your Accounts.  This fee is indicated on our Fee Schedule.
In addition, if the legal process requires BLUSA to produce
information or documents concerning your Accounts, you will
reimburse the reasonable processing costs to produce the
required information or documents, and for any attorney
fees and disbursements incurred by BLUSA related to the
legal process.  BLUSA may charge any of these fees and
expenses to your Accounts or collect them from you
directly, even if your Accounts are closed.  BLUSA will
promptly attempt to notify you concerning any legal
process, unless the legal process compels BLUSA not to
notify you.

7

### 1.8  Signatures.

Upon BLUSA informing you that such service is available,
BLUSA may provide for the electronic submission of
signatures through facilities of a BLUSA affiliate or, upon
establishment of appropriate security procedures and
obtaining your agreement, through other facilities.

You warrant to BLUSA that the signatures on the Signature
Cards for your Accounts are your authorized signatures.
BLUSA is not liable for refusing to honor your check or
other signed instruction if it believes in good faith that
the signature(s) appearing on the document is/are not
authentic.  You may authorize the use of a facsimile
signature device by designation on the Signature Cards and,
if you are an Entity, on a separate form used by BLUSA for
that purpose.  If you authorize the use of a facsimile
signature device, we may honor a check or other signed
instruction that appears to bear your facsimile
signature(s), even if it was made by an unauthorized person
or with a counterfeit facsimile signature device.

### 1.9  Charge back.

All checks deposited in your Account, or cashed for you,
are handled by BLUSA as your agent subject to charge back
or refund if for any reason final payment is not received
by BLUSA.  Any check drawn on BLUSA deposited in your
Account, or cashed for you, is subject to charge back or
refund if such check is not properly payable.  All ACH
payments credited to your Account are provisional and
subject to charge back if BLUSA does not receive final
settlement.

### 1.10  Business Accounts.

An Account which BLUSA establishes for one or more
Entities, or for one or more Entities and one or more
individuals, is called a "Business Account."  Each Entity
will be required to provide appropriate documentation to
establish its authority for opening the Account and to
certify the names and signatures of its authorized
signatories.

### 1.11  Personal Accounts; Business Accounts.

An Account which BLUSA establishes for one or more
individuals that is primarily for personal, family, or
household purposes is a Personal Account.  Any other
Account opened for one or more individuals is a Business
Account.

8

An Account opened for one or more Entities, including an Account opened for one or more individuals *and* one or more Entities, is a Business Account.

### 1.11.1  "In Trust For" Accounts.

A Personal Account which is also a Deposit Account or Investment Account for which there are one or more designated "beneficiaries" is an ITF Account.

A designated beneficiary of an ITF Account may be an individual or an Entity.  Upon the death of the sole owner of an ITF Account, or all owners of a Joint Account which is an ITF Account, the funds in the Deposit Account and the Assets in the Investment Account will be paid to the surviving beneficiary or in equal shares to the surviving beneficiaries.  If there is no surviving beneficiary, those funds and securities will be paid, in the case of an individual ITF Account, to the estate of the individual ITF Account owner or, in the case of a Joint Account which is an ITF Account, to the estate of the most recently deceased ITF Account owner.

### 1.11.2  Death of Owner of Personal Account.

If the sole owner of a Personal Account dies, even if the Account is an ITF Account, before BLUSA pays the funds or transfer the Assets therein to the estate BLUSA requires a certified copy of the death certificate.

If the Personal Account is not an ITF Account, BLUSA also requires a court certificate showing the appointment of a representative of the estate (e.g., executor or administrator).  However, if no representative of the estate has been appointed, to the extent allowable under the Governing Law upon receipt of an affidavit on a form used by BLUSA that purpose BLUSA may pay restricted amounts to a surviving spouse, to certain other relatives, or to certain distributees.

### 1.12  Joint Accounts.

A Deposit Account or Investment Account which BLUSA establishes for two or more individuals (including a husband and wife) or Entities is called a "Joint Account." The funds in the Deposit Account and the Assets in the Investment Account become the property of each owner as joint tenants and BLUSA may pay those funds or transfer those Assets to, or act upon the instructions of, any owner during the lifetime of all owners.  BLUSA may pay the funds or transfer the Assets to, or act upon the instructions of,

9

the survivor(s) after the death of any owner(s) but BLUSA may require a tax clearance document from the appropriate State tax authorities.  If you are a non-U.S. resident, BLUSA may also require a Federal Transfer Certificate. BLUSA may treat the funds or Assets as the sole property of the survivor(s) after the death of any owner(s).  Upon the death of any owner, the survivor(s) agree to immediately notify BLUSA thereof.

The survivor(s) may obtain the tax clearance document or Federal Transfer Certificate.  If BLUSA provides assistance in obtaining the tax clearance document or Federal Transfer Certificate, BLUSA will charge its out-of-pocket expenses (including its attorneys fees) in this respect to the Account.

Unless BLUSA receives at your branch a written notice signed by any owner not to pay the funds or transfer the securities to, or act upon the instructions of, another owner of a Joint Account, BLUSA shall not be liable to any owner for continuing to pay the funds or transfer the securities to, or act upon the instructions of, any owner. After receipt of such notice, BLUSA may require written authorization of all joint owners for any further payments, transfers, or instructions.

Any Joint Account owner may request BLUSA to (i) stop payment on a check drawn on the account, whether or not the person making the request to stop payment signed the check, and (ii) cancel a stop payment request, whether or not the person making the request to cancel made the request to stop payment.

If one or more of the owners of a Joint Account is an Entity, the Joint Account is also a Business Account. Otherwise, the Joint Account is a Personal Account.

### 1.13  Accounts Designated by Number or Assumed Name.

Upon request, BLUSA may, in its discretion, establish an Account for you which is designated by number or assumed name, including an Account designated by a trade name.  If BLUSA does open such an account, you will hold BLUSA harmless against claims and expenses (including our reasonable attorney costs) arising out of your Account, including those resulting from BLUSA's failure, upon your request, to comply with the normal and usual banking procedures relating to the establishment and operation of the Account.  In addition, you will be liable for all obligations of your Account to the same extent as if your Account were maintained under your name.  If the Account is maintained under a trade name, BLUSA may require

10

documentation such as a "business certificate" that you are
authorized to use the trade name.

### 1.14  Legal Process.

BLUSA may be required by service of legal process to remit
funds or securities held in a Joint Account to satisfy a
judgment against, or other debt incurred by, any owner of
the Joint Account.

You will pay BLUSA a processing fee for each legal process
requiring BLUSA to restrain funds or securities in, or
transfer funds or securities from, your Deposit Account or
Investment Account.  If the legal process requires BLUSA to
sell securities, you will also pay BLUSA the normal fees
relating to the sale.  This fee reflects BLUSA's cost of
handling the legal process.  BLUSA charges the fee to your
account.

In addition, if legal process requires BLUSA to produce
information or documents concerning your account, to the
extent BLUSA is not otherwise reimbursed you will reimburse
BLUSA for reasonable processing costs to produce the
required information or documents and for any reasonable
attorney costs incurred by BLUSA related to the legal
process.  BLUSA may charge these costs to your account or
collect them from you directly even if your account is
closed.  BLUSA will promptly notify you concerning legal
process unless legal process provides that BLUSA shall not
notify you.

### 1.15  Changes in Terms.

BLUSA may change the Arrangements, the Fee Schedule, and
the Funds Availability Schedule.  However, those provisions
which relate to your Time Deposit Account shall only be
effective upon its renewal.  BLUSA shall send you notice of
the change by mail or e-mail.  However, notice of a change
applicable to all, or substantially all, of a class of
customers, may be provided through posting notice of the
change, for 10 Business Days before the effective date of
the change, on the website www.blusa.com, or in the
International Division teller area in New York and in the
branches in California and Chicago.  By law, certain
changes require at least 30 days' advance notice sent or
delivered to you.

BLUSA may also terminate the applicability of one or more
sections or paragraphs of the Arrangements that are
identified as optional.  The termination shall be effective
upon BLUSA mailing you notice of the termination.

11

### 1.16  Changes in Address.

You will notify BLUSA promptly in writing of any change of
address.

### 1.17  Address for Notices.

Notices by you to BLUSA, including instructions to pay
funds or transfer securities, are to be sent in writing
(not by e-mail) to the office responsible for your Account.

Notices by BLUSA to you may be sent by ordinary mail
addressed to you at your last address shown on BLUSA's
records.  If your Account is a Joint Account, notices sent
to that address are effective notice to each owner of the
Account.

### 1.18  Transferability.

Your Account is nontransferable.

### 1.19  Unclaimed Assets.

If BLUSA does not have contact with you within the time
period specified by applicable State law, funds in your
Deposit Account and Assets in your Investment Account will
be escheated to the state and a claim by you for the funds
and securities can be made only to the appropriate state
authority.

The laws of certain States may exclude from escheatment
Cayman Branch Deposit Accounts or deposits payable in a
foreign currency.

### 1.20  Set Off.

The law provides that BLUSA may, but is not obligated to,
take funds on deposit in your account to satisfy a debt you
owe BLUSA which is not paid when due.  This is called the
right of set off.  If BLUSA exercises this right of set
off, BLUSA will comply with all applicable laws and will
notify you promptly of the action taken.  To the fullest
extent permitted by law, all funds in a deposit account are
subject to BLUSA's right of set off for liabilities owed to
BLUSA by:

12

(i)   any one or more of the account holders,
including any other person who is a joint account
holder;

(ii)  any partnership of which you are a general
partner; or

(iii) any other person with whom you are a co-obligor,
for whom you have agreed to act as surety or
guarantor, or for whose debts you are liable or may be
contingently liable.

If BLUSA exercises its right of set off against an account
that is subject to an early withdrawal penalty, the account
will be assessed the applicable early withdrawal penalty.

### 1.21  Closing Accounts.

Except for Time Deposit Accounts, BLUSA may at any time
without advance notice to you close any of your Accounts.
For Transaction Accounts, BLUSA normally provides one
month's advance notice but may in its discretion in
extraordinary circumstances close the Account without
advance notice to you.  If BLUSA closes one or more of your
Accounts, it will mail you a check for the funds in your
Deposit Accounts (including any accrued interest) to your
last known address shown on its records and hold the Assets
in your Investment Accounts for your transfer instructions.

BLUSA reserves the right not to renew your Time Deposit
Accounts, even those which are automatically renewable.  If
BLUSA exercises this right, it will mail you notice before
your Time Deposit Account matures.

### 1.22  Account Statement; Errors; Forged or Altered Checks
or Other Payment Orders.

BLUSA will send you a statement for your Accounts shortly
after the end of each statement period showing transactions
in your Accounts during the statement period.  Statement
periods are either one month or, if you select, three
months.  Information on debits and credits to your Accounts
is also available on the website www.blusa.com.  BLUSA does
not otherwise provide notice of debits or credits to your
Accounts, including ACH entries.
It is your duty to promptly examine the statement.  If you
believe that the statement contains an error, you agree to
notify BLUSA in writing within 30 days after the date of
the statement.  If you do not notify BLUSA within that time
period, the statement will be considered correct and
binding on you.  However, for a Personal Account where the
error contains an electronic transfer, the notice of error

13

must be received no later than 60 days after BLUSA sent you
the first statement on which the error or the problem
appeared.

No legal proceeding or action may be brought against BLUSA
to recover payment of

(i) a check, or other payment order, which was
not signed or otherwise authorized by you or
which was altered, or

(ii) a check which was not endorsed by a payee,

unless

(i) in the case of a check, or other payment
order, which was not signed or otherwise
authorized by you or which was altered, BLUSA
receives the written notice indicated in the
preceding paragraph within the prescribed time
period,

(ii) in the case of a check which was not
endorsed by a payee, BLUSA receives written
notice within six months after the date of the
statement, and

(iii) the legal proceeding or action is commenced
within one year (one and one-half years in the
case of an unauthorized endorsement) after the
date of the statement.

### 1.23  Telephone and Facsimile Requests.

You may make telephone requests (orally or through
facsimile transmission) for transactions or information
relating to your Accounts.  Telephone requests (orally or
through facsimile transmission) for transactions may be
made by anyone authorized to sign on your Account but only
to the extent of the authority of such person (the
"Initiator") to act in respect of the requested transaction
in accordance with this Agreement.  BLUSA accepts oral
telephone requests for transactions only if the Initiator
is an individual who is authorized singly to act in respect
of the requested transaction or, if not authorized singly,
the appropriate individuals needed to act in respect of the
requested transaction together make the request.  Requests
for information may be made by anyone authorized to sign on
your Account.  BLUSA may, in its discretion, accept or
reject a telephone request, whether for transactions or
information and whether received orally or through
facsimile transmission.  BLUSA also may ask for further

14

information, or require confirmation in an original
writing.

Unless in the Application or other original writing you
specify "do not verify telephone (oral or facsimile
transmission) payment orders," all Payment Orders received
orally by telephone may be verified through the following
security procedure. BLUSA shall send you a sealed envelope
containing one or more alphanumeric authentication codes
for use on the Payment Orders. An individual giving an
oral telephone Payment Order will telephone at the
telephone number designated by BLUSA from time to time for
that purpose. The individual will represent himself as an
authorized Initiator by supplying the name of an authorized
Initiator. BLUSA will then obtain the Payment Order data
from that individual together with the authentication code.
If the authentication code is incorrect or not provided,
the BLUSA officer, employee, agent or representative may
place a telephone call to the authorized Initiator at the
telephone number designated by you for that authorized
Initiator in the Application or other original writing;
request to speak to the authorized Initiator; and confirm
the Payment Order data with the individual purporting to be
the authorized Initiator by obtaining from that individual
Payment Order data relating to the amount of the Payment
Order, the beneficiary, and the beneficiary's account.
However, BLUSA may decline to take any action if the
authentication code is incorrect.

Unless in the Application or other original writing you
specify "do not verify telephone (oral or facsimile
transmission) payment orders," all Payment Orders received
through facsimile transmission by telephone may be verified
through the following security procedure. A person giving
a facsimile telephone Payment Order will transmit the
facsimile BLUSA at the telephone number or deliver the
writing to the location designated by BLUSA from time to
time for those purposes. The person will represent himself
as an authorized Initiator by supplying the signature of an
authorized Initiator on the facsimile or written
instruction together with the authentication code. BLUSA
will then compare the signature on the facsimile or writing
with the genuine signature of the authorized Initiator
shown on its records. If the authentication code is
incorrect, the BLUSA officer, employee, agent or
representative may place a telephone call to the authorized
Initiator at the telephone number designated by you for
that authorized Initiator in the Application or other
original writing; request to speak to the authorized
Initiator; and confirm the Payment Order data with the
individual purporting to be the authorized Initiator by
obtaining from that individual Payment Order data relating
to the amount of the Payment Order, the beneficiary, and

15

the beneficiary's account. However, BLUSA may decline to
take any action if the authentication code is incorrect.

An individual making an oral telephone request for non-
Payment Order transactions or information relating to your
Account will call BLUSA at the telephone number designated
by BLUSA time to time for that purpose. A person making a
facsimile telephone request for non-Payment Order
transactions relating to your Account will transmit the
facsimile to BLUSA at the telephone number or deliver the
writing to the location designated by BLUSA from time to
time for those purposes. BLUSA may verify the authenticity
of the non-Payment Order or information request through
your passport/national identity number, your date of birth,
or your mother's maiden name, all as provided on the
Application.

A facsimile request shall be as binding on you as the
original thereof.

BLUSA will not be liable for any action taken or omitted in
accordance with the terms of this section, including any
action taken or omitted in reliance upon the forged
signature of, or the oral instructions of anyone
impersonating, you or an authorized Initiator. Upon BLUSA
complying with the provisions of this section, you will
hold BLUSA harmless against claims and expenses (including
our reasonable attorney costs) arising out of telephone
requests (orally or through facsimile transmission).

**1.24  Bank Leumi le-Israel, B.M., as Your Agent.**

You appoint Bank Leumi le-Israel, B.M., its officers,
employees, agents, and representatives, to act as your
agent, upon oral or written instructions from you, to
transmit instructions to BLUSA relating to your Account or
any other action undertaken by BLUSA for you.

**1.25  Local Financial Intermediary.**

A financial intermediary, such as a bank, cambio, or money
transmitter, located where you reside or do business, may
be useful in the execution of certain funds transfers
relating to your Account. Upon your request, BLUSA or an
affiliate may suggest financial intermediaries who have
provided services to BLUSA customers previously and who
maintain an account with BLUSA. You may, however, use any
financial intermediary you wish. The choice of a financial
intermediary is yours. The financial intermediary you
choose need not maintain an account with BLUSA. Neither
BLUSA nor its affiliates undertake responsibility for the
actions of the financial intermediary you choose, including

16

its failure to perform, even if the financial intermediary
is one which had been suggested by BLUSA or an affiliate.

### 1.26 Inconsistent Name and Account Information for Payment Orders.

If a Payment Order describes a Beneficiary inconsistently
by name and account number, payment may be made by the
Beneficiary's Bank (including BLUSA where it is the
Beneficiary's Bank) on the basis of the account number.  In
such circumstances the Sender's obligation to pay the
amount of its Payment Order to the Receiving Bank
(including BLUSA where it is the Receiving Bank) is not
excused.

### 1.27 Waivers.

BLUSA reserves the right to waive any of these terms in any
specific instance, but the waiver will apply only to that
instance.  You will not be entitled to make any claim
against BLUSA upon any promise, agreement, or act of any
officer or employee of ours which is not in conformity with
these terms.

### 1.28 Enforcement of Obligations.

You will reimburse BLUSA for all expenses which it incurs
(including its reasonable attorney costs) in connection
with its enforcement of your obligations under the
Agreement.

### 1.29 Amendments and Waivers.

Amendments to the Arrangements to be binding on BLUSA must
be in writing and signed by BLUSA except to the extent the
Arrangements provide that a change may be made by written
notice by BLUSA sent to you or posted in its International
Division teller area in New York and its branches in
California and Chicago.  BLUSA cannot waive any of its
rights under the Arrangements unless the waiver is in
writing and signed by BLUSA.  BLUSA reserves the right to
waive any of its rights under the Arrangements in any
specific instance, but the waiver will apply only to that
instance.  You will not be entitled to make any claim
against BLUSA upon any promise, agreement, or act of any
BLUSA officer or employee that is not in conformity with
the Agreement.

17

### 1.30 Electronic Recording of Telephone Conversations.

BLUSA may, in its discretion, electronically record
telephone conversations between you and its officers,
employees, agents, or representatives.  If a lawsuit ever
results from you or BLUSA entering, or failing to enter,
into a transaction involving a telephone conversation, the
recording may be used as evidence in court.

### 1.31 Notices.

Notices under the Arrangements, unless specifically stated
otherwise herein, must be in writing and delivered by
regular mail, overnight courier, or telephone facsimile and
will be considered received five (5) days after being sent
by mail or on the day after the overnight package is sent,
or the date the telephone facsimile is sent.

### 1.32 Prior Agreements; Severability; Captions; Binding Effect.

The Arrangements supersedes and replaces all prior oral or
written agreements and understandings concerning the
subject matter of the Arrangements.  All provisions of the
Arrangements are separate.  If one provision is declared
unenforceable, it will not invalidate the remaining
provisions of the Arrangements.  Captions are for reference
purposes only and cannot be used to alter the meaning of
any of the provisions of the Arrangements.  The
Arrangements is binding on your heirs, executors,
administrators, successors and assigns and on BLUSA's
successors and assigns.

### 1.33 Legal Proceedings; Jurisdiction; Venue.

Any legal proceedings or actions arising out of or relating
to your Accounts or the Agreement may be brought in, and
you consent to personal jurisdiction and venue of, any
State or Federal court located in the county where you
opened the Account, or, if you open the Account at the
offices of a Bank BLUSA affiliate, in the County of New
York, State of New York.  Any legal proceedings or actions
arising out of or in relating to the Credit Account may
also be brought in, and you also consent to personal
jurisdiction and venue of, any State or Federal court
located in the County of New York, State of New York.

You consent to the service of process in any such legal
proceedings or actions by mailing a copy of such process to
you at your last known address shown on BLUSA's records.

18

### 1.34  Governing Law.

Your Deposit Account and Investment Account shall be
governed by Federal law and, without reference to choice of
law doctrine, to the extent not inconsistent with Federal
law (i) the laws of the State (California, Florida,
Illinois, or New York) where you open such account, or (ii)
if you open such account through the offices of a BLUSA
affiliate, the laws of the State of New York.  However,
BLUSA's services as custodian, and your rights in the
Assets held by BLUSA as custodian (including any rights of
those claiming through you, such as beneficiaries of an
Investment Account which is an ITF Account), shall be
governed by Federal law and, without reference to choice of
law doctrine, to the extent not inconsistent with Federal
law the laws of California.

Your Credit Account shall be governed by Federal law and,
without reference to choice of law doctrine, to the extent
not inconsistent with Federal law the laws of the State of
New York.

### 1.35  Waiver of Jury Trial and of Set-Off and Counterclaim.

IN ANY LEGAL PROCEEDINGS OR ACTIONS ARISING OUT OF OR
RELATING TO YOUR ACCOUNTS OR THE AGREEMENT, YOU WAIVE THE
RIGHT TO A TRIAL BY JURY AND THE RIGHT TO INTERPOSE ANY
SET-OFF OR COUNTERCLAIM OF ANY KIND.

19

### SECTION 2--DEPOSIT ACCOUNTS.

### 2.1  Domestic Branch Deposit Accounts.

2.1.1  BLUSA uses the "daily balance method" to calculate
the interest on your Deposit Accounts that bear interest.
This method applies a daily periodic rate to the principal
in the account each day.  If the Deposit Account is opened
before 3 PM on a weekday (Monday to Friday) that is not a
Federal holiday, interest begins to accrue that day, even
if the deposit contains non-cash items (for example,
checks).  Otherwise interest begins to accrue on the next
business day.

2.1.2  BLUSA does not open Deposit Accounts with checks
drawn on banks outside the United States or with checks
that are not payable in U.S. dollars.  BLUSA sends those
checks for collection and opens the account upon the check
being collected.

2.1.3  The following applies to all Deposit Accounts:  (a)
funds are available for withdrawal in accordance with the
Funds Availability Schedule, however, interest begins to
accrue on the day of deposit, even if the deposit contains
non-cash items (for example, checks); (b) if you make a
deposit at a branch (including its ATM) before 3 PM on a
Business Day that the branch is open, that day is
considered that to be the day of deposit; (c) if you make a
deposit after 3 PM or on a day that the branch is not open,
the next Business Day the branch is open is considered to
be the day of deposit.

2.1.4  If you fail to endorse a check that you submit for
deposit, BLUSA has the right, but is not obligated, to
supply the missing endorsement.  You will reimburse BLUSA
for any loss or expense we incurred if a deposited check is
not endorsed exactly as drawn.

2.1.5  Fees that may be imposed in connection with your
Deposit Accounts are indicated on the Fee Schedule.

2.1.6  BLUSA reserves the right to refuse any deposit to
any account and may exercise this right any time on the day
that would be considered the day of deposit, even if you
were given a deposit receipt.  If BLUSA refuses a submitted
deposit and does not tell you immediately, BLUSA will
promptly attempt to notify you by telephone.  If BLUSA is
unsuccessful in contacting you by telephone, it will
promptly mail you notice.

2.1.7  For each transaction Deposit Account established for
you at the New York Head Office, BLUSA may establish for
you a corresponding nontransaction Deposit Account (the

20

"Corresponding Account"). You will have no direct access to the Corresponding Account. For example, you may not make deposits to, or withdrawals from, the Corresponding Account. We may from time to time transfer funds from the transaction Deposit Account to the Corresponding Account. We will transfer funds from the Corresponding Account to the transaction Deposit Account to the extent necessary to pay checks, ATM withdrawal requests, other payment orders, and fees against the transaction account. However, we will never transfer funds from the Corresponding Account in excess of the funds in that account.

Balance information provided to you, including that provided on your statement, includes the aggregate balance of your transaction account and Corresponding Account. Any interest payable, or fees imposed, is calculated on the aggregate balance of your transaction Deposit Account and the Corresponding Account.

The establishment of the Corresponding Account is solely for BLUSA's internal reporting purposes including preparation of regulatory reports and does not affect your ability to use your transaction Deposit Account or the interest paid (if any) or fees imposed. The establishment of the Corresponding Account also does not affect your statement or FDIC insurance coverage.

2.1.8 Section 4 sets forth provisions relating to Overdrafts (as defined). If BLUSA (i) does not grant an Overdraft, or does not grant a sufficient Overdraft, on a business day to pay all of your checks received by BLUSA for payment that day and (ii) accordingly returns unpaid one or more checks, BLUSA will determine which check or checks are paid and which check or checks are returned unpaid. BLUSA's practice is to pay all checks received for payment "over the counter" (for example, a check deposited in another account with BLUSA) before paying other checks (for example, a check received through a clearinghouse). Within each of these two groups, BLUSA's practice is to pay first the larger or largest checks.

2.1.9 BLUSA will not be responsible if it pays or certifies a check described in a stop payment request (and because of the payment or certification other checks drawn on the account are returned for insufficient or unavailable funds) because the information you gave is incomplete or incorrect or because the stop payment request is not given at a time and in such a manner as to afford a reasonable opportunity to act on it before the check is paid. BLUSA will not be responsible if it pays or certifies a check more than 14 days after you have orally requested that the check not be paid it unless within the 14-day period you confirm your request in writing on a form used by BLUSA for that purpose. BLUSA will not be responsible if it pays or

21

certifies a check more than six months after the request in writing not to pay unless within the six-month period you renew your request in writing on a form used by BLUSA for that purpose. An instruction received through a telephone or computer-accessed automated account information service provided by BLUSA to receive stop payment requests is a "request in writing on a form used by BLUSA for that purpose".

2.1.10 You agree not to issue postdated checks. If, however, you do issue a postdated check, BLUSA will not be responsible if it pays or certifies the check before the stated date of the check.

## 2.2 INTERNATIONAL BANKING FACILITY ("IBF") AND CAYMAN BRANCH ACCOUNT PROVISIONS

2.2.1 Time deposit accounts may be established with BLUSA's IBF or Cayman Branch. Checking Accounts may also be established with BLUSA's Cayman Branch. IBF and Cayman Branch Time Deposit Accounts ("Non-U.S. Time Deposit Accounts") are non-transferable. Unless BLUSA is otherwise notified by you, your Non-U.S. Time Deposit Account will automatically be renewed at maturity for the same term at the then prevailing interest rate. No withdrawal may be made from your Non-U.S. Time Deposit Account prior to the final maturity date.

2.2.2 If automatic renewal of a Non-U.S. Time Deposit Account occurs, the accrued interest will be added to the principal of the account unless, before the maturity date, you notify BLUSA that interest is to be transferred as instructed or credited to another account that you specify.

2.2.3 If you notify BLUSA that a Non-U.S. Time Deposit Account will not be renewed, before the final maturity date, you must give BLUSA instructions as to disposition of all principal and accrued interest in the Non-U.S. Account.

2.2.4 Demand for payment of a Cayman Branch Deposit Account may be made only at the Cayman Branch; however, at your request, BLUSA's International Private Banking Department will act as your agent to collect the deposit from its Cayman Branch.

2.2.5 BLUSA may make disclosures of information and/or documents concerning you and/or your Cayman Branch Deposit Accounts: (a) if necessary to carry out your requests, for the protection of BLUSA's interests, or for the enforcement of any of BLUSA's rights against you; or (b) as may otherwise be required pursuant to applicable governmental,

22

judicial or legal (whether civil or criminal) process or demand, within the United States of America or elsewhere. You hereby consent to and authorize any such disclosure(s) for purposes of the Confidential Relationships (Preservation) Law of the Cayman Islands, the laws of the United States of America and of the State of New York, and for all other purposes.

2.2.6   Instructions, notices and communications to BLUSA concerning your Cayman Branch Deposit Account, including those relating to renewal or withdrawal or transfer of funds, may be made according to the Telephone and Facsimile Requests provisions contained in this Agreement.  As a matter of convenience to you, these requests may be made either directly to BLUSA, or indirectly to one of BLUSA's representative offices or correspondent banks, which in turn will communicate these requests to BLUSA.  Requests made by you to one of BLUSA's representative offices or correspondent banks will be considered given to BLUSA only when actually received by BLUSA.

2.2.7   BLUSA is required to advise you that Cayman and other foreign branch deposits, in a liquidation, have lesser preference in repayment than domestic deposits.

2.2.8   The minimum balance to open a Cayman Branch Deposit Account is $100,000.  BLUSA may close your Cayman Branch Deposit Account if you do not maintain a minimum balance of $100,000.

2.2.9   It is the policy of the Board of Governors of the Federal Reserve System that deposits received by international banking facilities (such as BLUSA's IBF) from non-depository institution depositors may be used only to support the operations outside the United States of the depositor or of its affiliates located outside the United States, and that extensions of credit by international banking facilities may be used only to finance the operations outside the United States of the borrower or of its affiliates located outside the United States.

2.2.10   BLUSA can only accept IBF time deposits from an IBF-Eligible Depositor.  An IBF-Eligible Depositor is

> (1) a non-United States resident, **or**
>
> (2) a foreign affiliate (including a foreign office) of a United States corporation but the funds may be used only to support the operations outside the United States of the depositor or the operations of its affiliates located outside the United States.

23

Category 1 includes an individual who resides principally outside the United States at the time the deposit is made. It also includes a corporation organized under foreign law but the corporation may not have an office in the United States.  However, the foreign corporation may have an agent in the United States solely for the purpose of obtaining financing and processing the related paperwork.

Category 2 requires that the foreign affiliate have an overseas office.  A "nameplate" office is adequate.

Category 2 bases affiliation on control, which requires ownership of more than 50 percent of the voting shares. This paragraph does not apply to foreign governments.

24

## SECTION 3--INVESTMENT ACCOUNTS.

### 3.1  Purchase and Sale of Financial Assets.

You may request that BLUSA establish for you an investment
account (the "Investment Account") for the financial assets
you may select from time to time (each, individually, an
"Asset" and, collectively, the "Assets"), and that BLUSA
acquire, hold, and/or dispose of any or all of the Assets
pursuant to your instructions, subject to the terms of this
paragraph.  BLUSA will open and maintain the Investment
Account only if you also maintain with BLUSA one or more
transaction Deposit Accounts (the "Related Account").

3.1.1  BLUSA is instructed and authorized to acquire in
BLUSA's name, but for the benefit of your Investment
Account and at your sole risk, the Assets selected by you
from time to time.

3.1.2  Unless you notify BLUSA to the contrary, (i) short-
term debt obligations such as U.S. Treasury bills or
comparable securities issued by a foreign government or
promissory notes issued regularly by the obligor, and (ii)
time deposits in other banks are rolled over at maturity.

3.1.3  BLUSA shall normally credit the Investment Account
on the settlement date for Assets purchased.  Positions
shown on the Investment Account statement are subject to
reversal if BLUSA does not receive good delivery.

3.1.4  Credit shall be entered in the Related Account for
the proceeds of maturing Assets and sales of, or
distributions on, Assets held for the Investment Account.
However, the credit is provisional and may be reversed if a
charge back is made to BLUSA.

3.1.5  BLUSA is instructed and authorized to debit the
Related Account to settle for the Assets.  If there are
insufficient available funds in the Related Account, BLUSA
may (but is not required to) debit either (i) the Related
Account, resulting in use of uncollected funds or in an
overdraft, as the case may be, in the Related Account, or
(ii) any other U.S. currency, or non-U.S. currency, account
you maintain with BLUSA.  Upon BLUSA committing itself to
acquire Assets for the Investment Account which acquisition
contemplates a debit to an account at settlement, BLUSA is
authorized (but not required) to place a hold on (1) the
Related Account, or (2) if there are insufficient available
funds in the Related Account, any other U.S. currency, or
non-U.S. currency, account you maintain with BLUSA, in each
case in an amount equal to BLUSA's reasonable estimate of
the amount of the prospective debit.  Respecting Assets
denominated in non-U.S. currencies, BLUSA is instructed and

25

authorized to convert funds into and out of the currency in
which the Assets are denominated at BLUSA's standard
exchange rates and for BLUSA's customary fees.

3.1.6  BLUSA will act to protect the confidentiality of the
Investment Account, subject to legal requirements and
BLUSA's contracts with others to provide services to BLUSA.

3.1.7  You agree to the following:

(1)  BLUSA will be acting solely as your agent, and the
Assets will be acquired, held, and disposed of at your sole
risk.

(2)  BLUSA's only obligation in disposing of the Assets is
to pay you the proceeds thereof that have been credited to
BLUSA in available funds at its New York Head Office, less
any applicable fees and expenses.

(3)  The decision to acquire, hold, and dispose of the
Assets will be made by you following your consideration of
the risks involved, including (without limitation) the
risks referred to in this paragraph, and you acknowledge
that BLUSA has made no representations or warranties to you
relating to any such risks.  You further acknowledge that
you are a sophisticated investor able to evaluate the
merits and risks of all investments in the Assets and are
able to bear the economic risk of these kinds of
investments.

(4)  Except (i) for actual damages caused solely by BLUSA's
fraudulent act or willful misconduct or (ii) as provided in
this paragraph, BLUSA will not be liable for (i) any
depreciation, currency exchange losses, or loss in value of
the Assets, or for any action taken pursuant to your
instructions, (ii) any act or omission of any sub-agent
(including a broker) selected by BLUSA in good faith
relating to, or arising out of, the acquisition, holding,
or disposition of the Assets, or the conversion of funds
into and out of the currency in which the Assets are
denominated, or (iii) damages of any kind for any act or
omission relating to any of these provisions or this
Agreement, including (without limitation) incidental,
consequential or punitive damages, even if BLUSA was aware
of the possibility of those damages.  If you assert a claim
against a subagent for which BLUSA will not be liable under
this paragraph, you will hold BLUSA harmless against any
claim the subagent may assert against BLUSA relating to, or
arising out of, the claim you assert against the subagent.

3.1.8  Upon BLUSA's acceptance of your order for the
purchase of a financial asset through BLUSA, or through an
executing broker where BLUSA acts as introducing broker,
BLUSA is authorized (but not required) to place a hold on

26

one or more of your Deposit Accounts, Investment Accounts, or accounts you maintain through BLUSA in an aggregate amount not exceeding BLUSA's estimate of the greater of

(i)  the purchase price of the financial asset, or

(ii) your obligation to BLUSA arising out of the financial asset.

3.1.9  If there are insufficient available funds in your Deposit Accounts, BLUSA may decline the purchase or, if BLUSA chooses to proceed with the purchase, BLUSA is authorized (but not required) to debit any Deposit Account even if the debit results in use of uncollected funds or in an Overdraft.

3.1.10  BLUSA will forward instructions for purchases and sales through an executing broker where BLUSA acts as introducing broker.  BLUSA undertakes no responsibility for execution of the instructions.

### 3.2  Custody Service.

BLUSA shall, through its California Principal Branch, hold in custody those Assets acquired (through purchase or otherwise) for the Investment Account and other Assets you deliver to BLUSA or its agent for the Investment Account. BLUSA may use one or more subcustodians.  Custody services may include (i) receiving proceeds upon maturity, sale, or other disposition of the Assets or receiving interest or dividend payments, or other distributions, relating to the Assets and remitting such proceeds, payments, or distributions to BLUSA, (ii) delivering securities, and (iii) receiving, or searching for, "call" or other notices relating to the Assets held in custody.  If the subcustodian was selected by BLUSA in good faith, BLUSA will not be liable for (i) a delay by the subcustodian in remitting such proceeds, payments, or distributions to BLUSA, (ii) a delay by the subcustodian in delivering securities, or (iii) a failure by the subcustodian to take appropriate action relating to such notices.  If you assert a claim against a subcustodian for which BLUSA will not be liable under this paragraph, you will hold BLUSA harmless against any claim the subcustodian may assert against BLUSA relating to, or arising out of, the claim you assert against the subcustodian.  In no event will BLUSA's liability in using a subcustodian exceed the subcustodian's liability to BLUSA.  The fees for BLUSA's services as custodian are set forth in the Fee Schedule.

27

### 3.3  Purchase and Sale of Foreign Currencies.

You may request that BLUSA sell to you and/or purchase from you, in BLUSA's sole discretion, foreign currencies, subject to this paragraph.  Each contract for purchase or sale of foreign currency (each, a "Contract") will be on such terms as may be agreed upon by you and BLUSA at the time the Contract is entered into.  Each Contract will be evidenced by a written confirmation issued by BLUSA (each, a "Confirmation") which will set forth (i) the amount of foreign currency to be purchased or sold (the "Contract Currency"), (ii) the date the foreign currency is to be delivered (the "Value Date"), and (iii) the amount of United States dollars to be paid for the currency (the "Purchase Price").  BLUSA's records of all Contracts will be conclusive and binding upon you.

3.3.1  Requests for BLUSA to sell foreign currency to you or purchase foreign currency from you may be made in writing or by telephone or facsimile transmission, in accordance with the Telephone and Facsimile Requests provisions of the Arrangement.

3.3.2  On the Value Date, you will (i) in the case of a sale of currency from BLUSA to you, deliver the Purchase Price to BLUSA, at which time BLUSA will transmit or otherwise deliver the Contract Currency to or for your account as provided in the Confirmation, and (ii) in the case of a purchase of currency by BLUSA from you, deliver the Contract Currency to BLUSA's correspondent as provided in the Confirmation, at which time BLUSA will, within two (2) business days after BLUSA's receipt of a tested telex from its correspondent acknowledging the correspondent's receipt from you of the Contract Currency, credit or transmit the Purchase Price to or for your account as provided in the Confirmation.  The Purchase Price will be paid in United States dollars, and both the Purchase Price and the Contract Currency will be delivered in immediately available funds.  However, neither BLUSA nor any of its correspondents will be liable to you for any claims, demands, liabilities, losses, damages, costs or expenses of any nature whatsoever resulting from any delay, mistake, omission, interruption, misdelivery, mutilation or error on the part of any cable, telegraph, mail, wireless or other transmittal company, agency or utility used in transmitting the Purchase Price or the Contract Currency.

3.3.3  You agree to the following:

(1)  BLUSA will be acting solely as your agent, and the foreign currency position will be acquired, held, and disposed of at your sole risk.

28

(2)  BLUSA's only obligation in disposing of the foreign
currency position is to pay you the proceeds thereof that
have been credited to BLUSA in available funds at its New
York Head Office, less any applicable fees and expenses.

(3)  The decision to acquire, hold, and dispose of the
foreign currency position will be made by you following
your consideration of the risks involved, including
(without limitation) the risks referred to in this
paragraph, and you acknowledge that BLUSA has made no
representations or warranties to you relating to any such
risks.  You further acknowledge that you are a
sophisticated investor able to evaluate the merits and
risks of all investments in the foreign currency position
and are able to bear the economic risk of these kinds of
investments.

(4)  Except (i) for actual damages caused solely by BLUSA's
fraudulent act or willful misconduct or (ii) as provided in
this paragraph, BLUSA will not be liable for (i) any
depreciation, currency exchange losses, or loss in value of
the foreign currency position, or for any action taken
pursuant to your instructions, (ii) any act or omission of
any sub-agent (including a broker) selected by BLUSA in
good faith relating to, or arising out of, the acquisition,
holding, or disposition of the foreign currency position,
or (iii) damages of any kind for any act or omission
relating to any of these provisions or this Agreement,
including (without limitation) incidental, consequential or
punitive damages, even if BLUSA was aware of the
possibility of those damages.  If you assert a claim
against a subagent for which BLUSA will not be liable under
this paragraph, you will hold BLUSA harmless against any
claim the subagent may assert against BLUSA relating to, or
arising out of, the claim you assert against the subagent.

**3.4  Margin for Foreign Currency Transactions.**

3.4.1  You must have on deposit at BLUSA prior to BLUSA's
acceptance of a Contract, in addition to any other deposits
required to be maintained by you under the Arrangements or
otherwise, a sum in United States dollars equal to the
percentage of the Purchase Price under the Contract
required by BLUSA, in its sole discretion, from time to
time (the "Original Margin").  If your Original Margin or
any sums deposited by you in accordance with this paragraph
3.3 (such sums are called, collectively, the "Maintenance
Margin") is on deposit in account(s) with BLUSA from which
you may make withdrawals on or prior to the Value Date,
BLUSA may, in its sole discretion, prohibit withdrawals
from those account(s) prior to the Value Date of any sums
that would reduce the amount on deposit below the amount of

29

the Original Margin and any Maintenance Margin
(collectively, the "Margin").

3.4.2  If, at any time, the "Adjusted Currency Value" (as
defined below) of all of your Open Contracts for the
purchase of currency from BLUSA falls below an amount equal
to the percentage of the aggregate Purchase Price for all
currency to be purchased under those Contracts required by
BLUSA, in its sole discretion, from time to time, you will,
immediately after BLUSA demands deposit of additional
Margin, deposit with BLUSA an amount in United States
dollars (in immediately available funds) sufficient so that
the Adjusted Currency Value will be equal to at least that
percentage of the aggregate Purchase Price.  The "Adjusted
Currency Value" of all of your Open Contracts for the
purchase of currency from BLUSA will be the sum of (i) the
value from time to time of the currency that is the subject
of the Contracts, based upon the then remaining term of
each Contract and BLUSA's prevailing rate for such currency
in New York City (the "Currency Value"), (ii) the Original
Margin deposited with respect to these Contracts, (iii) all
Maintenance Margin deposited with respect to these
Contracts, and (iv) the amount of profit, if any, payable
by BLUSA that you may earn from time to time on Closed
Contracts, and any Margin you have deposited on account of
those profitable Contracts.

3.4.3  If at any time the total "Adjusted Purchase Price"
(as defined below) for all currency to be purchased by
BLUSA from you under all Open Contracts falls below the
percentage of the total Currency Value of all currency to
be purchased under all your Open Contracts required by
BLUSA, in its sole discretion, from time to time, you will,
immediately after BLUSA demands deposit of additional
Margin, deposit with BLUSA a sum in United States dollars
(in immediately available funds) sufficient so that the
total Adjusted Purchase Price will be equal to at least
that percentage of the total Currency Value.  The total
"Adjusted Purchase Price" for all currency to be purchased
by BLUSA from you under all Open Contracts will be the sum
of (i) the Purchase Price for all currency to be purchased
from you under Open Contracts, (ii) the Original Margin
deposited with respect to all Open Contracts, (iii) all
Maintenance Margin deposited for all Open Contracts, and
(iv) any amount payable by BLUSA for any profits you may
earn from time to time under Closed Contracts, and any
Margin you have deposited on account of those profitable
Contracts, if the Margin is not included under paragraph
3.4.2.

3.4.4  If at any time your net losses on all Closed
Contracts is greater than the Margin deposited with respect
to those Contracts, you will, immediately after BLUSA
demands deposit of additional Margin, deposit with BLUSA a

30

sum in United States dollars (in immediately available funds) equal to the difference between the Margin and those losses.

3.4.5  BLUSA may, in its sole discretion, waive the requirement that Margin be deposited and maintained in accordance with paragraph 3.3.3, and if BLUSA does not insist that the Original Margin be deposited before BLUSA's acceptance of a Contract, or demand deposit of any Maintenance Margin, or stop any withdrawal of funds prohibited by paragraph 3.4.1, it will be considered to be a waiver under this paragraph 3.4.5 only in that instance. If a waiver occurs under this paragraph 3.4.5, BLUSA may at any time after the waiver, in its sole discretion, demand that you deposit the required Margin with BLUSA and you agree to make such deposit in United States dollars (in immediately available funds) within two days after BLUSA makes the demand.

3.4.6  Instead of demanding any Margin deposit in accordance with paragraphs 3.4.1 to 3.4.4, BLUSA may, in its discretion and without notice to you, consider any funds in any Account to be the required Margin, and BLUSA may prevent withdrawal of funds from the account(s) in accordance with paragraph 3.4.1.

3.4.6  As used in this paragraph 3.4, "Open Contract" and "Closed Contract" have the meanings customarily given to them by the trade in purchasing and selling contracts for the future delivery of currency.

3.5  **Investment Advice; Bank's Liability; Fees.**

3.5.1  Neither BLUSA nor its officers or employees provide investment advice relating to the purchase or sale, pursuant to this Agreement, of foreign currencies or financial assets.  Investment advice is available from BLUSA only if you enter into an Investment Management Agreement with BLUSA and then only in the circumstances provided for in that Investment Management Agreement.

3.5.2  Any information furnished to you by BLUSA in connection with this section will be obtained from sources which BLUSA believes to be reliable, but BLUSA does not accept responsibility for the accuracy of such information. BLUSA will not be liable for any loss as a result of any act or omission respecting the Investment Account(s) based on any information furnished to or by BLUSA.

3.5.3  For transactions made for your account, you agree to pay BLUSA monthly, in arrears, BLUSA's usual fees as set forth from time to time in the Fee Schedule.  BLUSA may from time to time revise these fees upon notice sent to you.  BLUSA will also be entitled to payment for all out-

31

of-pocket expenses and all taxes and other liabilities incurred by BLUSA in connection with the Investment Account(s), as and when incurred.  BLUSA may charge the Related Account(s) and/or any other account(s) for all such fees, expenses, taxes, and other liabilities, without prior notice to or consent by you.  To the extent BLUSA has not been paid by charging the Related Account(s) or other accounts(s), you agree to pay BLUSA upon demand for all such fees, expenses, taxes, and other liabilities.

3.6  **Income on Investment Transactions.**

BLUSA may collect any income relating to the Assets and in its discretion either (a) reinvest the income in the Investment Account in accordance with the terms of these provisions, or (b) quarterly or monthly convert the income into U.S. dollars (if the income is collected in a non-U.S. currency) and transfer the proceeds to the Related Account(s).

3.7  **Default.**

3.7.1  As used in this paragraph 3.7, the term "Event of Default" means (i) nonpayment when due or failure in the timely observance or performance of any of your obligations under these provisions, this Agreement, any Contract or any Asset; (ii) a decrease in the Adjusted Currency Value of all Open Contracts for the purchase or sale of currency by you from BLUSA below the percentage of the total Purchase Price for all currency to be purchased under those Contracts which is specified in the purchase confirmations; (iii) a decrease in the total Adjusted Purchase Price for all currency to be purchased under all Open Contracts below the percentage of the total Currency Value of all currency to be purchased under the Contracts which is specified in the purchase confirmations; (iv) default in any other indebtedness or guarantee which you or any person having an interest in any Related Account(s) has at any time to BLUSA or to any other individual or Entity, if that default would enable BLUSA or any other individual or Entity to accelerate the maturity of that indebtedness; (v) your insolvency or your failure to generally pay your debts as they become due, or the filing of any application for or appointment of a trustee or receiver for you or any part of your property, or the assignment of any of your assets for the benefit of creditors, or the filing of a petition in bankruptcy by or against you (or the commencement by or against you) of any proceeding under any bankruptcy or insolvency law or any other law relating to the relief of debtors, readjustment of indebtedness, reorganization, receivership, composition or extension; (vi) the suspension of your usual business, condemnation or

32

seizure of a substantial part of your property by any
governmental authority or court, or your making or sending
notice of any intended bulk transfer of your assets; (vii)
your death, dissolution, liquidation or other termination
of existence, or the adoption of any resolution for your
dissolution, liquidation or other termination of your
business; (viii) such a change in your condition or affairs
(financial or otherwise) as, in the sole opinion of BLUSA,
increases BLUSA's risk with respect to the performance of
your obligations under these provisions or this Agreement;
or (ix) your failure, upon receipt of notice of termination
of the control agreement between you, BLUSA, and a
financial intermediary (the "First Agreement") to cause the
Assets which are the subject of the First Agreement to be
held in book-entry form by another financial intermediary
subject to a control agreement, satisfactory to BLUSA,
executed by all named parties thereto and delivered to
BLUSA no later than five days before the scheduled
termination date of the First Agreement.

3.7.2  Upon the occurrence of an Event of Default, BLUSA
may, in its sole discretion, at any time during the
continuance of an Event of Default, without notice to you,
dispose of any or all of the currency it holds in inventory
for sale to you under any or all Contracts, dispose of any
or all contracts BLUSA has entered into with third parties
to purchase or sell currency that is in turn to be sold to
or purchased from you under any or all Contracts, enter
into contracts with third parties for the purchase or sale
of currency that was to be purchased from or sold to you
under any or all Contracts, dispose of any or all Assets in
the Investment Account(s), and/or take any other actions
that BLUSA considers appropriate, and BLUSA shall have no
further obligations or liabilities to you under any
Contract, Asset or Investment Account(s), and you shall be
liable for all losses incurred by BLUSA as a result of any
and all fluctuations in the value of currency or Assets
between the date each Contract was entered into or Assets
purchased and the date action is taken with respect to the
Contract or Assets in accordance with this sentence.  The
amount of these losses will be payable by you to BLUSA in
United States dollars on demand and will bear interest from
the date of demand until payment in full at a rate per
annum equal to 3% in excess of the floating rate of
interest designated by BLUSA and in effect from time to
time as its "Reference Rate", and adjusted when the
Reference Rate changes, but in no event in excess of the
maximum interest rate permitted by law.  (You confirm that
the Reference Rate may not necessarily represent the lowest
interest rate charged by BLUSA to its customers.)  Upon the
occurrence of an Event of Default, and at any time
thereafter, BLUSA shall have and may exercise, without
further notice, with respect to any or all of your
obligations and liabilities to BLUSA under these provisions

33

and/or this Agreement, a right of set-off and/or banker's
lien against and in respect of any of the Contracts,
Assets, Investment Account(s), Related Account(s) and/or
any other account(s), then or thereafter held by BLUSA.
Any right of set-off exercised by BLUSA shall be considered
to have been exercised immediately on the occurrence of an
Event of Default, even though the set-off is made or
entered on the books of BLUSA after that time.  All of
BLUSA's rights and remedies under these provisions shall be
in addition to any other rights and remedies which BLUSA
may have under this Agreement or any other instrument or
agreement or as a matter of law or equity, and all of
BLUSA's rights and remedies shall be cumulative and may be
exercised alone or at the same time.

**3.8  Telephone Instructions for Purchase or Sale of Assets.**

BLUSA may extend to you the accommodation of providing
telephone instructions for the purchase or sale of
financial assets (each a "Transaction").  The BLUSA
representative to whom you provide your telephone
instructions will contemporaneously make a written record
thereof.  That written record will be considered to reflect
accurately your telephone instructions unless you are able
to establish by clear and convincing evidence that the
written record is manifestly erroneous.

BLUSA's willingness to accept telephone instructions
remains discretionary in all cases and only execution of
the Transaction requested in your telephone instructions
constitutes its acceptance of your telephone instructions.

**3.9  Miscellaneous.**

3.9.1  BLUSA will have no liability to you for any failure
to fulfill any of its obligations under these provisions as
a result of war, insurrection, strikes, government
regulations, force majeure or other conditions or causes
beyond its control, or for any deduction for taxes, levies,
or otherwise from the Assets.  If any change in any
applicable law or regulation (or any change in the
interpretation of any law or regulation by any governmental
authority that administers such law or regulation) causes
any increase in the direct or indirect cost or expense of
BLUSA fulfilling any of its obligations under these
provisions or this Agreement, or any reduction in any
amount received or to be received by it under these
provisions or this Agreement, you will promptly reimburse
and pay BLUSA for the amount of such increased cost or
expense or such reduced receipts.  If the issuer or any
guarantor of the Assets, or a financial institution or
other Entity in the home country of the issuer or any

34

guarantor of the Assets, does not fulfill its commitments
or fulfills them only partially, or if it cannot meet any
of its obligations due to bankruptcy, insolvency or other
impairment, transfer restriction, expropriation, or foreign
exchange control imposed in the home country of the issuer
or any guarantor, or in the United States, or otherwise,
BLUSA's sole obligation will be to assign to you any claim
held by BLUSA on your behalf.  Thereafter, BLUSA will be
under no obligation to perform any other services relating
to such Assets, and BLUSA will have no further liability or
responsibility to you under these provisions.  However, if
BLUSA does thereafter perform services relating to such
Assets, you will reimburse BLUSA for its reasonable costs
incurred in that respect before you notify BLUSA in writing
to cease performing such services.

3.9.2  Each of the Contracts and Assets will remain subject
to all of the terms of these provisions even if you make an
assignment, pledge or transfer of any Contract or Asset or
of any of your rights under any Contract or Asset, and you
will not be relieved of any obligations under any Contract
or Asset or these provisions as a result of any assignment
you may make.

3.9.3  In connection with the Investment Account(s), you
will comply with all applicable laws of the United States,
file all applicable reports and returns, and such other
information as may be required.  If BLUSA is required by
law to file a tax return, you will pay BLUSA a fee to be
determined by BLUSA based upon the work involved for
BLUSA's services to prepare and file any return.  You
understand that BLUSA has not provided, and will not
provide, any legal or tax advice to you.  Furthermore,
BLUSA has advised you to seek such advice from your
attorney, accountant, and/or tax advisor.

3.9.4  BLUSA may act upon the instruction and authorization
of any person authorized to act pursuant to this Agreement.
The ownership interest in the Assets will be determined in
the same manner as the ownership interest in the Related
Account(s).

3.9.5  **THE INVESTMENT AND FOREIGN CURRENCY TRANSACTIONS
COVERED BY THIS SECTION (i) ARE NOT INSURED BY THE FEDERAL
DEPOSIT INSURANCE CORPORATION, (ii) ARE NOT DEPOSITS OR
OTHER OBLIGATIONS OF, OR GUARANTEED BY, BLUSA OR ANY OTHER
U.S. BANK, AND (iii) ARE SUBJECT TO INVESTMENT RISKS,
INCLUDING POSSIBLE LOSS OF THE PRINCIPAL AMOUNT INVESTED.**

35

**SECTION 4--CREDIT RELATED TO A TRANSACTION ACCOUNT.**

**4.1  Creation of Overdrafts.**

You authorize BLUSA, in its discretion, to (i) create such
overdrafts in your Deposit Account as may be necessary to
pay any check or other payment order you issued against
your Deposit Account or make any investment you direct;
(ii) permit any drawing on uncollected funds in your
Deposit Account; or (iii) extend credit to you by crediting
your Deposit Account (each such overdraft, drawing, or
extension of credit being an "Overdraft").  The creation
and amount of any Overdraft, and the maximum amount of all
Overdrafts permitted to be outstanding at any time, will at
all times be in BLUSA's sole discretion.  BLUSA may refuse
to create any particular Overdraft for any reason
whatsoever.

**4.2  Promise to Pay; Interest; Joint Account.**

You promise to pay immediately to the order of BLUSA at its
offices at 564 Fifth Avenue, New York, New York 10036, in
immediately available funds, the full amount of any and all
Overdrafts, together with interest on those Overdrafts at a
rate per year determined by BLUSA from time to time in its
sole discretion (the "Interest Rate"), but in no event will
the Interest Rate be greater than the sum of (i) the
"Maximum Margin" (as defined below), plus (ii) the floating
rate of interest designated by BLUSA and in effect from
time to time as its "Reference Rate", adjusted when the
Reference Rate changes.  (You confirm that the Reference
Rate may not necessarily represent the lowest interest rate
charged by BLUSA to customers.)  Interest will accrue at
the Interest Rate from the date of creation of each
Overdraft until repayment in full, unless a different rate
of interest has been or is agreed upon between BLUSA and
you in writing.  Interest will be computed on the basis of
a 360-day year (which results in the payment of more
interest than if interest were computed on the basis of the
actual number of days in the year).  The Interest Rate will
not exceed the maximum rate permitted by law.  If the
Deposit Account is a Joint Account, each owner is
responsible for repaying the full amount of any and all
Overdrafts irrespective of which owner created the
Overdrafts.

**4.3  Maximum Margin.**

The "Maximum Margin" to be added to the Reference Rate in
determining the Interest Rate is the Maximum Margin set
forth, from time to time, in BLUSA's Credit Confirmation.

36

BLUSA may, upon written notice to you, increase the amount
of the Maximum Margin to be added to the Reference Rate.
The date of any increase will be considered to be the date
on which the notice of increase is mailed to you by BLUSA.
If you do not want to accept any increase in the Maximum
Margin, you must repay all Overdrafts and all related
interest within thirty (30) days after the date of BLUSA's
notice. If all Overdrafts and all related interest have
not been paid within that 30-day period, BLUSA will
consider that you have agreed to the new Maximum Margin.
Interest will accrue at the Interest Rate with the new
Maximum Margin (effective as of 30 days after the date of
BLUSA's notice) on all outstanding and new Overdrafts until
repayment of all Overdrafts in full. BLUSA may, in its
sole discretion, at any time and from time to time, without
notice to or consent by you, apply an Interest Rate that is
less than the sum of the Maximum Margin and the Reference
Rate then in effect.

**4.4 New Overdrafts.**

If accrued interest on any Overdraft remains unpaid on the
first business day of any calendar month, BLUSA on that
date is authorized (but not required) to create a new
Overdraft in payment of the accrued and unpaid interest, in
an amount equal to the aggregate amount of interest then
accrued and unpaid on all Overdrafts, and such new
Overdraft will constitute an Overdraft subject to these
provisions and will then bear interest at the Interest
Rate.

**4.5 Debiting Accounts.**

BLUSA is authorized (but not required) to debit any of your
Accounts, without notice to or consent by you, on any date
on which any Overdraft or any other Liabilities or related
interest is due or is demanded by BLUSA, in an amount equal
to the unpaid balance of the Overdraft, related interest,
and/or other Liabilities. BLUSA may apply any balance in
any of your account(s) to the amount of any unpaid
Overdraft, related interest and/or other Liabilities, upon
demand and without notice to you, before it honors any
checks or other drafts drawn on your account(s), or any
other requests by you for the payment of funds from your
account(s).

**4.6 Promissory Notes.**

You will, at BLUSA's request, at any time, sign and deliver
to BLUSA one or more promissory notes payable to BLUSA as
evidence of any then existing Overdraft. The note or notes

37

will be in a form and on terms that are satisfactory to
BLUSA, and will be payable on demand, bearing interest at
the Interest Rate. Even if a note is never signed, you
will still be obligated to repay in full, on demand, the
amount of any Overdraft, with interest at the Interest
Rate, and BLUSA's records will be conclusive evidence of
all amounts you owe at any time.

38

**SECTION 5--CREDIT *NOT* RELATED TO A TRANSACTION ACCOUNT.**
(*this section is an optional account provision*)

**5.1  Promise to Pay.**

You promise to pay to the order of BLUSA at its offices at
564 Fifth Avenue, New York, New York 10036, in immediately
available funds, the principal sum ("the Maximum Principal
Amount") that is indicated on the Confirmation of
Nontransactional Credit (the "Credit Confirmation") or, if
less, the aggregate unpaid principal sum of all credit
extended by BLUSA to you from time to time.  The principal
sum of each such credit extension shall be payable on
demand.

**5.2  Borrowings and Reborrowings.**

Within the limits of the Maximum Principal Amount, you may
borrow, prepay, and reborrow in the manner provided in this
section.

**5.3  Interest.**

Each credit extension shall bear interest (from the date
thereof) at a rate per annum which shall be equal to margin
per annum above the Libor Rate (Reserve Adjusted)[1*] for the

---

[1*]  "Libor Rate", relative to any Interest Period (as defined) for credit
extensions pursuant to this section and which bear interest at the "Libor Rate
(Reserve Adjusted)", (i) the rate quoted by the British Bankers Association in
London as its "Libor" rate for U.S. dollar deposits at or about 11 a.m. (London
time) on the second Business Day before the commencement of such Interest Period;
provided, however, that if BLUSA adopts generally in its business a different rate
quoting system or service for obtaining the rate of interest commonly known as
"Libor" for U.S. dollar deposits, then upon giving prompt notice such alternative
rate quoting system or service shall be used for determining "Libor" in lieu of
the rate quoted by the British Bankers Association; and (ii) if the rate may not
be determined by BLUSA as provided in clause (i) for any reason, as determined by
BLUSA in its reasonable judgment, then the rate equal to the rate of interest
determined by BLUSA to be the arithmetic mean (rounded upward to the next 1/16th
of 1%) of the rate of interest per annum at which U.S. dollar deposits in the
approximate amount of the amount of credit extensions pursuant to this section and
having a maturity comparable to such Interest Period would be offered to BLUSA in
the London Interbank market at its request at or about 11 a.m. (London time) on
the second Business Day before the commencement of such Interest Period.

"Libor Reserve Percentage" means, relative to any Interest Period for credit
extensions pursuant to this section, the percentage (expressed as a
decimal, rounded upward to the next 1/100th of 1%) in effect on such day
(whether or not applicable to BLUSA) under regulations issued from time to
time by the Board of Governors of the Federal Reserve System for
determining the maximum reserve requirement (including any emergency,
supplemental, or other marginal reserve requirement) with respect to
Eurocurrency funding (currently referred to as "Eurocurrency Liabilities"
in Regulation D).

"Libor Rate (Reserve Adjusted)" means, relative to credit extensions pursuant to
this section for any Interest Period, the rate of interest per annum
(rounded upwards to the next 1/16th of 1%) determined by BLUSA as follows:

---

39

monthly term elected by you and calculated by BLUSA, in the
manner provided in this section, but in no event in excess
of the maximum rate permitted by applicable law; provided,
that in the event BLUSA shall have determined that by
reason of circumstances affecting the Libor Rate (Reserve
Adjusted) adequate and reasonable means do not exist for
ascertaining the Libor Rate (Reserve Adjusted) for any
Interest Period, the applicable rate of interest during
such Interest Period shall be equal to the rate of interest
designated by BLUSA, and in effect from time to time, as
its "Reference Rate" plus or minus the margin per annum
that is indicated on the Credit Confirmation adjusted when
the Reference Rate changes, but in no event in excess of
the maximum rate permitted by law (you acknowledge that the
Reference Rate may not necessarily represent the lowest
rate of interest charged by BLUSA to customers); further
provided that if, at the end of any Interest Period, you
fail to timely notify BLUSA of your election of the choice
of interest rate for or length of the next Interest Period,
then the interest rate in effect thereafter shall be at the
Libor Rate (Reserve Adjusted) plus the margin per annum for
an Interest Period the length of which shall be the same
length as the immediately preceding Interest Period.
Interest hereunder shall be payable on the last day of each
Interest Period and upon demand if demand is made prior to
the end of an Interest Period.

For purposes of this section, "Interest Period" shall mean
the number of months as elected by you by written or
facsimile notice to BLUSA given not later than 12 noon
three Business Days prior to the commencement of an
Interest Period.  The initial Interest Period shall begin
on the day of the initial draw down, and each subsequent
Interest Period shall begin on the last day of the
immediately preceding Interest Period.  If an Interest
Period would otherwise end on a day that is not a Business
Day, such Interest Period shall end on the next succeeding
Business Day; provided, however, that, if any Interest
Period would otherwise end on a day that is not a Business
Day but is a day of the month after which no further
Business Day occurs in such month, such Interest Period
shall end on the next preceding Business Day and further
provided that if any Interest Period commences on the last
Business Day in a calendar month or if there is no
corresponding day in the calendar month in which it is to
end, then it shall end on the last Business Day in a
calendar month.  BLUSA shall give notice to you of the
interest rate determined for each Interest Period, and such
notice shall be conclusive and binding upon you for all
purposes absent manifest error.  You shall pay to BLUSA to

| Libor Rate (Reserve Adjusted) | = | Libor Rate |
| --- | --- | --- |
| | | 1.00 - Libor Reserve Percentage |

40

compensate it for any loss, cost or expense that it
determines is attributable to any prepayment of a credit
extended made by BLUSA to you using the Libor Rate (Reserve
Adjusted).  Such compensation shall be an amount equal to
the excess (if any) of (i) the amount of interest that
otherwise would have accrued on the principal amount so
prepaid for the period from the date of such prepayment to
the last day of the then current Interest Period for such
credit extension at the applicable rate of interest for
such credit extension provided for herein less (ii) the
amount of interest that otherwise would have accrued on
such principal amount from the date of such prepayment
until the end of the then current Interest Period at a rate
per annum equal to the interest component of the amount
BLUSA would have bid in The London Interbank market for
dollar deposits of leading banks in amounts comparable to
such principal amount and with maturities comparable to
such period (as reasonably determined by BLUSA).
Notwithstanding section 1, for purposes of this section
"Business Day" shall mean any day of the year on which
BLUSA is open for business (as required or permitted by law
or otherwise) and on which dealings in U.S. dollar deposits
are carried on in London, England.

If any law, treaty, rule, regulation or determination of a
court or governmental authority or any change therein or in
the interpretation or application thereof (each, a "Change
in Law") shall make it unlawful for BLUSA to make Libor
Rate (Reserve Adjusted)-based credit extensions, or to
maintain interest rates based on Libor, then in the former
event, any obligation of BLUSA contained herein or in any
agreement of BLUSA to make available such unlawful Libor
Rate (Reserve Adjusted)-based credit extensions shall
immediately be canceled, and in the latter event, any such
unlawful Libor Rate (Reserve Adjusted)-based credit
extensions then outstanding shall be converted, at BLUSA's
option, so that interest on the outstanding principal
balance subject hereto is determined in relation to the
Reference Rate as hereinabove provided; provided however,
that if any such Change in Law shall permit any Libor Rate
(Reserved Adjusted)-based credit extensions to remain in
effect until the expiration of the Interest Period
applicable thereto, then such permitted Libor Rate (Reserve
Adjusted)-based credit extensions shall continue in effect
until the expiration of such Interest Period.  Upon the
occurrence of any of the foregoing events, you shall pay to
BLUSA immediately upon demand such amounts as may be
necessary to compensate BLUSA for any fines, fees, charges,
penalties or other costs incurred or payable by BLUSA as a
result thereof and which are attributable to any Libor Rate
(Reserve Adjusted) options made available to you hereunder,
and any reasonable allocation made by BLUSA among its
operations shall be conclusive and binding upon you.

41

**5.4  Additional Amounts Owing to BLUSA.**

If any Change in Law or compliance by BLUSA with any
request or directive (whether or not having the force of
law) from any central bank or other governmental authority
shall:

(A)  subject BLUSA to any tax, duty or other charge
     with respect to any Libor Rate (Reserve Adjusted)
     options, or change the basis of taxation of
     payments to BLUSA of principal, interest, fees or
     any other amount payable hereunder (except for
     changes in the rate of tax on the overall net
     income of BLUSA); or

(B)  impose, modify or hold applicable any reserve,
     special deposit, compulsory loan or similar
     requirement against assets held by, deposits or
     other liabilities in or for the account of,
     advances or loans by, or any other acquisition of
     funds by any office of BLUSA; or

(C)  impose on BLUSA any other condition;

and the result of any of the foregoing is to increase the
cost to BLUSA of making, renewing, or maintaining any Libor
Rate (Reserve Adjusted)-based credit extended hereunder
and/or to reduce any amount receivable by BLUSA in
connection therewith, then in any such case, you shall pay
to BLUSA immediately upon demand such amounts as may be
necessary to compensate BLUSA for any additional costs
incurred by BLUSA and/or reductions in amounts received by
BLUSA which are attributable to such Libor Rate (Reserve
Adjusted)-based credit.  In determining which costs
incurred by BLUSA and/or reductions in amounts received by
BLUSA are attributable to any Libor Rate (Reserve
Adjusted)-based credit made to you hereunder, any
reasonable allocation made by BLUSA among its operations
shall be conclusive and binding upon you.

**5.4  Entries on Schedule.**

BLUSA is hereby authorized to enter on a schedule in the
form of the annex to this section the amount of each credit
extension and each payment of principal thereon, without
any further authorization on the part of you or any
guarantor hereof, but BLUSA's failure to make such entry
shall not limit or otherwise affect the obligations of you
or any guarantor hereof.  In the event that any other
Liabilities (as hereinafter defined) of you to BLUSA are
due at any time that BLUSA receives a payment from you on

42

account of this section or such other Liabilities, BLUSA
may apply the payment to amounts due under this section or
such other Liabilities in such manner as BLUSA, in its
discretion, elects, regardless of your instructions to the
contrary.

You acknowledge and agree that use of this section to
reflect credit extended to you is for your convenience, and
there is no obligation on the part of BLUSA to extend
credit to you.

### 5.8  360-Day Year.

Interest shall be computed on the basis of a 360-day year.

### 5.9  Authorization to Debit Account.

You authorize (but shall not require) BLUSA to debit your
Account on the date on which principal or interest on any
of the Liabilities is due, in an amount equal to any unpaid
portion of such payment.  If the time for payment of
principal of or interest on any of the Liabilities or any
other money payable hereunder or with respect to any of the
Liabilities becomes due on a day on which BLUSA's offices
are closed (as required or permitted by law or otherwise),
such payment shall be made on the next succeeding Business
Day, and such extension shall be included in computing
interest in connection with such payment.  All payments by
you on account of principal or interest shall be in
immediately available funds.

### 5.10  Interest After Demand for Payment.

After demand for payment, any unpaid balance hereof shall
bear interest from the date it becomes due until paid at a
rate per annum 3% above the rate provided for in this
section at the time principal becomes due or, if such rate
shall not be lawful with respect to the you, then at the
highest lawful rate.  The liability of any party to
commercial paper held by BLUSA hereof, other than you,
shall remain unaffected hereby and such parties shall
remain liable thereon in accordance with the original tenor
thereof. If an attorney is retained to enforce or collect
the amount due under this section or any other obligations
by reason of non-payment when due or made due hereunder, a
reasonable attorneys' fee shall be paid in addition, which
fees shall be computed as follows: 15% of the principal,
interest and all other sums due and owing to BLUSA or the
reasonable value of the attorneys' services, whichever is
greater.

43

### 5.11  Irregular Payments.

BLUSA may accept late payments, or partial payments, even
though marked "payment in full" or containing words of
similar import or other conditions, without waiving any of
its rights.

### 5.12  Cumulative Rights and Remedies.

The rights and remedies of BLUSA provided for in this
section (including the right to accelerate your Liabilities
and to realize on any security for any such Liabilities)
are cumulative with the rights and remedies of BLUSA
available under any other section of the Arrangements or
any other agreement or instrument or under applicable law.

You, if more than one, shall be jointly and severally
liable.

44

**SECTION 6--HOLD MAIL**
*(this section is an optional account provision)*

**6.1 Introduction.**

By checking the appropriate box in the Application, you
agree to the provisions of this Section 6.

**6.2 Holding Account Records.**

You request that all notices, statements, supporting items,
unpaid returned items, advices, and other correspondence
relating to your Account; any asset acquired, held, or
disposed of by or through BLUSA for you (including where
BLUSA acts as introducing broker); any credit facility
opened or maintained by or through BLUSA for you (including
credit card accounts arranged though BLUSA), or other
services rendered for you by BLUSA including any account
statements, legal notices, and other notices that may
affect the terms of (and/or your liabilities under) any of
your Account, assets, credit facilities, or other services
(collectively, the "Account Records"), will be kept in the
possession of BLUSA, or in the possession of Bank Leumi le-
Israel B.M.'s New York Agency acting as BLUSA's agent, on
your behalf until (a) the receipt of satisfactory written
instructions from you to for-ward them to an address
selected by you, or (b) the Account Records are picked-up
by you or another individual appointed by you. Until BLUSA
receives other written instructions from you and has a
reasonable opportunity to act thereon, you or the
individual(s) named in the Agreement as your authorized
signatory(ies) or attorney(s)-in-fact are the only
individuals authorized to pick up the Account Records. If
more than one such individual is named, BLUSA may release
the Account Records to either or any of them.

**6.3 Effect of Holding Account Records.**

Any Account Records held by BLUSA pursuant to this section
will be considered to have been delivered to you as of the
date shown on those Account Records. Any period provided
by law for you to assert any claim or commence any lawsuit
against BLUSA arising out of, or relating to the Account or
services provided to you (including, discrepancies,
forgeries, or alterations that would have been revealed by,
or become readily apparent from, an examination of any
Account Records) will be determined from the date shown on
those Account Records.

45

**6.4 Risks.**

You understand that from time to time

(1) government authorities may impose requirements,

(2) issuers of financial assets may make redemption,
exchange, or other offers, and

(3) potential acquirors of financial assets that BLUSA
holds for you may make acquisition offers

may require action by you within a brief time period. Any
notice of these requirements or offers received and held by
BLUSA pursuant to these provisions will be considered to
have been made available to you from the date shown on the
notice. Examples of the kinds of notices relating to
government requirements that would call for a response by
you include notices of the need to complete a tax
certification as to foreign status to avoid tax
withholding, and notices of the need to communicate with
BLUSA to avoid having funds in an inactive account being
turned over to a government authority.

**6.5 Liability of BLUSA.**

You are asking BLUSA to provide this service solely for
your convenience. BLUSA will not be liable for the
destruction, loss, or disappearance of any Account Records
if reasonable care is taken to avoid this from occurring.
You will have the burden of proving BLUSA did not take
reasonable care of any Account Records.

**6.6 Fees.**

BLUSA may charge an annual fee for each Account for which
this service is provided, by debiting funds from any of
your Accounts. BLUSA may change the amount of this annual
fee without your consent or giving prior notice to you.

**6.7 Alternate Medium; Retention Period.**

BLUSA may make copies of any Account Records on microfiche,
microfilm, or other image recording system, and may destroy
the original Account Records upon making a copy. We may
destroy any original Account Records or copies (whether on
microfiche, microfilm, or other image recording system)
held by us for more than two years or, if your Account is
closed, for more than two months after it is closed. In
order for Account Records to be sent to you upon your
Account being closed, you must make a specific request.

46

**SECTION 7--POWER OF ATTORNEY.**
*(this section is an optional account provision)*

**7.1  Introduction.**

By checking the appropriate box in the Application, you
agree to the provisions of this section.

**7.2  Appointment; Authority.**

The individual(s) named and signing as your attorney(s)-in-
fact (either in the Application or on a form used by us for
that purpose) have been appointed by you as your
attorney(s)-in-fact to act on your behalf, with full power
and authority, in their name and/or in your name, from time
to time to: (a) open and maintain any one or more
account(s) in your name, individually or jointly, with
BLUSA in accordance with the terms of this Agreement,
and/or purchase, sell, transfer or dispose of (for present
or future delivery) foreign currency, moneys, credits,
exchange (on deposit or otherwise), securities,
participations in and/or assignments of extensions of
credit, and/or other investments, and to do all other acts
necessary or advisable in connection with the account(s)
and/or any of your other property that you could as the
owner of the account(s) and/or other property, including
(but not limited to) making deposits and withdrawals,
signing and endorsing checks, and signing any agreements or
documents requested by BLUSA in connection with the
account(s) and/or other property, including (but not
limited to) promissory notes, security agreements,
hypothecation agreements, contracts, instruments,
guaranties, participation agreements and/or indemnity
agreements; (b) borrow money, obtain credit and/or grant or
renew any other credit facilities in United States dollars
or any foreign currency from, and incur and renew
indebtedness to, BLUSA either through loans, advances,
renewals, extensions or other forms of credit with or
without security, and to guarantee, hypothecate or
otherwise become contingently liable with respect to any
indebtedness, obligations and liabilities of any other
person or Entity, and to sign any documents or agreements
in connection with any borrowing or extensions of credit,
including, but not limited to, promissory notes, security
agreements, hypothecation agreements, guarantees and other
evidence of indebtedness; (c) deliver to BLUSA for
safekeeping or otherwise and to pledge, hypothecate,
mortgage, assign, endorse and transfer to BLUSA as security
for all or any present or future liabilities, direct or
contingent, of your or others to BLUSA, any of your
property, real or personal, and to execute agreements,
instruments or documents that BLUSA may require to evidence

47

a security interest granted to BLUSA by you; (d) delegate
all or any of these powers to one or more sub-attorney(s)
and to revoke that delegation and, if any delegation to a
sub-attorney is made, the attorney(s)-in-fact named by you
will still retain full authority to act under these
provisions without the sub-attorney(s); and (e) do any or
all other acts that your attorney(s)-in-fact (or any of
them) may consider appropriate in furtherance of the powers
granted in these provisions, or to otherwise carry out the
intent of these provisions.

**7.3  Discretion; Ratification.**

You permit your attorney(s)-in-fact to act according to
this section on the terms, in the manner, and at the
time(s) that your attorney(s)-in-fact may decide, all as
fully as you might do if you were personally present and
acting.  You ratify and confirm all that any attorney(s)-
in-fact or sub-attorney(s) may do or cause to be done
pursuant to the powers you have given to your attorney(s)-
in-fact under these provisions.

**7.4  Reliance.**

You permit BLUSA to rely upon these provisions unless and
until BLUSA actually receives written notice signed by you
that any of these provisions have been terminated or
modified, or BLUSA actually receives written notice of your
death.  Even if you became disabled or incompetent, or you
modify or terminate the power or authority of any
attorney(s)in-fact or sub-attorney(s), you and your heirs,
executors, administrators, representatives, successors and
assigns will be and remain bound by and liable for all
actions taken by any attorney(s)-in-fact or sub-
attorney(s), unless and until BLUSA actually receives
written notice signed by you informing BLUSA otherwise, or
BLUSA actually receives written notice of your death.  You,
for yourself and on behalf of your heirs, executors,
administrators, representatives, successors and assigns,
indemnify and hold BLUSA, its successors and assigns,
harmless from and against any and all lawsuits,
proceedings, claims, demands, liabilities, losses, damages,
costs and expenses (including, but not limited to,
attorneys' fees and disbursements) sustained or incurred by
BLUSA in connection with or arising from any reliance by
BLUSA on these provisions or on any action of your
attorney(s)-in-fact or any sub-attorney(s).

48

## 7.5  Signatures.

The form of signature to be used by (each of) your attorney(s)-in-fact, and whether they may act singly or only jointly, is set forth either in the Application or on a form used by us for that purpose.  If any attorney(s)-in-fact appoint(s) a sub-attorney, the attorney(s)-in-fact will inform BLUSA of that appointment in a signed writing and, at the same time, provide BLUSA with an original specimen of the signature of the sub-attorney.

## 7.6  Written Confirmation.

BLUSA may at any time or times, at its option and without liability, require written confirmation by you of any documents signed by, or any other acts performed by, your attorney(s)-in-fact or any sub-attorney(s), before relying or acting or further relying or taking action on any such document or action.  BLUSA will have no duty to require this confirmation.  BLUSA may also require this confirmation under any circumstance(s) where BLUSA, in its sole discretion, considers this confirmation to be desirable.

## 7.7  Nonexclusivity.

These provisions and the authority given under these provisions will not affect or be affected by any other power or authority given before or after the date of this Agreement to the same attorney(s)-in-fact (or any of them), unless BLUSA is given an original or certified copy of that other power or authority.

49

## SECTION 8--SECURITY INTEREST IN PROPERTY AND BLUSA'S RIGHTS THEREIN

## 8.1  Security Interest.

All Property (as defined) is subject to a security interest in favor of BLUSA as security for the Liabilities. Property that is subject to a security interest in favor of BLUSA is referred to as "Collateral."  "Property" means (1) the funds in your Deposit Accounts at BLUSA and Assets in your Investment Accounts at BLUSA and all other obligations of BLUSA to you, whether now existing or hereafter arising including all interest or earnings thereon now due or hereafter becoming due; (2) all other personal property of you (including without limitation all money, accounts, general intangibles, goods, instruments, documents and chattel paper) which, or evidence of which, are now or at any time in the future shall come into the possession or under the control of or be in transit to BLUSA or any of its nominees or agents for any purpose, whether or not accepted for the purposes for which it was delivered; and (3) all investment property and financial assets (as those terms are defined in the UCC) held in your name, or on your behalf, at

(1) BLUSA,

(2) Leumi International Investments Inc. ("LISI") under the account number stated in the Application, or

(3) the broker stated in the Application, under the account number stated therein,

together with all cash, general intangibles, instruments, and other property or proceeds from time to time received, receivable, or otherwise distributed in respect of, or in exchange for, any of the investment property or financial assets.

If you, as registered holder of any of the Collateral, receive any stock certificate, option, warrant, or right, whether as an addition to, or in substitution or exchange for, any Collateral, or otherwise, you agree to accept the same as BLUSA's agent and hold the same in trust for BLUSA, and to forthwith deliver the same to BLUSA in the exact form received, with your endorsement thereof if requested by BLUSA, to be held by BLUSA as part of the Collateral.

If any Collateral is subject to perfection by control with a financial intermediary, financial institution, or otherwise, you shall take all necessary steps as BLUSA may request to achieve and maintain control of such Collateral in BLUSA's favor.

50

Upon receipt of notice of termination of a control agreement entered into between you, BLUSA, and a financial intermediary or financial institution, or notice of the closing of an account which is the subject of such control agreement, to cause the possessory Collateral which is the subject of such control agreement to be moved to another financial intermediary or financial institution subject to a control agreement, satisfactory in all respects to BLUSA, executed by the parties thereto and delivered to BLUSA no later than 10 days before the scheduled termination date of the control agreement.

For Property that is jointly owned, each joint owner who signs the Application consents to the granting of the security interest in the Property.

**8.2  BLUSA's Rights in Property.**

8.2.1  BLUSA may apply its advancing formulas in effect from time to time to the Collateral in determining the creation and amount of any credit extended to you, and the maximum amount of all credit extensions permitted to be outstanding at any time.  You may request a copy of the advancing formulas but BLUSA does not accept standing requests for such copies.

8.2.2  So long as any Overdraft(s) or any other Liabilities or any related interest remain unpaid, you will not have the right to make any withdrawals from your Account without BLUSA's prior written consent and that any interest or earnings on your Account shall be accumulated and retained therein.  By pledging your Account to BLUSA, BLUSA will have a priority claim to the Account over any other person or Entity.

8.2.3  BLUSA may, in its sole discretion, at any time: (a) transfer to or register in the name of BLUSA or any of its nominees, any of the Collateral and, whether or not it is transferred or registered, receive the income and dividends on any Collateral, including (without limitation) stock dividends and rights to subscribe, and to hold this as part of the Collateral and/or apply it as set forth in these provisions; (b) exchange any of the Collateral for other property upon any reorganization, recapitalization or other readjustment made by you and deposit any of the Collateral with any creditors' committee or depository upon such terms as BLUSA may determine; (c) in any bankruptcy or similar proceeding, file a proof of claim for the full amount of the Collateral and vote that claim for or against any arrangement of your debts or with respect to any other

51

matter; (d) make one or more withdrawals from the account(s) as may be required to repay all or any part of any Overdraft; (e) apply any amounts withdrawn to pay any Overdraft(s), interest and/or any other Liabilities, irrespective of (1) the genuineness, invalidity or enforceability of (A) any documents relating to any Overdraft or any other Liabilities, or (B) your liabilities under this Agreement or these provisions, and (2) the existence, validity or value of any Collateral; (f) in BLUSA's name or in your name or the name of any other appropriate person, demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for, or make any compromise or settlement which BLUSA may consider desirable with respect to, any of the Collateral; (g) extend the time of payment, arrange for payment in installments, or otherwise modify the terms of any Overdraft or any other Liabilities, or release any of the Collateral; (h) contest, pay and/or discharge all liens, encumbrances, taxes or assessments on, or claims, actions or demands against, any of the Collateral, and take all actions and proceedings in BLUSA's name or in your name or the name of any other appropriate person in order to remove or contest such liens, encumbrances, taxes, assessments, claims, actions or demands, or refrain from doing any of the these actions, all without affecting your liabilities on any Overdraft or any other Liabilities and the Collateral, and without notice or liability to you and without your consent, except to account for property actually received by BLUSA.

8.2.4  You hereby irrevocably appoint BLUSA as your attorney-in-fact with authority to:  (a) receive, open and dispose of all mail addressed to you; (b) endorse your name on any instruments that may come into BLUSA's possession; (c) sign your name on any assignment or other instruments of conveyance or transfer any of the Collateral; and (d) take all other actions as BLUSA may consider appropriate to carry out and enforce these provisions and to exercise BLUSA's rights under these provisions and this Agreement.  BLUSA will not be obligated to exercise any authority or right granted to it under these provisions and will not be liable for any action taken or omitted on the manner of taking any action, except for its willful misconduct, and in no event will BLUSA be liable for consequential damages. In addition, with respect to book-entry U.S. Treasury Bills, you authorize BLUSA to serve as your bailee and agent with respect to the book-entry U.S. Treasury Bills and other book-entry securities, and to take any action and to execute and deliver any documents on your behalf as BLUSA considers necessary or desirable in order to perfect BLUSA's security interest in those book-entry securities. You hereby give notice to BLUSA (in BLUSA's capacity as your bailee and agent) of BLUSA's security interest in any

52

book-entry securities held or maintained by BLUSA as your
bailee and agent.

8.2.5  You represent and warrant that: (a) you have not
already assigned or pledged any of the Collateral or any of
the proceeds of the Collateral; (b) you are the sole owner
of the Collateral and any instruments evidencing the
Collateral; and (c) no other person or Entity has any claim
or right to the Collateral.

8.2.6  You will pay to BLUSA all costs and expenses
incurred and sums paid by BLUSA (including, without
limitation, attorneys' fees and disbursements, insurance
premiums and sales commissions) in connection with the
custody, care, collection, repair, storage or preparation
for or any actual or attempted disposition of any of the
Collateral, the collection of any proceeds of insurance
with respect to the Collateral, the enforcement of BLUSA's
rights and remedies under these provisions, or otherwise in
connection with this Agreement or these provisions.

8.2.7  Upon demand from BLUSA at any time that any of the
Overdrafts or any other Liabilities are outstanding and
unpaid, you will promptly assign and transfer to BLUSA and
grant to BLUSA a security interest in additional collateral
of a value and character satisfactory to BLUSA or make such
payment of all or a part of the Overdrafts as BLUSA may
require.

8.2.8  Upon demand by BLUSA for payment of an Overdraft or
any of the other Liabilities, or the occurrence of any
"default" or "event of default" under or with respect to
any of the other Liabilities, then all of the Overdrafts,
all related interest and/or all other Liabilities will, at
BLUSA's sole option, be immediately due and payable, even
if any promissory note or other instrument or document
states otherwise, and BLUSA may: (a) vote any shares of
stock or other securities and exercise all or any powers
with respect to any stock or securities as if it were an
absolute owner of that Collateral; and/or (b) sell any of
the Collateral or cause the same to be sold in New York
County, New York, U.S.A., or elsewhere, in one or more
sales or parcels at such price and on such terms as BLUSA
may deem advisable, for cash or on credit, for immediate or
future delivery, without assumption of any credit risk, at
any public or private sale(s) or other disposition(s),
without demand of performance (which demand is expressly
waived), on at least five (5) days' notice to you (if any
notice is required by law) of any public sale or the time
after which a private sale or other disposition may be made

53

(which notice you acknowledge is reasonable) and, in
connection with any such sale, may grant options and impose
reasonable conditions on such sale, and the purchasers of
any of the Collateral so sold will thereafter hold the
Collateral absolutely free from any claim or right of any
kind including any claim you may have in any equity in the
Collateral (any such equity being hereby expressly waived
and released), and BLUSA or any of its nominees or agents
may buy at any public sale and if the Collateral is of the
type sold in a recognized market, or is of the type which
is the subject of widely distributed standard price
quotations, at a private sale.  In addition to, and
notwithstanding any other rights granted by law or these
provisions (or any limitations contained herein on any such
rights), BLUSA will have the right to collect from you any
deficiency in any of the Liabilities remaining after any
disposition of the Collateral (less all costs, expenses,
fees and commissions incurred by BLUSA in making such
disposition), and will have the rights and remedies with
respect to the Collateral of a secured party under the UCC.
You agree that any action taken by BLUSA in accordance with
these provisions will be considered to be commercially
reasonable.

8.2.9  Notwithstanding anything to the contrary contained
in these provisions, if in the sole judgment of BLUSA, any
of the Collateral consisting of securities or foreign
currency (or any other property denominated in a foreign
currency) suffers a substantial deterioration in value,
BLUSA may, at any time, liquidate (or execute a "forward
transaction" on) that Collateral, all without notice to or
consent by you, even if BLUSA does not make demand for
repayment of any Overdraft or interest, and even if none of
the other Liabilities are then due and payable.  BLUSA may,
in its sole and absolute discretion, apply the proceeds of
this liquidated Collateral or forward transaction to any
one or more of the Liabilities, in any order and amount(s)
as BLUSA may choose, and/or retain the proceeds thereof as
additional Collateral under and subject to these
provisions.

8.2.10  Even though BLUSA may be in possession of the
Collateral, you will be primarily responsible for the
payment in full of the Overdrafts, interest and other
Liabilities.  You assume all liability and responsibility
for the Collateral, and your obligation to pay any
Overdraft(s), interest and other Liabilities will in no way
be affected or diminished because any Collateral may be
lost, destroyed, stolen, damaged, or for any other reason
whatsoever unavailable to you or that the value of the
Collateral shall decrease.

54

8.2.11  BLUSA may, at any time, at its option, apply all or any cash received from the Collateral to the payment, in whole or in part, of principal and/or interest on any of the Overdrafts and/or other Liabilities, whether or not then due, applying such cash as it shall elect, making rebate of interest or discount to the extent required by law and so as not to make the rate of interest charged unlawful in connection with such application.

8.2.12  BLUSA may assign and/or transfer to any assignee or transferee of the Overdrafts and/or other Liabilities, any or all of the Collateral and BLUSA's rights with respect to the Collateral, and after such assignment or transfer BLUSA will have no responsibility with respect to the Collateral which is assigned and/or transferred.  BLUSA's assignee or transferee will have all the powers and rights of BLUSA with respect to the Collateral assigned or transferred, but BLUSA shall retain all rights and powers with respect to any of the Collateral not so assigned or transferred.  You agree not to assert against any assignee or transferee of any of the Overdrafts or any other Liabilities any claims, counterclaims, offsets or defenses that you may have against BLUSA.

8.2.13  If any of the Collateral is applied in payment of any of the Overdrafts or any other Liabilities, you will not have the right of subrogation to BLUSA's rights in any other Collateral or any right of contribution from BLUSA by reason of that application.

8.2.14  You agree that all payments to be made to BLUSA on account of any Overdrafts or other loans, advances, extensions of credit and/or other Liabilities, whether for principal, interest or otherwise, will be made without defense, set-off or counterclaim, free and clear of, and without deduction for or on account of, any present or future "Foreign Taxes" (as defined below).  You further agree that, if any Foreign Taxes are required to be withheld from any amounts payable to BLUSA, or if BLUSA itself is required to pay any Foreign Taxes in connection with such loans, advances or extension of credit or payments made on any of the loans, BLUSA may, in its sole and absolute discretion, (i) increase the amounts payable by you to BLUSA to the extent necessary to yield to BLUSA (after payment of all Foreign Taxes) the full amounts which BLUSA would have received had the payments not been subject to Foreign Taxes, (ii) debit any account(s) which may be maintained by you at any office of BLUSA, in an amount

55

(iii) sell any of the Collateral in accordance with applicable law or this paragraph 7.2.

8.2.15  "Foreign Taxes" means any income, stamp or other taxes, levies, imposts, duties, charges, fees, deductions, withholdings or restrictions or conditions of any nature whatsoever now or hereafter imposed, levied, collected, withheld or assessed by any country or government (or by a political subdivision or taxing authority thereof) other than the United States of America or any political subdivision or taxing authority thereof.

8.2.16  Whenever any Foreign Tax is paid by you, as promptly as possible thereafter, you will send to BLUSA an official receipt showing payment of that tax, together with such additional documentary evidence as may be required from time to time by BLUSA.

8.2.17  You shall deliver to BLUSA all certificates, confirmations, receipts, and instruments relating to the Collateral.  You shall execute and deliver such other documents and take such other actions as BLUSA may from time to time reasonably request in connection with, and in order to carry out the terms of this section, including the placing of legends or notices on any instruments or other documents evidencing or relating to the Collateral.

8.2.18  No failure on the part of BLUSA to exercise, and no delay in exercising, any right under these provisions will operate as a waiver of that right; nor shall any single or partial exercise by BLUSA of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies provided in these provisions are cumulative and not exclusive of any remedies provided by law.

SECTION 9--CORPORATE AUTHORITY PROVISIONS

If you are a corporation or an unincorporated association,
by your execution of the Application you (also referred to
below as the "Company") hereby certify to BLUSA that the
following resolutions: (a) were duly adopted and approved
by your board of directors, members, trustees and/or other
governing body on the date specified in the Application;
(b) are in conformity with your certificate of
incorporation, articles of incorporation, charter, bylaws
and/or other governing document(s) containing the powers,
authorities, rules and regulations that govern you, none of
which requires or provides for any vote or consent of your
members, shareholders or other equity owners or voting
members to authorize the adoption of any of these
resolutions; and (c) are now in full force and effect:

"RESOLVED, that Bank BLUSA (the "BLUSA") is designated as a
depository of this company, firm or association ("Company")
and the authorized signatory(ies) of the Company named in
the Application (the "Agreement") between the Company and
BLUSA, acting singly or jointly as provided in this
Agreement, are hereby authorized to open one or more bank
accounts from time to time with BLUSA in the name of the
Company, with such title or titles as such authorized
signatory(ies) may designate; and it was further

RESOLVED, that BLUSA is authorized to credit the account,
or any of the accounts, of the Company with funds, drafts,
checks or other property by whomever delivered to BLUSA for
deposit in the account(s) of the Company, endorsed with the
name of the Company by rubber stamp, mechanical, manual or
other signature (and any such endorsement by whomever
affixed shall be the endorsement of the Company), or
otherwise endorsed or unendorsed; and it was further

RESOLVED, that BLUSA may accept and/or pay and/or apply any
draft, check, instrument or order for the payment of money,
or any proceeds thereof, drawn on the Company's account or
accounts when signed as required by these resolutions and
this Agreement, without limit as to amount, without
inquiry, and without regard to the disposition of any such
item or the proceeds thereof, and BLUSA shall not be liable
in doing so even though such item may be payable to the
order of a person whose signature appears on the item or
any other officer(s), employee(s) or agent(s) of the
Company, or such item or any proceeds thereof may be used
or disposed of for the personal credit or account of any
such person(s), officer(s), employee(s) or agent(s) with
BLUSA or otherwise or in payment of the individual
obligation of any such person(s), officer(s), employee(s)
or agent(s) to BLUSA, even if the balance of the account(s)

shall be sufficient to pay the full amount of such item,
check, draft, instrument or order; and it is further

RESOLVED, that the Company may borrow and/or obtain credit
from BLUSA and grant security interests in any property as
collateral for any borrowing or extension of credit by or
to the Corporation or any other party on any terms, and the
authorized signatory(ies) of the Company, acting singly or
jointly as set forth in this Agreement, shall act on behalf
of the Company and shall execute and deliver any documents
requested in connection with any borrowing or extension of
credit by or to the Corporation or any other party,
including (but not limited to) promissory notes,
guarantees, security agreements, hypothecation agreements,
mortgages and subordination agreements; and it was further

RESOLVED, that the Company borrow and/or obtain credit in
United States and/or any foreign currency (including, but
not limited to letters of credit) and the authorized
signatory(ies) of the Company, acting singly or jointly as
set forth in this Agreement, are authorized to open deposit
accounts in foreign currencies and to purchase, sell,
transfer or dispose of, for present and future delivery,
foreign currency, moneys, credits, exchange (on deposit or
otherwise), securities and/or other investments, and to
execute and deliver any agreement or instruments relating
to any such transaction, including (but not limited to) the
Investment and Foreign Currency Provisions of this
Agreement; and it was further

RESOLVED, that the authorized signatory(ies) of the
Corporation, acting singly or jointly as set forth in this
Agreement, are authorized to direct BLUSA to purchase or
sell for the account of the Company's stocks, bonds and
other securities and investments; and it was further

RESOLVED, that the Company may purchase one or more
participations in, or take assignments of, extensions of
credit made by BLUSA to one or more borrowers, such
purchases or assignments being made without recourse to
BLUSA, except for actions taken by BLUSA in bad faith; and
it was further

RESOLVED, that BLUSA may act upon these resolutions and
rely upon the certification of those resolutions as set
forth in this Agreement until receipt by it of a
certification of the adoption of new authority resolutions
purporting to be signed by the Secretary of the Company.
Until BLUSA has actually received such certification of new
authority resolutions, BLUSA is indemnified and held
harmless by the Company from any and all lawsuits,
proceedings, demands, claims, liabilities, losses, damages,
costs and expenses (including, without limitation,
attorneys' fees and expenses) suffered or incurred by it in

58

continuing to act according to these resolutions, even
though these resolutions may have been changed.  In case
BLUSA is unsure of the validity of any such certification
of new authority resolutions, BLUSA may continue to act
upon the authority of these resolutions unless and until it
is fully indemnified to its satisfaction against all
lawsuits, proceedings, demands, claims, liabilities,
losses, damages, costs and expenses (including, without
limitation, attorneys' fees and expenses) that may arise if
BLUSA acts according to such new resolutions or amendments.
In addition, under such circumstances, BLUSA is authorized
to refuse to disburse any funds from any of the Company's
account(s), without any liability for items returned by
reason of such refusal, unless and until BLUSA (a) is fully
indemnified to its satisfaction, (b) receives joint
instructions from all of the persons claiming to be
authorized to sign on behalf of the Company, based upon the
existing and any such disputed certification, or (c) is
served with an order of a court of competent jurisdiction
directing BLUSA to act, or not to act, in accordance with
such disputed certification; and BLUSA shall also, at all
times, be authorized (but not required) to bring an
interpleader or similar action to determine the proper
disposition of the funds in the Company's account(s).  In
case of any such dispute or uncertainty, BLUSA shall be
entitled to be reimbursed for all costs and expenses
incurred (including, without limitation, attorneys' fees
and expenses, and the other costs and expenses of bringing
any legal action and court costs) and shall have the right
to deduct all such amounts from the balance of such
account(s); and it was further

RESOLVED, that the Company agrees to be bound by all the
rules, regulations, conditions, limitations and agreements
contained in this Agreement, any signature card, deposit
ticket, check book, passbook, statement of account,
instrument or other agreement from time to time in effect
(each, a "Document") as printed or written on one of
BLUSA's forms when received (or deemed received) by the
Company from BLUSA, or delivered to BLUSA by the Company,
with the same effect as if each and every term and
condition were set forth in full in these resolutions and
made a part hereof, except that in case of any
inconsistency between these resolutions and the terms of
any such Document, these resolutions shall control, unless
otherwise expressly stated in such Document; and it was
further

RESOLVED, that the authorities contained in these
resolutions shall supersede and expressly revoke any and
all prior certifications to BLUSA of resolutions regarding
the authority of individuals to sign on behalf of the
Company's account(s) with BLUSA.

59

**SECTION 10--PARTNERSHIP AUTHORITY PROVISIONS**

If you are a partnership, by your execution of the
Application, you agree to the following provisions and that
they are a part of this Agreement:

You (also referred to below as the "Firm") hereby certify
to BLUSA, as of the date specified in the Application,
that: (a) the Firm is composed of the general partners (and
limited partners, if any) named in the Additional Account
Information section of the Application; and (b) this
Agreement and the following provisions (i) were duly
adopted and approved by the Firm on the date specified in
the Application, (ii) are in conformity with the Firm's
partnership agreement and/or other governing document(s)
containing the powers, authorities, rules and regulations
that govern the Firm, and (iii) are now in full force and
effect:

    A.  BLUSA is designated as a depository of the Firm
and the authorized signatory(ies) of the Firm named in the
Application, acting singly or jointly as provided in this
Agreement, are hereby authorized to open one or more bank
accounts from time to time with BLUSA in the name of the
Firm, with such title or titles as such authorized
signatory(ies) may designate.

    B.  BLUSA is authorized to credit the account, or any
of the accounts, of the Firm with funds, drafts, checks or
other property by whomever delivered to BLUSA for deposit
in the account(s) of the Firm, endorsed with the name of
the Firm by rubber stamp, mechanical, manual or other
signature (and any such endorsement by whomever affixed
shall be the endorsement of the Firm), or otherwise
endorsed or unendorsed.

    C.  BLUSA may accept and/or pay and/or apply any
draft, check, instrument or order for the payment of money,
or any proceeds thereof, drawn on the Firm's account or
accounts when signed as required by these provisions and
this Agreement, without limit as to amount, without
inquiry, and without regard to the disposition of any such
item or the proceeds thereof, and BLUSA shall not be liable
in doing so even though such item may be payable to the
order of a person whose signature appears on the item or
any other partner(s), officer(s), employee(s) or agent(s)
of the Firm, or such item or any proceeds thereof may be
used or disposed of for the personal credit or account of
any such person(s), partner(s), officer(s), employee(s) or
agent(s) with BLUSA or otherwise or in payment of the
individual obligation of any such person(s), partner(s),
officer(s), employee(s) or agent(s) to BLUSA, even if the
balance of the account(s) shall not be sufficient to pay

60

the full amount of such item, check, draft, instrument or order.

D.  The Firm may borrow and/or obtain credit from BLUSA and grant security interests in any property as collateral for any borrowing or other extension of credit by or to the Firm or any other party on any terms and the authorized signatory(ies) of the Firm, acting singly or jointly as set forth in this Agreement, shall act on behalf of the Firm and shall execute and deliver any documents requested in connection with any borrowing or other extension of credit by or to the Firm or any other party, including (but not limited to) promissory notes, guarantees, security agreements, hypothecation agreements, mortgages and subordination agreements.

E.  The Firm may borrow and/or obtain credit in United States and/or any foreign currency (including, but not limited to letters of credit) and the authorized signatory(ies) of the Firm, acting singly or jointly as set forth in this Agreement, are authorized to open deposit accounts in foreign currencies and to purchase, sell, transfer or dispose of for present and future delivery, foreign currency, moneys, credits, exchange (on deposit or otherwise), securities and/or other investments, and to execute and deliver any agreement or instruments relating to any such transaction, including (but not limited to) the Investment and Foreign Currency Provisions of this Agreement.

F.  The authorized signatory(ies) of the Firm, acting singly or jointly as set forth in this Agreement, are authorized to direct BLUSA to purchase or sell for the account of the Firm stocks and bonds and other securities and investments.

G.  The Firm may purchase one or more participations in, or take assignments of, extensions of credit made by BLUSA to one or more borrowers, such purchases or assignments being made without recourse to BLUSA, except for actions taken by BLUSA in bad faith.

H.  BLUSA may act upon these provisions and rely upon the certification of these provisions as set forth in this Agreement until receipt by it of a certification of new partnership authority provisions purporting to be signed by the general partner(s) of the Firm.  Until BLUSA has actually received such certification of new authority provisions, BLUSA is indemnified and held harmless by the Firm from any and all lawsuits, proceedings, demands, claims, liabilities, losses, damages, costs and expenses (including, without limitation, attorneys' fees and expenses) suffered or incurred by it in continuing to act according to these provisions, even though these provisions

61

may have been changed.  In case BLUSA is unsure of the validity of any such certification of new authority provisions, BLUSA may continue to act upon the authority of these provisions unless fully indemnified to its satisfaction against all lawsuits, proceedings, demands, claims, liabilities, losses, damages, costs and expenses (including, without limitation, attorneys' fees and expenses) that may arise if BLUSA acts according to such new provisions or amendments.  In addition, under such circumstances, BLUSA is authorized to refuse to disburse any funds from any of the Firm's account(s), without any liability for items returned by reason of such refusal, until BLUSA (a) is fully indemnified to its satisfaction, (b) receives joint instructions from all of the persons claiming to be authorized to sign on behalf of the Firm, based upon the existing and any such disputed certification, or (c) is served with an order of a court of competent jurisdiction directing BLUSA to act, or not to act, in accordance with such disputed certification; and BLUSA shall also, at all times, be authorized but not required to bring an interpleader or similar action to determine the proper disposition of the funds in the Firm's account(s).  In case of any such dispute or uncertainty, BLUSA shall be entitled to be reimbursed for all costs and expenses incurred (including, without limitation, attorneys' fees and expenses, and the other costs and expenses of bringing any legal action and court costs) and shall have the right to deduct all such amounts from the balance of such account(s).

I.  The Firm agrees to be bound by all the rules, regulations, conditions, limitations and agreements contained in this Agreement with the same effect as if each term were set forth in full in these provisions and made a part hereof, except that in case of any inconsistency between these provisions and the terms of this Agreement, these provisions shall control, unless otherwise expressly stated.

J.  The authorities contained in these provisions shall supersede and expressly revoke any and all prior certifications to BLUSA of provisions regarding the authority of individuals to sign on behalf of the Firm's account(s) with BLUSA.

K.  Each of the general partners of the Firm shall be jointly and severally liable for the prompt payment and performance of any and all liabilities and obligations of the Firm to BLUSA, and any and all claims of every nature and description that BLUSA may have against the Firm, whether now existing or hereafter incurred, originally contracted with BLUSA and/or with another or others, in any manner now or hereafter owing to or acquired by BLUSA,

62

whether absolute or contingent, secured or unsecured,
matured or unmatured.