**EXHIBIT N**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                  :
BANK LEUMI USA,                                                   :
                                    Plaintiff,                    :
                                                                  :
                                                                  :          12 Civ. 4423 (AJN)
            -v-                                                   :
                                                                  :               ORDER
                                                                  :
DAVID EHRLICH, ET AL.,                                            :
                                    Defendants.                   :
                                                                  :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 1 9 2013

ALISON J. NATHAN, District Judge:

In its Complaint, Plaintiff Bank Leumi USA ("BLUSA") seeks a declaration that: (i) the

contractual limitation on BLUSA's liability with respect to the accounts of Defendants David

Ehrlich, Enrique Ehrlich, Sara Goldstein, and Angela Tykocki ("Defendants") is valid and

enforceable; (ii) BLUSA is not liable in contract or tort for the Defendants' investment losses in

connection with certain bonds ("the Bonds"); and (iii) that BLUSA has no obligation to refund

the amounts Defendants paid to purchase the Bonds. (Complaint at 9, *Bank Leumi USA v.*

*Ehrlich*, No. 12-CV-04423, Docket Entry 1) Defendants now move to dismiss BLUSA's

declaratory judgment action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal

jurisdiction, under Rule 12(b)(3) for improper venue, and under the doctrine of *forum non*

*conveniens*. *See* Fed. R. Civ. P 12(b)(2)-(3). For the reasons discussed below, the motion is

denied.

## I.    Background

Plaintiff is a full-service commercial bank, which also offers U.S. and international

private banking services. (Bittker Decl. ¶¶ 2-3) BLUSA is headquartered in New York, New

York, (Bittker Decl. at ¶ 5), and organized under the laws of New York, (Bittker Decl. at ¶ 8). More than ninety-nine percent of BLUSA's shares are owned by its parent, Bank Leumi le-Israel Corporation, which is also organized under New York law. (Bittker Decl. at ¶ 8) Bank Leumi le-Israel Corporation's parent, in turn, is Bank Leumi le-Israel B.M., which is organized under the laws of Israel. (Bittker Decl. ¶ 10)

Defendants in this action are four Uruguayan citizens whose principal place of residence is Uruguay. (Ehrlich, et al. Decl. at ¶ 2) On or about September 17, 2002, Defendants applied for BLUSA international accounts at the Bank Leumi (Latin America) S.A. ("BLLA") offices in Montevideo, Uruguay. (Defs.' Ex. A) As with BLUSA, BLLA is a subsidiary of the Israel-based Bank Leumi le-Israel B.M. (Bittker Decl. ¶ 10) Although BLLA is not itself authorized to open BLUSA international accounts, clients can apply for BLUSA accounts at BLLA, which (at the relevant time) would forward these applications to BLUSA's New York office for final processing and account creation.[1] (Bittker Decl. ¶ 11)

Page six of the BLUSA International Account Application (Defs.' Ex. A at 1) is titled "CUSTOMER AGREEMENT," (Defs.' Ex. A at 4) (capitalization in original) Under the heading of the customer agreement are four numbered bullets, a paragraph regarding risks and obligations, and space for up to four signatures. (Defs.' Ex. A at 4) For any account on which a defendant was listed, that defendant signed the corresponding signature box of the customer agreement.[2]

---

[1] There is some dispute between the parties as to the level of involvement of the BLLA branch office in creating BLUSA accounts. To the extent that the parties disagree on this point, such disagreement is immaterial to resolving Defendants' motion to dismiss.

[2] In total, Defendants applied for three accounts: one signed by David Ehrlich and his wife Angela Tykocki, (Defs.' Ex. A at 4); one signed by Enrique Ehrlich and his wife Sara Goldstein, (Defs.' Ex. A at 17); and one signed by David and Enrique Ehrlich, brothers, (Defs.' Ex. A at 25).

2

While the underlying dispute in this matter implicates the risks and obligations paragraph, the only portion of the customer agreement that is relevant to resolve Defendants' motion to dismiss is the second bullet. That bullet reads: "The Account Owner confirms receiving a copy of, and agreeing to, the International Account Terms." (Defs.' Ex. A at 4)

The International Account Terms (the "Terms") is a separate, twenty-eight page document, which, in relevant part, contains the following forum selection clause:

> **Governing Law; Jurisdiction; Service of Process – THIS AGREEMENT WILL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE UNITED STATES OF AMERICA.** Any legal proceedings arising from or in any way related to this Agreement may be brought in, and you hereby consent to personal jurisdiction and venue of, any state or federal court located in New York County, New York, U.S.A. You hereby consent to the service of process in any such action, by mailing a copy of such process to you at your last known address shown on our records.

(Pl's. Ex. D at 8) (emphasis in original) The "Introduction" section of the Terms defines the term "Agreement," as "the Account Application and these International Account Terms including any Optional Account Provisions selected by you on the Account Application." (Pl's. Ex. D at 1)

Defendants acknowledge having signed the BLUSA customer agreement -- confirming receipt of, and agreement to, the Terms -- but claim that they were not, in fact, provided with a copy of the Terms at the time they opened their accounts or at any point prior to receiving Plaintiff's brief responding to the current motion to dismiss. (Defs.' Br. at 3-4)

In the following years, Defendants made a number of transactions through their BLUSA international accounts. (Complaint at ¶ 35, *Bank Leumi USA v. Ehrlich*, No. 12-CV-04423, Docket Entry 1) Among these transactions was the purchase, on or about February 21, 2008, of the Bonds, the significant devaluation of which provides the substance of the underlying dispute

in this matter.[3]  (Complaint at ¶ 40, *Bank Leumi USA v. Ehrlich*, No. 12-CV-04423, Docket

Entry 1)  As a result of the devaluation of the Bonds, in or around March 2012, Defendants

(through counsel) sent Plaintiff a letter requesting resolution of the dispute over the Bonds, or, in

the alternative, threatening suit.  (Bluth Decl. at ¶ 3; Ehrlich, et al. Decl. at ¶¶ 19-20)  In lieu of

responding to Defendants' letter, Plaintiff filed the current declaratory judgment action with this

Court.  (Ehrlich, et al. Decl. at ¶ 21)

## II.    Defendants Consented to Personal Jurisdiction and Venue

Defendants move to dismiss on three grounds, the first two of which -- lack of personal

jurisdiction, Rule 12(b)(2), and improper venue, Rule 12(b)(3) -- can be addressed in

conjunction.  Plaintiff argues that the Court has personal jurisdiction and that venue is proper

because Defendants consented to both in their account applications.  (Pl's. Br. at 11-15)  If, as

here, the Court "relies on the pleadings and affidavits, and chooses not to conduct a 'full blown

evidentiary hearing,'" to decide a Rule 12(b)(2) or Rule 12(b)(3) motion, a plaintiff "need only

make a *prima facie* showing" of personal jurisdiction or venue over the defendant.  *Porina v.

Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008) (quoting *DiStefano v. Carozzi N.

Am., Inc.,* 286 F.3d 81, 84 (2d Cir. 2001)) (discussing a plaintiff's burden in opposing a motion

to dismiss for lack of personal jurisdiction).

Here, because the plain terms of the agreement demonstrate consent to jurisdiction and

venue in New York, if the agreement is enforceable, then the motion to dismiss on lack of

---

[3] While the details of these transactions may be pertinent to the underlying dispute, they are not pertinent to resolving the motion currently before the Court.

personal jurisdiction and venue will be denied.  The Court concludes that the forum selection

clause is enforceable.[4]

A.  <u>The Enforceability of the Forum Selection Clause</u>

BLUSA argues that Defendants consented to personal jurisdiction and venue by signing

their account applications.  (Pl's. Br. at 11-15)  Specifically, it argues that by signing the

application and asserting receipt of, and agreement to, the Terms, each defendant agreed to the

forum selection clause and, thus, to personal jurisdiction and venue in this Court.  (Pl's. Br. at 1)

Plaintiff does not argue that Defendants in fact received the Terms upon applying for their

BLUSA accounts, but asserts that it was standard practice to provide applicants with the Terms.

(Bittker Decl. at ¶ 20)

Defendants argue that they did not consent to personal jurisdiction or venue because they

did not receive a copy of the Terms at the time they applied for BLUSA accounts and, as such,

that document is not incorporated by reference into the customer agreement.  (Defs.' Reply at 4)

Defendants acknowledge having signed the customer agreement, but assert that they were never

provided with or offered a copy of the Terms.  (Defs.' Br. at 3-4)  Thus, the question here is

whether, assuming *arguendo* that the Defendants did not receive the document containing the

forum selection clause, it is nevertheless enforceable against them.

The Supreme Court has held that forum selection clauses "are prima facie valid and

should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under

the circumstances."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  Thus,

"[f]orum selection clauses are presumptively enforceable . . . ."  *J.B. Harris, Inc. v. Razei Bar*

---

[4] Because the Court finds that Defendants consented to personal jurisdiction and venue in the forum selection clause, it does not reach Plaintiff's alternate bases for the same.

*Indus., Ltd.,* 37 F. Supp. 2d 186, 189 (E.D.N.Y. 1998), *aff'd,* 181 F.3d 82 (2d Cir. 1999). In

"determining whether to dismiss a claim based on a forum selection clause, the district court

must view all the facts in the light most favorable to the party claiming that venue is proper,

while 'no disputed fact should be resolved against that party until it has had an opportunity to be

heard.'" *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x. 31, 33 (2d Cir. 2011) (quoting

*New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997)).

Pursuant to the Second Circuit's decision in *Phillips v. Audio Active Ltd.,* 494 F.3d 378

(2d Cir. 2007), "[d]etermining whether to dismiss a claim based on a forum selection clause

involves a four-part analysis." 494 F.3d at 383. "First, the [party seeking enforcement] must

show (1) the clause was reasonably communicated to the party resisting enforcement; (2) the

clause is mandatory and not permissive; and (3) the claims and parties in the suit are subject to

the forum selection clause." *Intertrade Fin. Corp. Ltd. v. Kennedy Funding, Inc.*, 08-CV-06756,

2010 WL 2607159, at *1 (S.D.N.Y. June 29, 2010). If these three elements are established, the

forum selection clause is entitled to a presumption of enforceability, as recognized in *M/S*

*Bremen*, 407 U.S. 1. *See Phillips*, 494 F.3d at 383. "The fourth, and final, step is to ascertain

whether the resisting party has rebutted the presumption of enforceability by making a

sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause

was invalid for such reasons as fraud or overreaching.'" *Id.* at 383-84 (quoting *M/S Bremen,* 407

U.S. at 15).

       *i.*   <u>*Plaintiff Has Met Its Burden to Establish Presumed Enforceability*</u>

At the first step of the *Phillips* analysis, the party seeking enforcement must show that the

clause was reasonably communicated to the party resisting enforcement. *Id.* at 383. Here,

BLUSA argues that the forum selection clause was reasonably communicated and that

Defendants' actual receipt of the Terms is irrelevant given their express affirmation to the contrary in the customer agreement. (Pl's. Br. at 4-5) Defendants argue that the forum selection clause was not reasonably communicated because BLUSA did not provide them with a copy of the Terms or alert them to the one line of "fine print" indicating that the Terms existed. (Defs.' Br. at 3, 7). Defendants' contention is without merit.

The Second Circuit recently analyzed and affirmed a district court's decision in a case with facts analogous to those currently before the Court. *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012), *aff'g* 10-CV-04697, 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011). In *Horvath*, the plaintiff signed a supplemental document saying he had knowledge of, and agreed to, a document containing the forum selection clause he sought to avoid. 461 F. App'x at 63. The Second Circuit held that the forum clause was reasonably communicated, notwithstanding the fact that the plaintiff did not recall having received the supplemental document or the fact that the document was written in a language the plaintiff did not understand. *Id.* ("Absent substantive unconscionability or fraud of a type not alleged here, parties are charged with knowing and understanding the contents of documents they knowingly sign.").

What this and other cases show is that the question whether Defendants in fact received the Terms is immaterial -- the onus here, as in *Horvath*, was on Defendants to request a copy of the Terms prior to confirming receipt and agreement to the same. *See id.*; *see also AXA Versicherung AG v. N.H. Ins. Co.*, 391 F. App'x 25, 30 (2d Cir. 2010) ("If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him." (quoting *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162-63 (N.Y. 1930))); *see also Weiss v. La Suisse*, 154 F. Supp. 2d

734, 737-38 (S.D.N.Y. 2001); *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 382 (S.D.N.Y. 2001).

Defendants would have the Court distinguish this case from *Horvath* and its ilk because, they argue, BLUSA presented no evidence showing that Defendants knew of or assented to the Terms and because the reference to the Terms was too ambiguous to allow for incorporation by reference. (Defs.' Br. at 7; Defs.' Reply at 4-7) As to the first of these arguments, the customer agreement, which each defendant signed (some more than once),[5] stated: "The account owner confirms receiving a copy of, and agreeing to, the International Account Terms," (Defs.' Ex. A at 4). Defendants' argument, then, is belied by the very account applications they submitted in support of their motion to dismiss. *See Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 374 n.4 (S.D.N.Y. 2010) (noting that there was a contradiction in evidence between the plaintiff's statement that he never received the terms and conditions referenced in an account application and his affirmation in that same application that he agreed to the terms and conditions; finding that the account application "[was] more persuasive than [the plaintiff's] vague statement . . .").

Defendants' second argument, that the reference to the Terms was too vague to allow for incorporation by reference, is also without merit, and their reliance on *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996), misplaced. In *PaineWebber Inc.*, the Second Circuit concluded that a document was not incorporated by reference because the record did not show an "objective intent to incorporate any *one* body of rules into the agreement itself." 81 F.3d at 1201 (emphasis in original). Here, on the other hand, the customer agreement portion of the account application specifically refers to the "International Account Terms," (Defs.' Ex. A at 4, 19, 25),

---

[5] *See supra* Section I, n.2.

and the first line of that document states, "[t]hese are the 'International Account Terms' referred to in the International Account Application," (Pl's. Ex. D at 1). This reference is unambiguous: had Defendants requested and reviewed the Terms prior to affirming that they had "recei[ved]" and "agree[d]" to them, (Defs.' Ex. A at 4, 19, 25), the document would have been clearly identifiable as the one referred to in the account application.

Under these facts, the Court concludes that BLUSA has met its burden of showing that the forum selection clause was reasonably communicated, under the test established by the Second Circuit in *Phillips*, and turns now to the second step in that analysis.

The second step of the *Phillips* analyses requires that BLUSA, as the party seeking enforcement, show that the forum selection clause at issue was mandatory not permissive. *See Phillips*, 494 F.3d at 383. To that end, BLUSA argues that a permissive forum selection clause has mandatory effect if, as here, the party seeking enforcement brings suit in the forum designated in the contract and if, as here, the clause contains a waiver of objections to venue. (Pl's. Br. at 6-8) Defendants argue that the language of the forum selection clause is explicitly permissive, not mandatory, and that venue is not exclusive. (Defs.' Br. at 7) While Defendants are correct insofar as they read the forum selection clause as being facially permissive, the Court agrees with BLUSA that, for the purpose of the *Phillips* test, the forum selection clause in this case has binding effect.

A permissive forum clause only confers jurisdiction in the designated forum, but does not deny a plaintiff his choice of forum if jurisdiction there is otherwise appropriate. *See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib.*, 22 F.3d 51, 53 (2d Cir. 1994) ("[A]n agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere absent specific language of exclusion." (quoting *City of N.Y. v. Pullman*

9

*Inc.*, 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979)) (emphasis in original)).  In contrast, "[a] forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language," and such a clause "is entitled to the [*M/S*] *Bremen* presumption of enforceability."  *Phillips*, 494 F.3d at 386.

The relevant provision of the forum selection clause here reads:  "Any legal proceeding arising from or in any way related to this Agreement *may be brought* in, and you hereby *consent to personal jurisdiction and venue* of, any state or federal court located in New York . . . ."  (Pl's. Ex. D at 8) (emphasis added).  Because the word "may" allows for proceedings to be brought in alternate fora, on its face, the clause neither "contains specific language of exclusion" nor "leaves it in the control of one party with power to force on its own terms the appropriate forum."  *Pullman*, 477 F. Supp. at 442 n.11.  Accordingly, the forum selection clause is permissive insofar as it does not preclude either party from filing an action in an alternate forum. *See Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2000).

Nevertheless, a facially permissive forum selection clause may be deemed to be mandatory where it "combines permissive forum selection language with an express waiver of venue objections."  *Eastman Chem. Co. v. Nestle Water Mgmt. & Tech.*, 11-CV-02589, 2011 WL 4005345, *2 (S.D.N.Y. Aug. 29, 2011) (citing *Aguas Lenders*, 585 F.3d at 700 (holding that a permissive forum selection clause containing a waiver of any claims of *forum non conveniens* "amounts to a mandatory forum selection clause at least where the plaintiff cho[se] the designated forum") (citing *AAR Int'l., Inc. v. Nimelia's Enter. S. A.,* 250 F.3d 510, 525–26 (7th Cir. 2001) ("[I]n this case we have more than merely a permissive forum selection clause; we have such a clause plus unambiguous language providing that the lessee shall not object to venue . . . [W]e conclude that the stricter standards announced in [*M/S*] *Bremen* . . . should

10

control . . . .”))); *see also Preston Frankford Shopping Ctr. Dallas, Tx. Ltd. P'ship v. Butler Dining Servs., LLC*, 757 F. Supp. 2d 248, 250 (W.D.N.Y. 2010) (upholding a forum selection clause where the plaintiff brought suit in the named, permissive venue and where the clause included "waivers of any objections to venue being laid [t]here"). The forum clause at issue here fits within this exception.

Arguably, the language in the BLUSA forum selection clause is distinguishable from that in *Aguas Lenders* and *Preston Frankford* in that Defendants consented, rather than waived objections, to personal jurisdiction and venue. However, at least in this context, consent is the equivalent of waiver. *K I C Chem., Inc. v. ADCO Chem. Co.*, 95-CV-06321, 1996 WL 122420, *4 (S.D.N.Y. Mar. 20, 1996) ("[C]onsent to a forum selection clause waives a party's right to object to personal jurisdiction and venue.") (citing *Bank of N.Y. v. Sasson*, 90-CV-04861, 1991 WL 193706, *3 (S.D.N.Y. Sept. 23, 1991)). For the purpose of the second step of the *Phillips* test, then, the facially permissive forum selection clause in the Terms has mandatory effect, and the Court turns to the third step of that analysis.

The third, and final, element for presumptive enforceability, under *Phillips*, requires that the party seeking enforcement demonstrate that the claims and parties are subject to the forum selection clause. 494 F.3d at 383. Here, BLUSA argues that the parties and the underlying claims easily fall within the broad language of the forum selection clause. (Pl's. Br. at 9) Defendants summarily assert that neither the parties nor the claims are subject to the forum selection clause because Defendants did not accept the forum selection clause or anything in the Terms. (Defs.' Br. at 8)

As a general rule, since the Supreme Court's decision in *M/S Bremen*, 407 U.S. 1, courts "treat forum selection clause[s] basically like any other contractual provision . . . ." *Nw. Nat. Ins.*

11

*Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990) (Posner, J.). Here then -- having already determined that the document containing the forum selection clause (the Terms) was incorporated by reference into the customer agreement -- because Defendants are all signatories of the customer agreement, they are also subject to the forum selection clause as they would be subject to any other contractual provision in the Agreement.[6] *New Moon*, 121 F.3d at 33 ("The scope of the forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties.").

The remaining question, then, is whether the claims are also subject to the forum selection clause. Here, BLUSA's claims are for declaratory judgment relative to potential civil liability in its management of the Bonds that Defendants purchased through their BLUSA accounts. (Complaint at 9, *Bank Leumi USA v. Ehrlich*, No. 12-CV-04423, Docket Entry 1) Specifically, BLUSA seeks judgment on whether the terms of the customer agreement are valid and enforceable, whether it acted in accordance with the customer agreement, and whether it is subject to civil liability relative to the Bonds. "[W]hether the clause encompasses these claims depends on the language of clause itself, the interpretation of which is a question of federal law." *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 99-CV-10550, 2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) (internal citations omitted); *see also Phillips*, 494 F.3d at 389 ("[W]e examine the substance of [the plaintiff's] claims as they relate to the precise language of the clause.").

Here, the scope of the forum selection clause is very broad, encompassing "[a]ny legal proceeding arising from or in any way related to this Agreement . . . ." And the claims at issue are both causally related to, and have their genesis in, that same Agreement -- the first two

---

[6] Indeed, were Defendants not subject to the forum selection clause as an incorporated part of the contract, they would also be unable to bring suit to demand recompense for BLUSA's alleged violation of other terms of that same contract.

relating to interpretation of the customer agreement and the third relating to the Bonds that were purchased through the accounts Defendants opened by means of the customer agreement. Accordingly, it is beyond cavil that the claims both "aris[e] from," *see Phillips*, 494 F.3d at 389, and are "related to," *see Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001), the customer agreement.[7] As such, BLUSA has met its burden under *Phillips* and the forum selection clause is presumptively enforceable. *See Phillips*, 494 F.3d at 389.

### ii.   *Defendants Have Failed to Rebut the Presumption of Enforceability*

Having established that the forum selection clause is presumptively enforceable, the burden shifts to Defendants to rebut that presumption "by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 383-84 (quoting *M/S Bremen*, 407 U.S. at 15); *see also Roby*, 996 F.2d at 1363. Courts have construed this exception narrowly, *Roby*, 996 F.2d at 1363, and held that a forum selection clause is only unreasonable if: "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Phillips*, 494 F.3d at 393. Defendants challenge the forum selection clause here under factors (1) and (4), (Defs.' Br. at 9), but fail to

---

[7] This same conclusion holds true if, rather than looking at the specific claims, the Court were to look at the underlying subject matter, which, as Defendants describe it, is "civil liability for negligence and the breach of care in managing the investments of Defendants' financial accounts," (Bluth Decl. at ¶ 7). *See Roby v. Corp. of Lloyds*, 996 F.2d 1353, 1361 (2d Cir. 1993) ("There is ample precedent that the scope of clauses similar to those at issue here is not restricted to pure breaches of the contracts containing the clauses."); *Anwar*, 742 F. Supp. 2d at 375 ("the Court finds that this dispute -- involving recommendations . . . about how to best invest funds in [the plaintiffs'] accounts -- arises from the Agreement, which, together with the Application" governed the relationship between the parties).

establish that the incorporation was the result or fraud or overreaching or that enforcement would be unreasonable or unjust.

Defendants first argument for unenforceability is that the forum selection clause was incorporated as a result of fraud or overreaching because they never received a copy of the Terms. (Defs.' Br. at 9) Without citation, they argue that binding them to the forum selection clause in a document that they never saw "might as well be coercion." (Defs.' Br. at 9) BLUSA argues that the facts of this case are comparable to those in the recent case from this district, *Horvath*, and that here, as in that case, Defendants have failed to show that the clause was unreasonable (Pl's. Br. at 10-11) The Court agrees with BLUSA.

"[A] party seeking to invalidate a forum-selection clause on grounds that she was coerced or fraudulently induced into acquiescing to the clause must specifically prove that but for the drafter's misconduct, it would not have been included in the agreement." *Sun Forest*, 152 F. Supp. 2d at 380 (citing *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 n.14 (1974)). Neither "conclusory allegations of fraud and coercion" nor "bare bones allegations" are sufficient to invalidate a forum selection clause. *G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*, 03-CV-10027, 2004 WL 1110423, *4 (S.D.N.Y. May 19, 2004) (citing, *inter alia*, *Composite Holdings v. Westinghouse Elec. Corp.,* 992 F. Supp. 367, 371 (S.D.N.Y. 1988)).

Defendants here have made no showing that BLUSA's alleged failure to provide them with the Terms was intentional or malicious. Nor have they suggested that they would not have signed or agreed to the Terms had the Terms been provided to them at the time they applied for their BLUSA accounts -- a lacuna that is especially noteworthy in light of Defendants' apparently cursory review and acceptance of the customer agreement. Under these facts, Defendants "have not made the 'strong showing' required to prove that the forum selection

14

clause was the result of fraud or coercion." *G&R Moojestic Treats, Inc.*, 2004 WL 1110423, at *4 (quoting *M/S Bremen*, 407 U.S. at 12).

Defendants also argue, again without citation to authority, that enforcement of the forum selection clause would effectively deny them their day in court because of the expense and inconvenience of adjudicating in New York and of producing evidence and witnesses from Uruguay. (Defs.' Br. at 9-10) BLUSA argues that New York is the locus of the underlying transactions and that the increased cost or inconvenience of litigating in an agreed upon forum does not, as a matter of law, overcome the presumption of enforceability. (Pl.'s Br. at 11) The Court agrees that Defendants' arguments, which effectively reiterate the "private factors" in the *forum non conveniens* section of their motion, (*see* Defs.' Br. at 20-21), fail to overcome the presumption of enforceability.

"Second Circuit case law is clear that mere difficulty and inconvenience is insufficient to establish the unreasonableness of enforcing a forum selection clause." *Jalee Consulting Grp., Inc. v. XenoOne, Inc.*, 11-CV-04720, 2012 WL 4510676, *6 (S.D.N.Y. Sept. 29, 2012) ("Plaintiff's allegations . . . fail to establish that proceedings in [the foreign forum] would be anything more than difficult, and certainly not impossible."); *see also Phillips*, 494 F.3d at 393 (the plaintiff's allegations only "suggest that litigation in [the agreed upon forum] may be more costly or difficult, but not that it is impossible"); *Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 10-11 (2d Cir. 1995) (enforcing clause requiring U.S. citizen to litigate in Greece and noting that the distance between a selected forum and pertinent parties or places did not render a forum inconvenient if readily accessible by air travel). As in the cases above, Defendants have failed to point to anything that would make litigation of this dispute in the Southern District of New York

impossible; while it will perhaps be more expensive, Defendants have failed to show that such expense would be preclusive.

    B.  <u>The Forum Selection Clause is Enforceable</u>

        Under *Phillips*, BLUSA has met its burden of demonstrating that the forum selection clause is presumptively enforceable, and Defendants have failed to rebut that presumption. The Court therefore holds that Defendants are bound by the terms of the forum selection clause, to wit, Defendants validly consented to both personal jurisdiction and venue in the Southern District of New York. *See D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 103 (2d Cir. 2006); *see also Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–16 (1964). In light of Defendants' consent to both personal jurisdiction and venue in the Southern District of New York, the Court denies Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and (12)(b)(3).

## III.    The Doctrine of *Forum Non Conveniens* Does Not Mandate Dismissal

        Defendants argue that even if the forum selection clause is enforceable, the Court should dismiss the action on *forum non conveniens* grounds because they are Uruguayan citizens with no business or other connection to New York. (Defs.' Br. at 18) BLUSA argues that this is not an inconvenient forum because Defendants agreed to litigate disputes with BLUSA in New York and because the underlying transactions were executed in New York. (Pl's. Br. at 16) There is some case law from this district in support of BLUSA's argument regarding consent, although those cases are arguably distinguishable because the forum selection clauses at issue were facially mandatory. *See, e.g., REDF Organic Recovery, LLC v. Kafin*, 12-CV-07973, 2012 WL 5844191, *4 (S.D.N.Y. Nov. 19, 2012); *Med. Dev. Mgmt., Inc. v. N.Y. Publ'g, LLC*, 11-CV-08438, 2012 WL 4459909, *4 n.5 (S.D.N.Y. Sept. 25, 2012). In any event, the Court need not

reach that particular argument as it agrees with BLUSA, generally, that Defendants have not

demonstrated that the action should be dismissed under the doctrine of *forum non conveniens*.

"The *forum non conveniens* determination is committed to the sound discretion of the

trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Dismissal on these grounds

should only be granted "when trial in the chosen forum would 'establish . . . oppressiveness and

vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen

forum [is] inappropriate because of considerations affecting the court's own administrative and

legal problems.'" *Id.* at 241 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524

(1947)) (alterations in original); *see also Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp.

407, 415 (S.D.N.Y. 1996).

The Second Circuit has outlined a three-step process to guide district courts in applying

their broad discretion over *forum non conveniens* determinations. *Norex Petroleum Ltd. v.

Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274

F.3d 65, 73-74 (2d Cir. 2001)). "At step one, a court determines the degree of deference

properly accorded the plaintiff's choice of forum. At step two, it considers whether the

alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.

Finally, at step three, a court balances the private and public interests implicated in the choice of

forum." *Norex Petroleum*, 416 F.3d at 153 (internal citations omitted); *see also Iragorri*, 274

F.3d. at 73-74.

A.  BLUSA's Choice of Forum is Accorded Substantial Deference

Defendants argue that BLUSA's choice of forum should not be afforded substantial

deference because BLUSA is merely a "domestic resident" of New York and because the only

ties to New York are its presence here and the forum selection clause. (Defs.' Br. at 19-20)

17

BLUSA argues that it should be accorded substantial deference because New York is the listed forum in the forum selection clause, it is BLUSA's home forum, and the factual basis of the case touches New York. (Pl's. Br. at 17)

The Second Circuit has instructed that a "plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating" that the balance of conveniences "strongly" favor a defendant's request for change of forum. *Iragorri*, 274 F.3d at 70–71 "[T]he degree of deference given to a plaintiff's forum choice varies with the circumstances." *Id.* at 71. "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Id*. at 71-72. In making this determination, courts consider: "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Id*. at 72.

Here, BLUSA's choice of forum is entitled to very strong deference because: (i) BLUSA is the plaintiff in this action and it brought suit in its home forum;[8] (ii) Defendants are amenable to service of process in New York, having expressly consented to service of process in the forum selection clause; (iii) Defendant chose this forum for legitimate reasons -- this is BLUSA's home forum, it is the forum listed in the forum selection clause, it is the situs of the underlying transactions on BLUSA's end, and the contract is governed by the laws of New York; and (iv) there is nothing to suggest that this Court will not be able to provide adequate legal assistance in

---

[8] Notwithstanding Defendants' arguments regarding BLUSA's corporate ownership, (Defs.' Reply at 1-3), the facts remain that New York is BLUSA's home forum and that BLUSA brought the current action. (Bittker Decl. ¶¶ 4-6)

resolving this matter.  *See Gross v. British Broad. Corp.*, 386 F.3d 224, 231 (2d Cir. 2004); *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70-71 (2d Cir. 2003).

    B.    <u>Neither the Public nor Private Factors Militate in Favor of Dismissal</u>

The Court will assume, for purposes of this motion, that Uruguay would be an adequate alternative forum.  Nevertheless, Defendants have not met their burden to demonstrate that relevant public or private factors militate in favor of dismissal

"A defendant moving for dismissal on *forum non conveniens* grounds bears the burden of proof."  *Strategic Value Master Fund, Ltd. v. Cargill Fin.*, 421 F. Supp. 2d 741, 754 (S.D.N.Y. 2006) (citing *Aguinda v. Texaco Inc.*, 303 F.3d 470, 476 (2d Cir. 2002)).  When a plaintiff's choice is entitled to substantial deference, the defendant's task is that much harder.  *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 453 (S.D.N.Y. 2008).  The court "must then determine, by balancing the private interests of the litigants with the public interest concerns of the [c]ourt, whether adjudication of the action in the plaintiff's chosen forum would be inconvenient and unjust."  *Do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d, 297 306 (S.D.N.Y. 2007) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Gilbert*, 330 U.S. at 508.

Here, Defendants correctly concede that some public interests weigh in BLUSA's favor and make no claims as to what, if any, public interests would favor dismissal.  (Defs.' Br. at 21) Rather, they argue that the private interest factors alone overwhelmingly support dismissal. (Defs.' Br. at 21-22)

Turning to the private interest factors, then, the Court is guided by the Supreme Court's decision in *Gilbert*, which identified factors that implicate the private interests of the litigant.

330 U.S. at 508. These factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*

"A district court, in its analysis, essentially weighs the difficulties a defendant would suffer if the dispute were adjudicated in the present forum against the difficulties a plaintiff would face if the case were dismissed and the plaintiff were thus forced to bring suit in another country." *Strategic Value Master Fund, Ltd*., 421 F. Supp. 2d at 757. In doing this, a court should look at the precise issues likely to arise: "[r]ather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried . . . ." *Iragorri*, 274 F.3d at 74; *see also Strategic Value Master Fund Ltd.*, 421 F. Supp. 2d at 757.

Defendants claim that the private interest factors favor trial in Uruguay because the evidence of the underlying transactions is in Uruguay and because this Court could not compel the appearance of witnesses from Uruguay. (Defs.' Br. at 21-22) However, looking to the precise issues likely to arise in this case, the Court is not convinced that these factors "militate[] strongly in favor of [Uruguay] as a more appropriate forum for this litigation." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) (private factors militated in favor of alternate forum); *BFI Group Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274, 289 (S.D.N.Y. 2007) (both private and public factors "militate[d]" in favor of dismissal).

Specifically, Defendants do not claim that discovery in this case will be extensive or that BLUSA will be unable to produce any or all of the documents at issue. *See DiRenzo v. Phillip Serv. Corp*., 294 F.3d 21, 30 (2d Cir. 2002) ("[T]he defendants have failed to explain how

transporting the documents or copies of them would be 'oppressive' or

'vexatious,' . . . [therefore,] absent an explanation, less weight should be accorded this factor.")

Likewise, Defendants do not assert that witnesses or potential witnesses would in fact be

unwilling or unable to attend a trial in this case were it held in New York, just that such a

scenario is theoretically possible.  *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 688 F. Supp. 2d

303, 317 (S.D.N.Y. 2010) (denying motion to dismiss for *forum non conveniens* where the

"[d]efendants ha[d] not identified any [foreign] witnesses as unwilling or unable to appear in

th[at] [c]ourt," and noting that "'such identification is generally required for a forum non

conveniens dismissal'" (quoting *Haywin Textile Prods., Inc., v. Int'l Fin. Inv.*, 137 F. Supp. 2d

431, 436 (S.D.N.Y. 2001))).  Finally, while Defendants have shown that it would be cheaper for

them to have the trial in Uruguay, (Defs.' Br. at 21), they have not shown how trying the case in

Uruguay would be more cost effective, *on balance*, as required.

Without even taking into account those factors that weigh in BLUSA's favor, Defendants

have failed to show why the private factors described in *Gilbert* militate in favor of dismissal.

Given that BLUSA's choice of forum is accorded a high level of deference and that they concede

that the public interest factors are at best neutral, Defendants have failed to make the necessary

showing to support their motion to dismiss under the doctrine of *forum non conveniens.*

## IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied.  The parties are

directed to appear for an initial pretrial conference before the Court on March 4, 2013, at

9:30 AM in Courtroom 906 of the United States District Courthouse for the Southern District of

New York, Thurgood Marshall U.S. Courthouse at 40 Foley Square, New York, New York.

Prior to the conference, counsel shall confer regarding settlement and each of the other subjects

to be considered at a Fed. R. Civ. P. 16 conference.

Additionally, in accordance with the Court's Individual Rules, the parties are shall submit

via e-mail (NathanNYSDChambers@nysd.uscourts.gov) a Proposed Civil Case Management

Plan and Scheduling Order in PDF format **no later than nine days before the initial pretrial**

**conference**.  The parties shall use this Court's form Proposed Case Management Plan and

Scheduling Order available at the Court's website (http://nysd.uscourts.gov/judge/Nathan).


Dated: February  19  , 2013
       New York, New York

_____
          ALISON J. NATHAN
       United States District Judge

22