ALCANTAR LAW PLLC
Jose Raul Alcantar Villagran, Esq. (JA2849)
22 Cortlandt Street, 16th Floor
New York, New York 10007
Tel: (212) 658-0222
Fax: (646) 568-5843
raul.alcantar@alcantarlaw.com

*Counsel to Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | | |
|---|---|---|
| BANK LEUMI USA, | : | Index No. 12-CV-4423 (AJN) |
| | : | |
| Plaintiff, | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| -against- | : | **MEMORANDUM OF LAW** |
| | : | **IN SUPPORT OF DEFENDANTS'** |
| DAVID EHRLICH, ANGELA TYKOCKI, | : | **JOINT REPLY TO BANK LEUMI** |
| ENRIQUE EHRLICH, and SARA GOLDSTEIN, | : | **USA'S OPPOSITION TO** |
| | : | **DEFENDANTS' MOTION** |
| Defendants. | : | **FOR SUMMARY JUDGMENT** |

-----------------------------------------------------------------X

**INTRODUCTION**[1]

    Defendants hereby submit this Memorandum of Law in support of their reply to BLUSA's opposition to their Motion for Summary Judgment [Dkt. No. 50].[2]

**PRELIMINARY STATEMENT**

The undisputed facts make clear that the Court was wrongly induced to deny Defendants' motion to dismiss by BLUSA's pervasive misrepresentations of fact, including that the so-called IAT's governed Defendants' agreements.   Prior to such ruling, however, BLUSA failed to (i) accurately represent its international banking practices and (ii) convey the fundamental significance of another BLUSA standard form, the Arrangements, with respect to Defendants' motion to dismiss.   Instead, BLUSA opted to mislead, most notably through the declaration of its Deputy General Counsel and author of the IAT's and the Arrangements, Mr. Donald L. Bittker.

    Critically, BLUSA failed to disclose, among other things, that: (i) the Arrangements (which provide for jurisdiction in the county in which an account was opened) supplanted the IAT's (which purport to set jurisdiction and venue in New York) months prior to execution of Defendants' agreements; (ii) there was no customary practice of providing standard forms to international clients as part of the account opening process; and (iii) even though Mr. Bittker countered Defendants' motion to dismiss, he was not qualified to provide such testimony because he did not have direct knowledge of the facts surrounding Defendants' account-opening process or purchase of the Kaupthing bonds.[3]

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Motion.

[2] The filing of this Reply does not constitute Defendants' consent to personal jurisdiction or to this venue.

[3] Mr. Bittker also recognized that the essential material facts took place in a room in which was never in. This not only imposes limitations on his usefulness and credibility as a witness but has also imposed tremendous difficulties and entailed additional  burden on the Defendants to prove certain essential facts (or rather, to prove the inexistence of such facts).

BLUSA now seeks to prevent the Court from re-examining the question of its adjudicatory power in light of material facts uncovered during discovery. Preliminarily, this Court already acknowledged that it would revisit the jurisdictional question post-discovery with the benefit of actual facts in the record: Defendants showed "credible evidence of facts that would constitute a complete defense, a lack of personal jurisdiction, if, as they hope to show, the International Account Terms did not govern the parties' agreement." Dkt. No. 58 at p. 4.

BLUSA's invocation of the law of the case is improper here because the dismissal ruling was made under a different standard and because Defendants did not have a full and fair opportunity to litigate that issue. In any event, the doctrine does not limit the tribunal's power, but merely directs its discretion. *Ariz. v. Cal.*, 460 U.S. 605, 618 (1983). Even if the doctrine were applicable, it should be set aside here: (i) based on new evidence uncovered during discovery; (ii) as no unfair prejudice would result against BLUSA; and (iii) to correct clear error or to prevent manifest injustice. *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992).

Moreover, even if the doctrine applied, BLUSA could complain about this Court's examination of its adjudicatory power because such question is only pertinent due to BLUSA's misrepresentations regarding its own forms and practices. No unfair prejudice would thus result from examination of the new evidence. In contrast, the Court's reflexive application of the doctrine would result in clear error and manifest injustice, as it would leave standing a ruling wrongly induced by misrepresentation of facts. The Court should refuse to apply the law of the case and should grant Defendants' cross-motion for summary judgment.

## ARGUMENT

## I. THE LAW OF THE CASE DOCTRINE SHOULD NOT BE INVOKED WITH RESPECT TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. The Law of the Case Doctrine May Not Be Properly Invoked Because Dismissal

**and Summary Judgment Motions Are Governed by Different Standards**

Invocation of the law of the case doctrine is inapplicable where, as here, the questions at issue are governed by different standards -- namely, a motion to dismiss versus a motion for summary judgment.[4]  While the Court rightly accepted as true all well-pleaded factual allegations and drew all reasonable inferences in BLUSA's favor in the context of a pre-discovery motion to dismiss, *In re Parmalat Sec. Litig.*, 501 F.Supp.2d 560, 560 (S.D.N.Y. 2007), a post-discovery summary judgment motion would be decided on the basis of specific facts in the record, not on mere factual allegations.  *See* Fed. R. Civ. P. 56.  The Court should refuse to apply the doctrine based on the different standard applicable at this juncture in the case.

**B.  The Law of the Case Doctrine Should Not Be Invoked Because Defendants Did Not Have A Full and Fair Opportunity to Litigate the Motion to Dismiss**

Further, the law of the case should not be invoked because BLUSA engaged in material misrepresentations of fact regarding, among other things, the Arrangements and its own banking practices. Such misrepresentations deprived Defendants of an opportunity to "fully and fairly" litigate the jurisdictional and forum questions in the initial determination.[5]

## II.  EVEN IF THE LAW OF THE CASE COULD BE PROPERLY INVOKED, COMPELLING GROUNDS EXIST TO DEPART FROM THE DOCTRINE

**A. Discovery Revealed New Facts Which Conclusively Resolve Jurisdiction in Defendants' Favor**

Prior to this Court ruling on Defendants' motion to dismiss, BLUSA failed to properly disclose the existence of the Arrangements, dated June 2002.  The Arrangements form

---

[4] *See AHT Corp. v. BioShield Techs., Inc. (In re AHT Corp.)*, 2003 U.S. Dist. LEXIS 6379 at \*\*32 (S.D.N.Y. 2003) (Law of the case doctrine was inapplicable with respect to a ruling on a pre-answer motion in the context of post-discovery motion); *cf. Society of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 735 (5th Cir. 1997) (application of the law of the case doctrine is inappropriate when the relevant issues are governed by different standards of review).
[5] *See, e.g., People v. Bilsky*, 95 N.Y.2d 172, 175 (N.Y. 2000) (the law of the case doctrine may be properly invoked only if the parties had a full and fair opportunity to litigate the initial determination.).

supplanted the IAT's in July 2002, approximately two months prior to Defendants opening their

BLUSA accounts in September 2002, providing: "[f]or purposes of an Application form made

available by BLUSA before July 2002, **this booklet is the International Account Terms**."

Arrangements at section 1.1 (emphasis added); Defendants' Statement of Undisputed Facts [Dkt.

No. 89-1] ("SOF") at ¶ 31.  Critically, the Arrangements' pertinent clauses do not point to New

York as the exclusive forum, but also state that "legal proceedings or actions arising of or

relating to your Accounts or the Agreement may be brought in . . . the county where you opened

the Account . . . ."  Arrangements at §1.33 ("Legal Proceedings; Jurisdiction; Venue.").  SOF at ¶

37.  This Court and Defendants were unable to analyze the implications of such document before

the Court's prior ruling due to BLUSA's lack of forthrightness regarding its own forms.

> **B.  Manifest Injustice and Clear Error Would Result From Failure to Re-examine the Dismissal Ruling Because BLUSA Made Material Misrepresentations of Fact**

> **i.  BLUSA's Pre-Discovery Misrepresentations Were Pervasive**

This Court's order denying Defendants' motion to dismiss was based in great part upon

the demonstrably false or misleading statements made about BLUSA's account-opening

practices and proprietary forms.  A sample of BLUSA's pre-discovery statements compared to

statements elicited during discovery reveals the pervasiveness of the misrepresentations:

| Statement Made Pre-Discovery: | Statement Made/Facts Uncovered During Discovery: |
|---|---|
| The IAT's govern the Agreements. Cmplt. at ¶¶ 23-25.<br><br>Accounts **recently** opened at BLUSA for non-U.S. residents are governed by the Arrangements booklet.  Declaration of Donald L. Bittker ("Bittker Declaration") (Dkt. No. 17) at ¶ 14. | The Arrangements, which supplanted the IAT's (Arrangements at § 1.1), are dated June 2002.  They were authored, printed and ordered disseminated to BLUSA's branches over 12 years ago, in mid-summer 2002, at least two months prior to Defendants signing their account applications, **not recently**.  SOF at ¶¶ 28-30, 32. |
| In the Account Applications, Defendants acknowledged receiving | Defendants merely completed the act of signing the account applications after relying on BLUSA representatives to complete |

| | |
|---|---|
| a copy of, and agreeing to, the IAT's. Complaint at ¶ 23. | the applications and explain the applications' contents in Spanish because Defendants are not fluent in English. SOF ¶¶ 9-12. <br><br> Defendants could not have acknowledged receipt of, or agreement to, the IAT's because the IAT's pertinent clauses were never provided to them nor their contents communicated to them in Spanish. SOF at ¶¶ 12-14; 23. |
| In September 2002 BLUSA's practice was to provide to each applicant completing and signing a BLUSA International Account Application a copy of the IAT's. Bittker Declaration at ¶ 20. | There was no practice of providing standard forms to clients in Uruguay during the account opening process. SOF at ¶¶ 11; 20. <br><br> Further, Mr. Bittker does not have any direct knowledge of what transpired in Uruguay between BLUSA clients and BLUSA's representatives during account openings, including in relation to Defendants. SOF at ¶ 47. |
| On September 17, 2002, Defendants completed and signed their own account applications at Leumi (Latin America) S.A.'s offices in Montevideo, Uruguay. Bittker Declaration at ¶¶ 17-19. | Mr. Bittker has no direct knowledge about what transpired in Leumi (Latin America) S.A.'s offices in relation to the underlying facts. SOF at ¶ 47. <br><br> BLUSA representatives completed the account applications on behalf of Defendants.  SOF at ¶¶ 12-14, 23. |
| The IAT's is separate from the Account Application to allow BLUSA to use standard terms applicable to multiple types of accounts with its customers, thereby reducing uncertainty in such transactions by establishing New York as the exclusive forum for potential disputes. Bittker Declaration at ¶ 27-31. | As it turns out, according to Bittker, BLUSA has not sought to put international client relationships under uniform "standard terms" or a generally-applicable platform (under the IAT's, the Arrangements or otherwise). SOF at ¶ 36. |
| BLUSA has no agencies outside the United States other than in the Cayman Islands and Tel Aviv. Bittker Declaration at ¶ 7. | Until at least 2004, Bank Leumi had representative offices in Latin America which facilitated account openings. SOF at ¶ 42. <br><br> Leumi Latin America was BLUSA's agent with respect interviewing and assisting prospective BLUSA clients, signing account applications "as a representative of BLUSA", and processing clients' orders to BLUSA. SOF at ¶ ¶ 43-44. |
| BLUSA customers may purchase and sell securities by completing and signing an order form. The trade information is merely transmitted by a relationship officer at Leumi Latin America to the BLUSA Trading Desk in New York, where the trade is executed. | Mr. Uriel Ganz, a Leumi Latin America account officer in Uruguay, was the only individual who directly assisted Defendants with the Kaupthing bond purchase; Defendants did not interact with any BLUSA personnel as part of the transaction. SOF at ¶¶ 65-66. <br><br> Leumi Latin America personnel actively  participated in the bond-purchase transaction by (i) deciding on the bond-purchase terms, and (ii) conveweyd substantially all material bond- |

| | |
|---|---|
| Bittker Declaration at ¶ 15. | purchase terms, including price and quantity, to New York in real time, where the trades were merely processed. SOF at ¶¶ 67-68. |

### ii.   It Would Be Improper to Apply the IAT's Terms to Defendants' Accounts Given BLUSA's Representatives' Unconscionable Conduct

After completing the applications, BLUSA's representatives instructed Defendants, who are Spanish-speaking, to sign the English-written document, including the acknowledgements that they had received and accepted the IAT's. SOF at ¶ 13-14; 22.   The Representatives, however, failed to provide a copy of the IAT's or explain their terms to Defendants.   *Id*. BLUSA's representatives thus communicated with Defendants in Spanish (*Id.* at ¶ 12), while simultaneously attempting to bind them to an agreement written in English whose terms the representatives knew Defendants were not aware of.   Defendants were thus "handicapped by a lack of knowledge, both as to the commercial situation and the nature and terms of the contract which was submitted in a language foreign to them."   *Frostifresh*, 274 N.Y.S. 2d 757, 758 (1966) (reversed as to damages, but upheld as to unconscionability).[6]

### iii.   Bittker's Testimony Regarding BLUSA's Forms is Particularly Contorted

Bittker's testimony regarding BLUSA's standard forms, which he authored, has absurd implications if taken as true.   According to Bittker, BLUSA did not put all international clients under uniform terms, under the IAT's, the Arrangements or otherwise (SOF at ¶ 36).   Instead, BLUSA apparently engineered a convoluted structure with diverse applicable terms dependent on the version of the account application a banker happened to provide a prospective client:

[T]he international account application for a period of time did not refer to this new

---

[6] In consent orders dating back to the 1970's, the Federal Trade Commission has similarly asserted that if a company advertised in Spanish and had sales representatives make oral presentations in Spanish, the company had to "provide customers with contracts, booklets, credit cost disclosures, and other mandated written disclosures printed in English and Spanish." *Grand Spaulding Dodge, Inc.*, 90 F.T.C. 406 (1977); *see also J&J Furniture Corp.*, 87 F.T.C. 383 (1976); *Almacenes Hernandez Corp.*, 87 F.T.C. 400 (1976); *Weil & Co., Inc.*, 87 F.T.C. 406 (1976); *Busch's Jewelry Co*, Inc., 87 F.T.C. 394 (1976).

document [the Arrangements], it referred instead to the previous document, meaning that those accounts would have been opened on the basis of the previous account relationship. For some accounts, to this day, 2014, my understanding is this booklet is still not effective, in other words, we did not make an effort to put every international relationship on the same platform, if you will, we did not make an effort to inform existing relationships that your relationship with Bank Leumi USA will now be governed by this document [the Arrangements].

[Bittker Dep. at 27:21-25 to 28:1-8].

Squaring such statements with the explicit terms of the forms results in absurdity:

- The IAT's were adopted in December 2000 (SOF ¶ 27);
- the Arrangements were adopted in July 2002 and supplanted the IAT's for applications provided to prior to that date (Arrangements at §§1.1 and 1.32);
- The IAT's, however, remained effective with respect to the Agreements, even though the Agreements were executed after adoption of the Arrangements (Cmplt. at ¶¶ 23-25; Bittker Declaration ¶ 25); and
- the IAT's were again superseded by the Arrangements sometime after 2002 (see Bittker Declaration ¶¶ 14, 32).

Defendants propose an alternative interpretation which is far more persuasive. The IAT's and the Arrangements were in fact drafted as "standard forms" originally intended by BLUSA to cover all international accounts. The IAT's were meant to apply to all such accounts when they were adopted in December 2000, and the Arrangements were meant to apply to all such accounts when they were ordered printed and disseminated in July 2002. The language contained in section 1.1 of the Arrangements thus was included to ensure that all international accounts opened prior to the enactment of the Arrangements, and previously governed by the IAT's, were also placed on the same platform. However, either an account application or distribution error meant that international account application form, including the ones provided to Defendants, mistakenly continued to refer to the IAT's instead of the Arrangements after July 2002.

Thus, the alleged certainty afforded to BLUSA by the IAT's is a mere deception concocted by BLUSA to contort the facts to fit under applicable law. *See Scherk v Alberto-*

*Culver Co.*, 417 US 506, 516 (1974). While BLUSA has a right to zealously argue its case given the underlying facts, this Court should not permit BLUSA to conveniently distort inconvenient facts surrounding its own forms and practices. Failure to re-examine the dismissal ruling in light of the new facts would leave standing a clearly erroneous jurisdictional ruling based on misrepresented and incorrect facts. *Dilaura v Power Auth. of Ny*, 982 F2d 73, 77 (2d Cir. 1992) (The law of the case doctrine also "permits a change of position if it appears that the court's original ruling was erroneous.").

Finally, BLUSA would not be unfairly prejudiced by this Court's re-examination of the dismissal ruling. The law of the case doctrine "need not be applied when no prejudice results from its omission." *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 135 (2d Cir. 1956). No prejudice results from a court omitting to apply the doctrine when, for example, a party is on notice that a court may reach a question in spite of its earlier allegedly applicable decision. *First Nat'l Bank v. Am. Foam Rubber Corp.*, 530 F2d 450, 457 (2d Cir. 1976).

### III.     Numerous Cases Cited in BLUSA's Opposition Are Inapposite

The account applications were provided to Defendants in English, even though Defendants are Spanish-speaking conducted all verbal communications with BLUSA representatives in Spanish. SOF ¶12. *Horvath v. Banco Comercial Portugues*, a case cited by BLUSA, is inapposite because the movants therein consented to general terms and conditions in their native language. 2011 U.S. Dist. LEXIS 15865 (S.D.N.Y. Feb. 15, 2011). Critically, unlike *Horvath*, Defendants here never signed an account application in their native language. Defendants should thus not be bound by the IAT's because they could not conceivably have read the IAT's, even if Defendants could procure them. *Horvath*, 461 F. App'x at 63.

While an incorporation by reference may be effective when disclosed to a party in his or her native language, it should not be so when, as here, the parties challenging the agreement

could not possibly have had knowledge or assented to the IAT's based on a documented language barrier. *Lamb v. Emhart Corp.*, 47 F.3d 551, 558 (2d Cir. 1995) (at common law, "[i]n order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.").

Further, the language barrier also means that BLUSA failed to reasonably communicate the IAT's forum selection clause to Defendants because it provided account applications in English only to clients in a Spanish-speaking country, and failed to explain material terms of such application in the native language. *Phillips v Audio Active, Ltd.*, 494 F3d 378, 383 (2d Cir. 2007).[7] Notably, BLUSA's later provision of purchase order forms to Defendants containing substantially identical disclaimer language in both English and Spanish betrays BLUSA's later conclusion that forms provided to international clients should contain translations to the particular country's native tongue. *See* BLUSA's Statement of Facts [Dkt. No. 86] at ¶ 28.

## CONCLUSION

WHEREFORE, Defendants respectfully request entry of an order granting their Motion for Summary Judgment and granting such other and further relief as is just and proper.

Dated: New York, New York
September 30, 2014

Respectfully submitted,

*/s/ Jose Raul Alcantar Villagran*
Jose Raul Alcantar Villagran (JA2849)
22 Cortlandt Street, 16th Floor
New York, New York 10007
Tel: (212) 658-0222
Fax: (646) 568-5843
raul.alcantar@alcantarlaw.com

*Counsel to Defendants*

---

[7] *See also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ("For a clause to be enforceable, "[a] court must first determine that the existence of the clause was reasonably communicated to the parties."); *Jerez v. JD Closeouts, LLC*, 943 N.Y.S.2d 392 (N.Y. Dist. Ct. 2012) ("Under the law of contract, the absence of such a communication is critically important in determining whether the forum clause will be enforced.").

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 30th day of September 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CD/ECF or in some other authorized manner to those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jose Raul Alcantar Villagran*
Jose Raul Alcantar Villagran

**SERVICE LIST**
**BANK LEUMI USA v. DAVID EHRLICH et al.**
**Case No.: 1:12-cv-4423 (AJN)**

**United States District Court, Southern District of New York**
***Counsel to Bank Leumi USA***
***(via ECF)***

MAYER BROWN LLP
Mark Hanchet, Esq.
1675 Broadway
New York, New York 10019
mhanchet@mayerbrown.com
-and-
James Ancone, Esq.
1675 Broadway
New York, New York 10019
jancone@mayerbrown.com